2024-1209

UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**IN RE: LI LI, QUNZHU LI,**
*Appellants*

Appeal from the United States Patent and Trademark Office, Patent Trial and Appeal Board in Application No. 13/576,565.

# Combined Brief and Supplemental Appendix for the Appellee - Director of the United States Patent and Trademark Office

FARHEENA Y. RASHEED
*Solicitor*

AMY J. NELSON
*Senior Counsel for Patent Policy and Litigation*

JUSTIN BOVA
KAKOLI CAPRIHAN
*Associate Solicitors*

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the United States Patent and Trademark Office*

August 5, 2024

## **Representative Claims 1, 6, and 13**

1. A method for circulating a cold regenerated catalyst, comprising;

reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;

separating the gas and oil products from the reacted catalyst in a settler,

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated *catalyst cooler* to form a cooled regenerated catalyst having a temperature in a range of 200ºC to 720ºC, for cycling use;

*wherein when the one riser reactor comprises at least two reaction zones, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of each of the reaction zones of the one riser reactor, so as to keep the reaction temperature of each of the reaction zones in an optimal value*, respectively, or when the one riser reactor comprises only one reaction zone, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the only one reaction zone of the one riser reactor, so as to keep the reaction temperature in an optimal value.

Appx787 (emphasis added).

6. The method of claim 1, further comprising:

controlling the reaction temperature in the reaction zone of the riser reactor by adjusting a ratio of the cooled regenerated catalyst that enters the riser reactor and feed of the hydrocarbon materials that enter the riser reactor, adjusting the temperature of the cooled regenerated catalyst,

using a multi-point feeding technology, adding a quenching agent to the riser reactor, or a combination thereof.

Appx788.

13. A method for circulating a cold regenerated catalyst, comprising;

reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200℃ to 720℃, for cycling use;

wherein a heat-exchanging element is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located in the lower part of the regenerated catalyst cooler;

*blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser* reactor; and

wherein when the one riser reactor comprises at least two reaction zones, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of each of the reaction zones of the one riser reactor, so as to keep the reaction temperature of each of the reaction zones in an optimal value, respectively, or when the one riser reactor comprises only one reaction zone, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the

> only one reaction zone of the one riser reactor, so as to keep the reaction temperature in an optimal value.

Appx789-Appx790 (emphasis added).

# TABLE OF CONTENTS


I. Statement of the Issue ..... 1

II. Statement of the Case ..... 4

A. The ’565 Application: A method for recycling catalyst for use in oil and gas production ..... 5

B. The Prior Art ..... 10

1. Li: A process that cools and recycles catalyst used in oil and gas production ..... 10

C. The Board’s Decisions ..... 11

III. Summary of the Argument ..... 16

IV. Standard of Review ..... 18

V. Argument ..... 19

A. Substantial Evidence Supports the Board’s Findings that Representative Claim 1, Independent Claims 13 and 20, and Dependent Claims 6, 16, and 22 Would Have Been Obvious Over Li ..... 19

1. The Board correctly determined that Li discloses the “catalyst cooler” (Feature 1) recited in representative claim 1 ..... 21

a. The open-ended “comprising” claim language, as well as the specification, supports the Board’s construction of claim 1 to permit more than one catalyst cooler. ..... 22

b. Li discloses the claimed “catalyst cooler” under either the Board’s broadest reasonable construction or Appellants’ proffered construction ..... 26

2. The Board correctly determined that Li discloses the “mixing buffer space” limitation (Feature 2) in independent claims 13 and 20. ..... 31

a. The Board correctly construed "mixing buffer space" to mean "a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler." ........................ 32

b. Substantial evidence supports the Board's findings that Li teaches the "mixing buffer space" limitation as properly construed. ............ 36

3. Substantial evidence supports the Board's findings that Li discloses the "controlling the reaction temperature" limitation as recited in dependent claims 6, 16, and 22. .................................. 40

4. Appellants' purported evidence of objective indicia of nonobviousness is unavailing....................... 41

VI. Conclusion.......................................................................... 45

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*ABS Glob., Inc. v. Cytonome/St, LLC*,
84 F.4th 1034 (Fed. Cir. 2023) .......... 23

*In re Baxter Travenol Labs.*,
952 F.2d 388 (Fed. Cir. 1991) .......... 44

*Consol. Edison Co. v. Nat'l Labor Relations Bd.*,
305 U.S. 197 (1938) .......... 19

*Galderma Labs., L.P. v. Tolmar, Inc.*,
737 F.3d 731 (Fed. Cir. 2013) .......... 29, 44

*In re Gartside*,
203 F.3d 1305 (Fed. Cir. 2000) .......... 19

*In re ICON Health & Fitness, Inc.*,
496 F.3d 1374 (Fed. Cir. 2007) .......... 18, 23

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 1111 (Fed. Cir. 2004) .......... 22

*In re Kao*,
639 F.3d 1057 (Fed. Cir. 2011) .......... 43

*In re Kotzab*,
217 F.3d 1365 (Fed. Cir. 2000) .......... 19

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
358 F.3d 898 (Fed. Cir. 2004) .......... 35

*In re Mouttet*,
686 F.3d 1322 (Fed. Cir. 2012) .......... 19

*Ormco Corp. v. Align Tech., Inc.*,
463 F.3d 1299 (Fed. Cir. 2006) ........................................................ 44

*PAR Pharm., Inc. v. TWI Pharms., Inc.*,
773 F.3d 1186 (Fed. Cir. 2014) ........................................................ 19

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ........................................ 24

*In re Qapsule Techs., Inc.*,
759 F. App'x 975 (Fed. Cir. 2019) .................................................... 39

*SmithKline Beecham Corp. v. Apotex Corp.*,
439 F.3d 1312 (Fed. Cir. 2006) ................................................... 12, 38

*Southwire Co. v. Cerro Wire LLC*,
870 F.3d 1306 (Fed. Cir. 2017) ........................................................ 43

*Wasica Finance GmbH v. Cont'l Auto. Sys., Inc.*,
853 F.3d 1272 (Fed. Cir. 2017) ........................................................ 18

*In re Watts*,
354 F.3d 1362 (Fed. Cir. 2004) ........................................................ 19

**Statutes**

5 U.S.C. § 706(2)(E) .......................................................................... 19

**Other Authorities**

https://www.sciencedirect.com/topics/chemistry/fluid-catalytic-cracking ........................................................................ 1

## STATEMENT OF RELATED CASES

The Director is not aware of any other appeal in connection with this patent application that has previously been before this Court. The Director is also unaware of any case pending in this or any other court that will directly affect, or directly be affected by, the Court's decision in this appeal.

## I. STATEMENT OF THE ISSUE

Appellants seek claims to methods for recycling a catalyst during fluid catalytic cracking[1] using well-known equipment to produce gas and oil products. Representative claim 1 recites a method for recycling a catalyst that comprises "reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products," "separating the gas and oil products" from the catalyst, "regenerating" the catalyst, and cooling the catalyst in a "catalyst cooler." The catalyst can then be recycled to the reactor. Independent claims 13 and 20 are similar to representative claim 1 but include the additional step of "blending and buffering" the cooled catalyst in a "mixing buffer space" before it is recycled. Dependent claims 6, 16, and 22 further require controlling the reactor's temperature using various parameters, such as by adjusting the catalyst/hydrocarbon ratio or catalyst temperature.

The Board affirmed the Examiner's rejection of the claims as obvious over the inventors' own prior-published Chinese patent

[1] Fluid catalytic cracking (FCC) is a process used in petroleum refineries to convert hydrocarbon feedstocks (e.g., oil) into gasoline or other petroleum products. *See* https://www.sciencedirect.com/topics/chemistry/fluid-catalytic-cracking.

application ("Li"), finding that Li teaches or suggests each limitation of the claims. In affirming the Examiner's rejection, the Board found that Li teaches the two features Appellants alleged it does not: the "catalyst cooler" limitation recited in representative claim 1, and the "mixing buffer space" recited in claims 13 and 20.

For the "catalyst cooler" limitation, the Board found that (1) the open-ended term "comprising" in claim 1 permits the use of more than one catalyst cooler, which Li teaches; and (2) Li also teaches using a single catalyst cooler and thus meets the claim term even adopting Appellants' proffered narrower construction.

Regarding the "mixing buffer space," the Board construed the phrase under the broadest reasonable interpretation in light of the specification to mean "a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler." Under that construction, the Board found that Li's catalyst cooler has a lower region where fluidizing media mixes with the catalyst to buffer it before the mixture is recycled to the reactor, which satisfies the limitation.

The Board also found that Li teaches controlling the reactor temperature using multiple parameters, any one of which satisfies the alternatively-recited parameters required by dependent claims 6, 16, and 22.

Finally, the Board considered and rejected Appellants' secondary considerations evidence as conclusory, lacking a nexus to the claimed invention, or already satisfied by the prior art.

The issues on appeal are whether substantial evidence supports the Board's findings that: (1) Li discloses the "catalyst cooler" limitation of claim 1 under either the Board's construction or Appellants' proffered construction; (2) Li teaches the "catalyst mixing buffer space" limitation of claims 13 and 20; (3) Li teaches one or more of the temperature controls as recited in dependent claims 6, 16, and 22; and (4) Appellants' purported objective indicia of nonobviousness evidence is not persuasive.

Because substantial evidence supports the Board's findings, including under Appellants' alternative claim construction of the "catalyst cooler" limitation, this Court should affirm.

## II. STATEMENT OF THE CASE

This appeal arises from the examination of U.S. Patent Application No. 13/576,565, which is titled "Method and Equipment for Circulating Cooled Regenerated Catalyst." Appx170-Appx209. Following the Examiner's final rejection of all pending claims (claims 1-7, 10, 13-25, 27, 29, and 31-33) (Appx159-Appx169), Appellants appealed and the Board affirmed the Examiner's rejection of all pending claims as obvious over the prior art. Appx1-Appx15; Appx114-Appx156; Appx97-Appx113; Appx79-Appx96. Specifically, the Board affirmed the Examiner's rejection of claims 1-7, 10, 13-25, 27, 29, 31 and 33 as obvious over Li,[2] and rejection of claim 32 as obvious over Li in view of Palmas. Appx4-Appx14. Appellants filed a Request for Rehearing, which the Board denied. Appx225-Appx238; Appx810-Appx865. Appellants then appealed to this Court.

---

[2] Appellants submitted the Chinese publication of Li (CN1664074), Appx738-Appx762, and later submitted an English translation, Appx699-Appx737, to which the Examiner and Board cited during prosecution and the appeal to the Board.

### A. The ’565 Application: A method for recycling catalyst for use in oil and gas production

Appellants’ ’565 application describes a method for recycling catalyst used in a fluid catalytic cracking (FCC) reaction for generating oil and gas products. Appx172-Appx174; Appx205 (Abstract). The method involves reacting hydrocarbon materials with a catalyst in a riser reactor, separating the catalyst from the oil and gas products, and then regenerating, cooling, and recycling the catalyst back into the reactor. *Id.* The specification notes that the process uses “the normal technology of catalyst cooling in FCC,” Appx172(3:26-29), that “catalyst coolers are traditional industrial equipment,” Appx176(7:8), and that “riser catalytic cracking process and its equipment is mature industrial process,” Appx178(9:28-29). The specification also explains that a skilled artisan would “know clearly” that there are many control devices and control methods for the process. Appx177-Appx178(8:23-9:16).

Figure 1 (as annotated on the next page) depicts the process units: riser reactor **2** where raw hydrocarbon material reacts in the presence of catalyst, disengager **1** to separate catalyst from oil/gas, regenerator **5** for burning/regenerating catalyst, and catalyst cooler **8A** to cool and then recycle catalyst back to the reactor **2**. Appx184(15:23-27); Appx186(17:11-

18); Appx206. The reactor itself may have one or more reaction zones and one or more areas for injecting recycled catalyst. Appx179(10:13-21); Appx188(19:4-15). Although not shown, the system includes a second catalyst cooler primarily for regulating the regenerator's temperature. Appx185(16:5-7).




Appx206 (annotated); *see also* Appx207-Appx208.

Regarding the "traditional industrial equipment" catalyst coolers, the specification explains that the process may use "one, two, or more

catalyst coolers" that cool catalyst from the regenerator and connect to the riser reactor to adjust reaction temperature. Appx173(4:9-28); Appx176(7:8-18); Appx185(16:4-7); Appx187(18:8-11). Appellants' application notes that "[a] person skilled in the art" would easily understand the "structures, connection styles, operation and control process" of the catalyst coolers, "which will not be restricted by any specific implement." Appx176(7:8-14).

The catalyst cooler may have a "mixed buffer space" in the lower area of the catalyst cooler, off of which there are one, two, or more exits to recycle catalyst to a riser reactor or the catalyst regenerator. Appx173(4:24-28), Appx185(16:10-17); Appx206(9A in Fig. 1); Appx207(9A/B in Fig. 2). The recycled catalyst temperature is controlled by adjusting the flow of fluidizing media, which mixes with the catalyst in the bottom of the catalyst cooler, or by adjusting the catalyst's flow or "other parameters." Appx175(6:4-8).

Representative claim 1 reads:

> 1. A method for circulating a cold regenerated catalyst, comprising;
>
> reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;

separating the gas and oil products from the reacted catalyst in a settler,

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated *catalyst cooler* to form a cooled regenerated catalyst having a temperature in a range of 200ºC to 720ºC, for cycling use;

*wherein when the one riser reactor comprises at least two reaction zones, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of each of the reaction zones of the one riser reactor, so as to keep the reaction temperature of each of the reaction zones in an optimal value*, respectively, or when the one riser reactor comprises only one reaction zone, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the only one reaction zone of the one riser reactor, so as to keep the reaction temperature in an optimal value.

Appx787 (emphasis added).

Representative claim 13 reads:[3]

13. A method for circulating a cold regenerated catalyst, comprising;

reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;

---

[3] Both claim 13 and claim 20 use similar overall language. Appx789-Appx790; Appx791-Appx792. For the "catalyst mixing buffer space" limitation Appellants contest on appeal, Claim 20 recites the mixing buffer space is "*disposed underneath the heat-exchanging element*." Appx792.

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200ºC to 720ºC, for cycling use;

wherein a heat-exchanging element is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located in the lower part of the regenerated catalyst cooler;

*blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor*; and

wherein when the one riser reactor comprises at least two reaction zones, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of each of the reaction zones of the one riser reactor, so as to keep the reaction temperature of each of the reaction zones in an optimal value, respectively, or when the one riser reactor comprises only one reaction zone, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the only one reaction zone of the one riser reactor, so as to keep the reaction temperature in an optimal value.

Appx789-Appx790 (emphasis added).

Claims 6, 16, and 22 further require "controlling the reaction temperature in the reaction zone" by one or more recited ways. Appx788; Appx791; Appx793.

## B. The Prior Art

### 1. Li: A process that cools and recycles catalyst used in oil and gas production

Like the ’565 application, Li discloses a method for making oil and gas products using a catalytic cracking process in a riser reactor, separating out catalyst, and then regenerating, cooling, and ultimately recycling the catalyst to the reactor. Appx700; Appx704-Appx705.

Li teaches using one or more catalyst coolers to regulate temperature in the riser reactor and regenerator. Appx701-Appx702. In particular, catalyst enters the catalyst cooler to be cooled, after which it mixes with “fluidization medium” (e.g., air, water, steam) in the catalyst cooler, and is then returned to the reactor. Appx703; Appx717-Appx718. The catalyst cooler “is provided with one or more catalyst outlets”—one outlet for recycling catalyst to the regenerator and one or more outlets for recycling catalyst to the rising reactor. Appx703. By controlling the catalyst and fluidization medium flow rates, Li teaches one can maintain reactor temperature at an “optimum value.” *Id.* Li also teaches cold catalyst can be injected into the first reaction zone of the riser reactor or into a second reaction zone in the riser reactor via an auxiliary raising pipe. Appx702-Appx704; Appx715; Appx720.

Figure 1 (as annotated below) is an example of Li's system. It shows a reactor with a first reaction zone **3** for reacting hydrocarbon **33** in the presence of catalyst, a second reaction zone **2**, a settler **1** to separate catalyst from oil/gas, regenerator **5**, and catalyst coolers **8A** and **8B** to recycle cooled catalyst to the reactor (Appx717):




Appx759 (annotated).

### C. The Board's Decisions

The Board affirmed the Examiner's rejections of claims 1-7, 10, 13-25, 27, 29, 31 and 33 as obvious over Li, and of claim 32 as obvious over

Li and Palmas. Appx2-Appx15; Appx159-Appx169. In affirming, the Board designated claim 1 as illustrative of the claimed subject matter. Appx3. The Board observed that Appellants separately argued independent claims 13 and 20, and dependent claims 6, 16, and 22. Appx4. Because Appellants relied on the same arguments for claim 32 as claim 1, the Board found that the rejection of claim 32 stands or falls with the rejection of Li under claim 1. *Id.*[4]

The Examiner found that Li teaches or renders obvious each of the limitations of representative claim 1. Specifically, the Examiner found that Li discloses a process for generating oil and gas products using a catalytic reaction in a riser reactor, separating the products from reacted catalyst, burning the catalyst in a regenerator, and cooling and recycling the catalyst to the reactor. Appx163-Appx166 (citing Appx700-Appx705; Appx707-Appx708; Appx713-Appx714; Appx717-Appx720; Appx722;

[4] Appellants incorrectly assert that claim 32, which depends on claim 1, is "cancelled," Br. 27 n.2. Claim 32, however, remains pending and rejected as obvious. Appx4; Appx102; Appx166. Because Appellants did not separately argue claim 32 before the Board, they could not and did not challenge that claim in their opening brief before this Court (Br. at 27 n.2), and thus any such arguments are forfeited. *SmithKline Beecham Corp. v. Apotex Corp.*, 439 F.3d 1312, 1319 (Fed. Cir. 2006).

Appx759). With respect to the claimed "catalyst cooler," the Examiner found that Li teaches using one catalyst cooler (as claimed) with a plurality of outlets for recycle to the desired reactors and regenerator. Appx164 (citing Appx701-Appx703). The examiner also found Li's reactor may be one riser reactor with a plurality of reaction zones, the temperatures of which are controlled by recycling cold catalyst. Appx164-Appx165 (citing Appx700-Appx701; Appx704-Appx705; Appx707; Appx717; Appx719).

With respect to the claimed "mixing buffer space," as recited in independent claims 13 and 20, the Examiner found that Li's catalyst cooler has an upper portion for cooling using a shell-and-tube heat exchanger and a lower portion that further cools by mixing the catalyst with fluidized media. Appx164 (citing Appx717; Appx759-Appx762). The Examiner considered this lower portion, where the catalyst mixes with fluidized media, to constitute a "mixing buffer space." Appx164; Appx161-Appx162. The Examiner based this finding on the plain and ordinary meaning of "mixing buffer space," which the Examiner interpreted to include an area in the lower region of the catalyst cooler where catalyst is combined or mixed with fluidizing media. Appx164; SAppx9-SAppx12.

With respect to controlling the reaction temperature using various parameters as recited in dependent claims 6, 16, and 22, the Examiner found that Li discloses each of the parameters, including adjusting the hydrocarbon to oil ratio, controlling the regenerated catalyst temperature, injecting a cold shock agent, or using multi-point feeding. Appx164-Appx165.

The Board considered each of Appellants' arguments, but found them unpersuasive. ***First***, the Board rejected Appellants' argument that the claim 1 only allows for, and that Li fails to teach, a single catalyst cooler. Appx5. The Board's reasoning was two-fold: the claim's use of the transitional term "comprising" permits more than one catalyst cooler, and Li nevertheless teaches using *one* catalyst cooler. Appx5-Appx6; Appx11; *see also* Appx235; Appx237. ***Second***, the Board rejected Appellants' argument that claims 13 and 20 require a "separate and independent" catalyst mixing buffer space downstream of the catalyst cooler and that Li fails to teach such a space. Appx6-Appx7. Instead, the Board agreed with the Examiner that the specification does not provide any specific details for the "catalyst mixing buffer space" and therefore, when the phrase is properly construed in the context of the specification,

Li's mixing of catalyst with fluidizing media in the lower region of the catalyst cooler meets the limitation. Appx6-Appx9; *see also* Appx235-Appx236. ***Third***, with respect to dependent claims 6, 16, and 22, the Board rejected Appellants' argument that Li does not teach the use of multi-parameter adjustment to control reaction temperature, finding that Li does in fact teach several of the parameters that are claimed in the alternative. Appx9-Appx10. And ***fourth***, the Board rejected Appellants' secondary considerations evidence as either conclusory, having no nexus to the claimed invention, or already satisfied by the prior art. Appx11-Appx13 (citing Appx783-Appx784; Appx110-Appx111); *see also* Appx231-Appx235.

The Board also denied Appellants' rehearing request. Appx226-Appx238. The Board first noted Appellants' rehearing request raised issues the Board already addressed. Appx230-Appx231. The Board then explained how the declarations Appellants submitted were "insufficient to establish unexpected results[] and commercial success." Appx231-Appx235. Finally, consistent with its original decision, the Board found unpersuasive Appellants' arguments (1) that the Board improperly

construed the "catalyst cooler" and "mixing buffer space" limitations and (2) that Li failed to disclose those limitations. Appx235-Appx237.

## III. SUMMARY OF THE ARGUMENT

The Board properly found claims 1, 13 and 20 would have been obvious over Li. The Board found that, much like the pending claims, Li teaches methods for making oil and gas products by "reacting hydrocarbon materials with a catalyst in a riser reactor," "separating the gas and oil products" from reacted catalyst, "burning and regenerating" the catalyst in a regenerator, "cooling" catalyst in a "catalyst cooler," and recycling the catalyst to the reactor. On appeal, Appellants only primarily dispute whether Li teaches the "catalyst cooler" of representative claim 1 and the "mixing buffer space" of claims 13 and 20. Substantial evidence supports the Board's determination that Li discloses these limitations.

Regarding representative claim 1, substantial evidence supports the Board's finding that Li teaches the claimed "catalyst cooler" under either its construction of "comprising" permitting more than one cooler or under Appellants' narrower construction limiting it to using only one cooler. As the Board found, Li expressly teaches using *one* catalyst cooler

with a plurality of outlets for recycling catalyst to the reactor and the regenerator. Appellants ignore the Board's alternative finding to this effect. Thus, under either construction, Appellants cannot show the Board erred by finding Li satisfies the "catalyst cooler" limitation.

Substantial evidence also supports the Board's findings that Li teaches the claimed "mixing buffer space" of claims 13 and 20. The specification does not provide any special definition of the "mixing buffer space," and the Board found it simply means "a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler." The Board found that Li's injection of fluidizing gas into the lower portion of a catalyst cooler would mix with catalyst before the mixture is recycled. This, the Board reasoned, functions just like the fluidizing medium injected into the catalyst coolers of Appellants' specification.

Appellants also challenge the Board's findings that Li teaches at least one of the temperature control parameters that are claimed in the alternative in dependent claims 6, 16, and 22, but substantial evidence supports the Board's findings that Li teaches each claimed parameter.

Finally, the Board also correctly found Appellants' proffered secondary considerations evidence insufficient to establish nonobviousness because the closest prior art, Li, taught the "catalyst cooler" and "mixing buffer space" limitations—the two limitations that Appellants argued as their basis for the secondary considerations. The Board also correctly found Appellants' evidence conclusory and lacking a nexus to the claims. Thus, this Court should affirm the Board's obviousness determination for all claims.

## IV. STANDARD OF REVIEW

The Board applies the broadest reasonable interpretation claim construction standard during examination. *In re ICON Health & Fitness, Inc.*, 496 F.3d 1374, 1379 (Fed. Cir. 2007). "Claim construction is a question of law with underlying questions of fact." *Wasica Finance GmbH v. Cont'l Auto. Sys., Inc.*, 853 F.3d 1272, 1278 (Fed. Cir. 2017). This Court reviews claim construction based solely on the intrinsic record *de novo*, and any "underpinning factual determinations involving extrinsic evidence for substantial evidence." *Id.*

Obviousness is a legal question reviewed *de novo* based on underlying findings of fact reviewed for substantial evidence. *In re*

*Gartside*, 203 F.3d 1305, 1316 (Fed. Cir. 2000). The scope and content of the prior art, whether a reference teaches away, and whether any relevant secondary considerations exist, are questions of fact. *In re Mouttet*, 686 F.3d 1322, 1330 (Fed. Cir. 2012).

Appellants have the burden to show that the Board committed reversible error. *In re Watts*, 354 F.3d 1362, 1369 (Fed. Cir. 2004). This Court upholds the Board's factual findings unless they are unsupported by substantial evidence. *PAR Pharm., Inc. v. TWI Pharms., Inc.*, 773 F.3d 1186, 1196 (Fed. Cir. 2014); 5 U.S.C. § 706(2)(E). Substantial evidence "is something less than the weight of the evidence but more than a mere scintilla of evidence," *In re Kotzab*, 217 F.3d 1365, 1369 (Fed. Cir. 2000), and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Consol. Edison Co. v. Nat'l Labor Relations Bd.*, 305 U.S. 197, 229 (1938).

## V. ARGUMENT

### A. Substantial Evidence Supports the Board's Findings that Representative Claim 1, Independent Claims 13 and 20, and Dependent Claims 6, 16, and 22 Would Have Been Obvious Over Li

The Board correctly affirmed the Examiner's rejections of claims 1-7, 10, 13-25, 27, 29, 31, and 33 as obvious over Li and claim 32 as obvious

over Li in view of Palmas. Appellants do not contest the Board's designation of claim 1 as illustrative or its observation that Appellants only provided separate arguments for independent claims 1, 13, and 20, and dependent claims 6, 16, and 22. Appx3-Appx4. Therefore, the Director likewise focuses only on those claims.

As the Board and Examiner found, Li teaches or suggests each of the limitations of representative claim 1. Appx163-Appx166; Appx4-Appx9. In particular, Li discloses the claimed process: generating oil and gas products using a catalytic reaction in a riser reactor, separating the products from reacted catalyst, burning the catalyst in a regenerator, and cooling the regenerated catalyst by "a catalyst cooler," wherein the "catalyst cooler" is connected to the riser reactor to adjust the reactor's temperature (i.e., a recycle of the cooled catalyst). Appx163-Appx166 (citing Appx700-Appx705; Appx707-Appx708; Appx713-Appx714; Appx717-Appx720; Appx722; Appx759). The Board and Examiner also rightly found that Li discloses blending and buffering the cooled regenerated catalyst in a "mixing buffer space" as recited in independent claims 13 and 20. Appx164 (citing Appx717; Appx759-Appx762); Appx6-Appx9 (citing Appx106-Appx109; Appx703; Appx715; Appx718; Appx721-

Appx722; Appx759). And the Board and Examiner correctly found that Li discloses controlling the reaction temperature using one or more of the various parameters required by dependent claims 6, 16, and 22. Appx165 (citing Appx700-Appx701; Appx704-Appx705; Appx707; Appx716; Appx719); Appx9-Appx10 (citing Appx718; Appx720).

Appellants makes four arguments challenging the Board's and Examiner's findings: (1) Li fails to disclose "a catalyst cooler" (which Appellants refer to as "Feature 1"), as recited in representative claim 1; (2) Li fails to disclose a "mixing buffer space" (which Appellants refer to as "Feature 2"), as recited in independent claims 13 and 20; (3) Li fails to disclose the "controlling the reaction temperature" limitation of dependent claims 6, 16, and 22; and (4) the Board failed to adequately consider the secondary considerations evidence. Each of Appellants' arguments lacks merit.

**1. The Board correctly determined that Li discloses the "catalyst cooler" (Feature 1) recited in representative claim 1.**

The Board correctly found that Li teaches the "catalyst cooler," as recited in representative claim 1. Appx5-Appx6; Appx237; *see also* Appx100-Appx101; Appx105. As discussed below, the Board was

unpersuaded by Appellants' argument that Li fails to meet the claim term because it allegedly discloses more than one catalyst cooler. Appx5-Appx6; Appx10-Appx11. First, the Board observed that the presence of the open-ended "comprising" term in the claim permits more than one catalyst cooler. Appx5-Appx6; Appx237. Second, the Board found that, even if the claim is interpreted to require only a single catalyst cooler, Li nevertheless teaches *one* catalyst cooler with multiple outlets to achieve the same cooling and recycling as claimed. Appx5-Appx6; Appx701-Appx703. Thus, under either the Board's construction or Appellants' proffered construction, Li teaches the claim limitation.

**a. The open-ended "comprising" claim language, as well as the specification, supports the Board's construction of claim 1 to permit more than one catalyst cooler.**

Appellants argue that their claims are limited to a single catalyst cooler, to the exclusion of other catalyst coolers, in the system. Br. 29-31. But as the Board properly determined, under the broadest reasonable interpretation, the term "comprising" is open-ended, and thus permits more than one catalyst cooler.

It is fundamental that "the claims of a patent define the invention." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d

1111, 1115 (Fed. Cir. 2004). During examination, the Board "must give claims their broadest reasonable construction consistent with the specification." *In re ICON*, 496 F.3d at 1379. Absent a clear indication to the contrary in either the language of the claims, specification, or prosecution history, the use of "a" before a noun in "an open-ended comprising claim" "requires that the phrase be construed to mean 'one or more.'" *ABS Glob., Inc. v. Cytonome/St, LLC*, 84 F.4th 1034, 1040 (Fed. Cir. 2023) (citations and quotation marks omitted).

Here, representative claim 1 recites a method "comprising. . . cooling the hot regenerated catalyst by a regenerated catalyst cooler" wherein "the one regenerated catalyst cooler is connected to the one riser reactor." This language only requires that a catalyst cooler is used to cool the catalyst, and then that the same catalyst cooler is also connected to the riser reactor. Appx787(cl. 1); *see also* Appx789-Appx790(cl. 13). Thus, as the Board found, the claim allows for the presence of more than one catalyst cooler. Appx6; Appx11; Appx235; Appx237. Appellants argue that the recitation of "a" catalyst cooler and "the one" catalyst cooler in the claim means that "only one catalyst cooler is connected to only one riser reactor." *See* Br. 30, 47. But this argument ignores the open-ended

claim language, which although requiring connecting the cooler to the reactor, does not preclude other catalyst coolers from being connected to the reactor.

The specification also supports a broader reading of the claim language as not limited to only one catalyst cooler. "[T]he specification…is the single best guide to the meaning of a disputed term." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1315 (Fed. Cir. 2005) (*en banc*). Appellants' specification explains that "the present invention" includes a regenerator with "one, two, or more catalyst coolers, each connected to the riser reactor." Appx173(4:3-13). The catalyst cooler has "one, two, or more catalyst exits" to recycle cooled catalyst to "one, two or more of the riser[s] (reactor or auxiliary riser)." Appx173(4:24-28). When discussing the catalyst coolers, the specification further acknowledges that a skilled artisan can easily "understand the structures, connection styles, operation and control process, which will not be restricted by any specific implement." Appx176(7:8-14); *see also* Appx178(9:10-16) (similar, but discussing "cycling method" for the cold catalyst). And none of the examples in the specification describe using one (and only one) catalyst cooler in the system; instead, each disclosed embodiment uses at least

two coolers, including the Figure 2 embodiment Appellants argue embodies the present application. Appx185(16:4-7); Appx187(18:1-11); Appx188(19:4-14); Appx190(21:13-22); Appx194(25:20-28); Br. 23 (citing Fig. 2, which includes a separate catalyst recycle **34**). In short, the specification reveals that what matters is controlling the temperature of the system; it does not limit the claimed methods to one (and only one) catalyst cooler to assist in that control. Appx176-Appx177(7:27-8:25).

Appellants contend that the Board's construction of the open-ended "comprising" language was a new ground of rejection. Br. 14-15, 54. The construction, however, was raised on at least three separate occasions during prosecution. First, the Examiner's Answer during Appellants' first Board appeal expressly explained that the "comprising" claim language "does not exclude additional catalyst coolers, risers, and reaction zones." SAppx12. Second, the Examiner rejected the claims over Li's disclosure of multiple coolers (and a single cooler), which reflects an open-ended construction. Appx100-Appx101. Third, Appellants acknowledged during the oral hearing before the Board that the claims' "comprising" language could be used to read on Li's allegedly multiple catalyst cooler system for infringement. Appx27-Appx28(11:22-12:11).

The Board's explicit statement that "comprising" is open-ended (Appx6) is consistent with the prosecution and does not make the legal determination of the claim's meaning a new ground.[5]

**b. Li discloses the claimed "catalyst cooler" under either the Board's broadest reasonable construction or Appellants' proffered construction.**

The Board found that under the proper construction of claim 1—permitting more than one "catalyst cooler"—Li meets the claim term. Appx5-Appx6; Appx11. Under the Board's construction, Appellants only appear to contend that Li's catalyst cooler that is connected to the riser reactor either does not adjust Li's second reaction zone temperature or does not do so to an "optimal value." Br. 25, 51-52. Neither contention has merit.

***First***, recycle of Li's catalyst to the first reaction zone adjusts both the first and second reaction zone temperatures. As the Board found, Li's catalyst cooler is connected to a riser reactor with a first and second reaction zone. Appx5-Appx6; Appx700-Appx701. After catalyst is

[5] Appellants were heard again on this issue when they sought rehearing of the Board's decision, Appx834-Appx835, and the Board again explained its reasoning. Appx235.

recycled to the first reaction zone, it then enters the second reaction zone and necessarily, from a thermodynamics standpoint, adjusts the second reaction zone's temperature. Appx237 (citing Appx701-Appx702); Appx784; Appx32(16:3-8). Appellants' tracing of Li's recycled catalyst path (below, left) aptly demonstrates that the catalyst goes through both first reaction zone 3 and second reaction zone 2. This is an identical path to the one Appellants traced for Figure 2 (below, right) of the present application:







Br. 23, 25. As Li teaches, controlling the flow rate of recycled catalyst—which goes through both reaction zones in the red tracing above—can

control reactor temperature and help "maintain it at the optimum value." Appx703; *see also, e.g.*, Appx704; Appx708-Appx709. Even Appellants acknowledged that Li's recycled catalyst "may have an impact on the temperature of the second reaction zone." *See, e.g.*, SAppx41.[6] Thus, substantial evidence supports the Board's finding that Li satisfies the catalyst cooler "used to adjust the reaction temperature of each of the reaction zones" limitations.

***Second***, as the Board found, Li uses the catalyst cooler(s) to recycle catalyst and to assist in adjusting Li's reaction zone temperatures to "an optimal value." Appx5-Appx6; Appx237 (citing Appx701-Appx702); Appx703; Appx707. Appellants argue that Li does not teach "an optimal value" for the reaction temperature, as recited in claim 1, or that Li's high reaction temperature teaches away from that limitation (e.g., Br. 36-38, 52) but, as the Examiner found, Li discloses identical operating temperatures in the first and second reaction zones as those in Appellants' specification: 400-650ºC and 350-620ºC, respectively. SAppx14; *compare, e.g.*, Appx700-Appx701 *with* Appx188-

---

[6] This is necessarily true even if another cooler, e.g., cooler **8B** in Li's Fig. 1, recycles additional catalyst to second reaction zone **2**.

Appx189(19:25-20:8); *see also* Appx105, Appx110. Thus, Li directs an ordinarily skilled artisan toward the claimed "optimal value" reaction temperature, rather than criticizing or discouraging the use of a catalyst cooler as claimed, or teaching away from the claimed invention. *Galderma Labs., L.P. v. Tolmar, Inc.*, 737 F.3d 731, 739 (Fed. Cir. 2013); *cf.* Br. 36-38. Li's strikingly similar terminology and identical temperature ranges are substantial evidence to support the Board's findings that Li teaches using recycled catalyst to adjust reaction zone temperatures to "an optimal value" as claimed.

But even under Appellants' proffered narrower construction of claim 1—to permit only a single catalyst cooler—the Board rightly found that Li nevertheless teaches the limitation. Appellants dispute that Li teaches "one regenerated catalyst cooler" to "adjust" or "regulate" "the reaction temperature of each [of one or more] reaction zone[s]," Br. 27, 47, but Appellants fail to address the Examiner's findings, which the Board adopted. Specifically, the Examiner found that Li teaches "*one* or more" catalyst coolers, including "one catalyst cooler with a plurality of outlets." Appx164 (citing Appx701-Appx703) (emphasis added); Appx100. The Examiner also found Li's plural-outlets disclosure teaches that "two

catalyst coolers may be replaced with a single cooler." Appx105. The Board agreed and reiterated the Examiner's findings, explaining that "Li teaches that a single catalyst cooler may be used" to then recycle catalyst to the riser reactor. Appx5-Appx6. Thus, substantial evidence supports the Board's findings.

Appellants also appear to argue that even if Li teaches only one cooler, Li's cooler has two recycle lines—one to the first reaction zone and a separate one between the first and second reaction zone—so the cooler is not adjusting the temperature of each reaction zone in the riser. Br. 50, 57-58. But the claims require that *the cooler*, not a single recycle line, be connected to the reactor to control the reaction zone temperatures. Appx787(cl. 1); *see also* Appx789-Appx790(cl. 13). In other words, even if limited to one *cooler*, the claims permit multiple recycle outlets from that cooler connected to different portions of the riser reactor as long as the recycled catalyst is used to adjust the reaction temperature of the reaction zones. To that end, the Examiner found that Li teaches controlling reactor temperature by recycling catalyst from one cooler via two recycling lines—one to the first reaction zone in the reactor and another containing a "cold shock agent" (e.g., cold catalyst) into the

second reaction zone of the same reactor. Appx105; Appx165. This is consistent with Appellants' specification, which describes recycling catalyst to the reactor through at least two recycle lines. Appx173(4:25-28); Appx185-Appx186(16:27-17:1); Appx188(19:11-14). Thus, substantial evidence supports the Examiner's alternative finding that Li teaches one catalyst cooler with two catalyst recycle outlets to adjust each reaction zone temperature, thereby satisfying Appellants' proffered construction of "catalyst cooler."

#### 2. The Board correctly determined that Li discloses the "mixing buffer space" limitation (Feature 2) in independent claims 13 and 20.

The Board correctly affirmed the Examiner's findings that Li teaches the "mixing buffer space" limitation, as recited in independent claims 13 and 20. Appx6-Appx9; Appx235-Appx236; Appx164-Appx165; Appx106-Appx109. As the Board found, Appellants' specification does not define "mixing buffer space," provide specifics about its dimensions, or describe the extent or uniformity of the mixing or the catalyst's outcoming temperature. Appx7-Appx9; Appx106-Appx109. Li, like Appellants' specification, describes injecting fluidizing media into the bottom of the catalyst cooler below the catalyst cooler's heat exchanging

element (*i.e.*, downstream or underneath, as claimed) before then recycling that combined mixture to the reactor. Appx8-Appx9. Substantial evidence therefore supports the Board's findings that Li satisfies this limitation.

**a. The Board correctly construed "mixing buffer space" to mean "a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler."**

The Board correctly construed the phrase "mixing buffer space," in independent claims 13 and 20 under the broadest reasonable construction in light of Appellants' specification, to mean "a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler." Appx7; Appx106. During an earlier appeal of the application, the Board similarly construed the term to mean any space downstream of the heat exchanger in the catalyst cooler where cooled catalyst is mixed with other materials and buffered to any degree. Appx779-Appx780.

The Board's construction is consistent with the intrinsic record. Claim 13 recites "blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space being disposed *in the downstream*

*location of the regenerated catalyst cooler*." Appx790 (emphasis added). Claim 20 recites "catalyst mixing buffer space being *disposed underneath the heat-exchanging element*," where the heat-exchanging element "is mounted *inside* the regenerated catalyst cooler." Appx792 (emphasis added). In other words, the "mixing buffer space" is a space inside the cooler used to blend and buffer catalyst. The specification does not describe "mixing buffer space" any differently, and does not provide any special definition. Appx7-Appx8; Appx106-Appx109. Appellants appear to agree, asserting that "mixing" and "buffering" are well-known and thus not described in the specification. Br. 26. The specification instead simply describes a lower part of the catalyst cooler as the mixing space before the cooled catalyst leaves the cooler to be recycled to either the reactor or the regenerator. Appx185(16:10-17); Appx188(19:15-17); Appx191(22:14-16); Appx192(23:2-4). Each Figure in the specification similarly points to a lower section of the catalyst cooler as the "mixing buffer space." For example, as shown in annotated Figure 2 on the next page, 9A and 9B are each a "mixing buffer space" in the lower section of coolers 8A and 8B, respectively:




Appx207 (annotated).

Appellants argue that the mixing buffer space requires several features, none of which are claimed (or even described in the specification). For example, Appellants argue the mixing buffer space is "independent and separate from the catalyst cooler" and is "different equipment having the same diameter only" as the cooler. Br. 63. Claims 13 and 20, however, expressly provide that the "mixing buffer space" is in the catalyst cooler itself, and not an independent and separate unit from the catalyst cooler. Appx7-Appx9; *see* Appx789-Appx790(cl. 13) (mixing buffer space "in the downstream location" of the cooler);

Appx791-Appx792(cl. 20) (mixing buffer space "disposed underneath the heat-exchanging element" that is "mounted inside" the catalyst cooler). Furthermore, Appellants' assertion that the cooler and mixing buffer space "constitute an integrated device" (Br. 63; Appx263) contradicts any assertion that the cooler and mixing buffer space are "independent and separate" or require "different equipment."

Appellants also argue that the mixing buffer space achieves a uniform and stable catalyst temperature and that Li's mixing of cooled catalyst with fluidizing medium is different. Br. 24, 42, 62. But claims 13 and 20 do not include any uniformity or stable temperature requirements and Appellants point to nothing in the specification to support such requirements. And, even if the specification did disclose such uniformity or stable temperature limitations, it is improper to construe the claims as requiring such limitations. *See Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 904 (Fed. Cir. 2004) ("[I]t is improper to read a limitation from the specification into the claims"). In fact, the specification describes injecting fluidizing medium just below the "mixing buffer space" to mix with catalyst and control temperature. *See, e.g.*, Appx188(19:15-20); Appx190-Appx191(21:28-22:3); Appx192(23:5-11). Figure 1 shows

injecting fluidized media 35A in catalyst cooler 8A just below mixing buffer space 9A, all located within the catalyst cooler:




Appx206 (annotated). The Board therefore correctly construed the "mixing buffer space" limitation, and Appellants attempts to read in additional limitations absent from the specification should be rejected.

**b. Substantial evidence supports the Board's findings that Li teaches the "mixing buffer space" limitation as properly construed.**

Under the Board's correct construction of the "mixing buffer space" limitation, the Board rightly found that Li teaches the limitation. Appx8-Appx9. As the Board found, Li teaches injecting fluidizing gas into the lower portion of a catalyst cooler to mix with catalyst and control its temperature before catalyst is recycled in the system. Appx8-Appx9;

Appx718; *see also* Appx164. The injection of fluidizing gas into the bottom of the catalyst cooler in Li functions just like the fluidizing medium injected into the catalyst coolers of Appellants' specification. Appx8-Appx9. And, as the Board found, this mixing occurs "in the downstream location" of the cooler as it occurs in the lower portion of the cooler below the heat exchange elements (e.g., 37B in Li's Fig. 1) to achieve the same temperature range for recycled catalyst as in Appellants' specification. Appx8-Appx9; Appx759; Appx781-Appx782; *compare* Appx186(17:11-12) *with* Appx702-Appx703 (each showing catalyst temperature of 200-720°C). Comparing the catalyst cooler in Appellants' Figure 1 (below, left) with Li's catalyst cooler (below, right) shows the striking similarities of the catalyst coolers (8A) with their fluidizing medium inputs (35A) and heat-exchange elements (37A), and with 9A in Appellants' Figure 1 (below, left) denoting a "mixing buffer space":







Appx206 (excerpted and annotated); Appx759 (excerpted and annotated). Appellants nonspecific allegations that Li "teaches away" or that the Board relied on "impermissible hindsight" or made findings "without [providing] any documentary evidence to support," *see, e.g.*, Br. 14, 35-36, 60, 65, are insufficient to establish error in the Board's findings. *SmithKline*, 439 F.3d at 1319-20. Substantial evidence, therefore, supports the Board's finding that Li teaches the claimed "mixing buffer space" limitation.

Appellants also make various arguments that Li fails to teach, or "teaches away from," the claimed mixing buffer space, but none have

merit. In particular, Appellants argue that Li fails to disclose several unclaimed features of the mixing buffer space, such as particular dimensions, an "axial space," or functionally achieving uniform catalyst temperature. Br. 39-40, 60, 63-65. But the claims do not require these features of the mixing buffer space, and "[u]nclaimed limitations cannot distinguish the claims." *In re Qapsule Techs., Inc.*, 759 F. App'x 975, 981 (Fed. Cir. 2019). Thus, as the Board and Examiner explained, Appellants' arguments cannot distinguish the pending claims from Li. Appx9; Appx10-Appx11; Appx231; Appx235-Appx236; Appx108-Appx109. Moreover, the Board also found that Li functions in the same manner as Appellants' claimed invention in that it teaches injecting the fluidizing media into the catalyst cooler downstream of the heat-exchanging element to mix with the catalyst before cooled catalyst is recycled. Appx8-Appx9; Appx718; *see also* Appx164. And, contrary to Appellants' arguments (Br. 39-40, 60), Li teaches achieving the same catalyst temperature for recycle as disclosed in the '565 specification. *Compare, e.g.*, Appx186(17:11-12) *with* Appx702-Appx703. Accordingly, Appellants fail to establish error in the Board's findings that Li teaches the claimed "mixing buffer space" limitation.

### 3. Substantial evidence supports the Board's findings that Li discloses the "controlling the reaction temperature" limitation as recited in dependent claims 6, 16, and 22.

Substantial evidence supports the Board's finding that Li teaches the alternative options recited in dependent claims 6, 16, and 22 for "controlling the reaction temperature in the reaction zone of the riser reactor." Appellants argue that Li fails to disclose or suggest the limitation because Li "uses only single-parameter adjustment of the catalyst-to-oil ratio to realize the control of reaction temperature." Br. 66. Appellants' argument ignores the Board's findings. As the Board found, Li teaches controlling the reaction zone temperature by controlling the amount of catalyst and hydrocarbon feeds, i.e., the ratio of those two components as recited in dependent claims 6, 16, and 22. Appx10 (citing Appx718). Li also teaches, as the Board found, using various parameters to control the temperature of the reaction zones, including injecting a cold shock agent at multiple entry points in the reactor, Appx10 (citing Appx720), which satisfies the alternative reaction temperature controls of "adding a quenching agent to the riser reactor" or "multi-point feeding technology" recited in dependent claims 6, 16, and 22. Substantial evidence therefore supports the Board's findings that Li teaches multiple

parameters to control reaction temperature, and thus discloses the "controlling the reaction temperature" limitation of dependent claims 6, 16, and 22.

#### 4. Appellants' purported evidence of objective indicia of nonobviousness is unavailing.

During prosecution, Appellants submitted secondary considerations evidence (unexpected results, commercial success, industry praise, and satisfaction of a long-felt, unmet need), but the Board correctly found that the evidence, considered along with the Examiner's evidence of prima facie obviousness, did not establish nonobviousness. Appx10-Appx14 (citing Appx783-Appx784); Appx230-Appx235. Before this Court, Appellants continue to press the secondary considerations evidence arguing that (1) using only one catalyst cooler results in more desirable yields and control of the system (Br. 50, 56-58); (2) their claimed method achieves better or different results at a specific (unclaimed) 525ºC temperature compared to a 560ºC temperature embodiment in Li's first reaction zone (Br. 56-57); (3) the claimed invention is a commercial success (Br. 43-45); (4) the claimed method satisfied a long felt need where others have failed (Br. 20, 44-45); and (5) the Board and Examiner did not consider Appellants' declarations in

support of their objective indicia arguments (Br. 36, 40-41). None of these arguments have merit.

First, the Board correctly found that Appellants' arguments and declarations in support of their contentions for nonobviousness were skeletal and conclusory. Appx10-Appx14 (citing Appx783-Appx784). As the Board explained, it is not incumbent on the Board to "scour the record in search of evidence" to make Appellants' case for them. Appx230-Appx231.

Second, the Board fully considered Appellants' arguments and declarations, but ultimately found them insufficient to establish nonobviousness. Appx10-Appx14; Appx230-Appx235. In particular, the Board found that Appellants' claimed invention could not satisfy any long-felt need because Li already teaches the catalyst cooler ("Feature 1") and mixing buffer space ("Feature 2") that Appellants contend are the inventive features of their claims. Appx783-Appx784; Appx12-Appx14; Appx230; Appx234-Appx235; *see also* §§ V.A.1-V.A.2 above. Similarly, the Board properly rejected Appellants' unexpected-results and long-felt-need evidence and arguments directed at *unclaimed* features (e.g., catalyst-to-oil ratio or reactor temperature) because unclaimed features

cannot be a basis for nonobviousness. *In re Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011); Appx11; Appx13-Appx14; Appx233-Appx234; *cf.* Br. 56-58.

Finally, the Board found Appellants' unexpected results, long-felt need, and commercial success evidence and arguments inadequate because Appellants failed to compare the *claimed* invention to the closest prior art, Li. Appx11-Appx14; Appx783-Appx785 (citing Appx110-Appx111); Appx231; *In re Baxter Travenol Labs.*, 952 F.2d 388, 392 (Fed. Cir. 1991) (citations omitted) (Evidence of unexpected results "must be shown to be unexpected compared with the closest prior art . . . Mere recognition of latent properties in the prior art does not render nonobvious an otherwise known invention."). Furthermore, Appellants' proffered secondary considerations evidence does not result from a novel aspect of the claims, and thus cannot be indicative of nonobviousness. *Kao*, 639 F.3d at 1068 ("Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention"); *Southwire Co. v. Cerro Wire LLC*, 870 F.3d 1306, 1312 (Fed. Cir. 2017).

Substantial evidence also supports the Board's finding that Appellants failed to establish a nexus between the alleged commercial success and the *claimed* invention because they failed to show how any commercial units embody the claimed invention. Appx12-Appx13; Appx231-Appx233. "Evidence of commercial success . . . is only significant if there is a nexus between the claimed invention and the commercial success." *Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1311-12 (Fed. Cir. 2006). As the Board found, two declarations Appellants submitted in support of their alleged secondary considerations compared claims not at issue in the Board appeal. Appx231 (citing Appx240-Appx246; Appx247-Appx253). Similarly, two named-inventor declarations did not include the claim alleged to provide unexpected results or commercial data for an allegedly embodying process. Appx231-Appx232 (citing Appx258-Appx259; Appx264; Appx267-Appx271). Another inventor declaration included a table of data untethered from the claimed invention and contained no comparison to the closest prior art, Li. Appx232 (citing Appx265-Appx266). Having failed to prove a nexus, Appellants could not demonstrate commercial success of the claimed invention. *Galderma*, 737 F.3d at 740. Substantial

evidence therefore supports the Board's findings that Appellants' purported secondary considerations evidence does not establish nonobviousness.

## VI. CONCLUSION

Substantial evidence supports the Board's findings that Li teaches the catalyst cooler limitation of claim 1, including under Appellants' alternative construction, the mixing buffer space limitation of claims 13 and 20, and the reactor temperature controls of dependent claims 6, 16, and 22. Substantial evidence also supports the Board's findings regarding Appellants' secondary considerations evidence. The Court should therefore affirm the Board's decision.

Dated: August 5, 2024

Respectfully submitted,

/s/ *Justin Bova*

Farheena Y. Rasheed
*Solicitor*

Amy J. Nelson
*Senior Counsel for Patent Policy and Litigation*

Justin Bova
Kakoli Caprihan
*Associate Solicitors*

Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

*Attorneys for the Director of the United States Patent and Trademark Office*

## CERTIFICATE OF COMPLIANCE

I hereby certify pursuant to Fed. Cir. R. 32(b) that the foregoing COMBINED BRIEF AND SUPPLEMENTAL APPENDIX FOR THE APPELLEE - DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE complies with the type-volume limitation required by the Court's rules. The total number of words in the foregoing brief, excluding the table of contents and the table of authorities, is 7,812 words as calculated using Microsoft Word® software program.

/s/ *Justin Bova*
JUSTIN BOVA
*Associate Solicitor*
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

**CERTIFICATE OF SERVICE**

I hereby certify that on August 5, 2024, I electronically filed the foregoing COMBINED BRIEF AND SUPPLEMENTAL APPENDIX FOR THE APPELLEE - DIRECTOR OF THE UNITED STATES PATENT AND TRADEMARK OFFICE using the Court's CM/ECF filing system. I also certify that on August 5, 2024, a copy of the foregoing Brief was served by electronic mail on Appellants.

/s/ *Justin Bova*
JUSTIN BOVA
*Associate Solicitor*
Office of the Solicitor
U.S. Patent and Trademark Office
Mail Stop 8, P.O. Box 1450
Alexandria, Virginia 22313-1450
(571) 272-9035

# SUPPLEMENTAL APPENDIX

**Appeal No. 24-1209**
***In Re: Li Li, Qunzhu Li***
*****

## Index of Appellee's Supplemental Appendix


| Date | Document | Page No. |
|---|---|---|
| 02/07/2019 | Examiner's Answer in U.S. Patent Application No. 13/576,565 | SAppx1-17 |
| 12/08/2020 | Submission Under 37 CFR 41.52 in U.S. Patent Application No. 13/576,565 | SAppx18-54 |

UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 13/576,565 | 08/01/2012 | Li Li | C6208-001 | 8815 |

22429 7590 02/07/2019
HAUPTMAN HAM, LLP
2318 Mill Road
Suite 1400
ALEXANDRIA, VA 22314

| EXAMINER | |
|---|---|
| DOYLE, BRANDI M | |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1771 | |

| NOTIFICATION DATE | DELIVERY MODE |
|---|---|
| 02/07/2019 | ELECTRONIC |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

Notice of the Office communication was sent electronically on above-indicated "Notification Date" to the following e-mail address(es):

docketing@ipfirm.com
pair_lhhb@firsttofile.com

PTOL-90A (Rev. 04/07)

UNITED STATES PATENT AND TRADEMARK OFFICE

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**BEFORE THE PATENT TRIAL AND APPEAL BOARD**

Application Number: 13/576,565
Filing Date: 1 Aug 2012
Appellant(s): Li et al.

____________________
Joshua L. Pritchett
For Appellant

**EXAMINER'S ANSWER**

This is in response to the appeal brief filed 10/15/2018.

**Information Disclosure Statement**

The information disclosure statement (IDS) submitted on 01/17/2018 was considered with the processing of the amendment after final and indicated on the advisory action (PTOL-303) mailed 2/23/2018. However, a copy of the IDS signed by the examiner was not included with PTOL-303 at that time and is therefore included herein.

**(1) Grounds of Rejection to be reviewed on Appeal**

Every ground of rejection set forth in the Office action dated 10/17/2018 from which the appeal is taken is being maintained by the examiner except for the grounds of rejection (if any) listed under the subheading “WITHDRAWN REJECTIONS.” New grounds of rejection (if any) are provided under the subheading “NEW GROUNDS OF REJECTION.”

The following ground(s) of rejection are applicable to the appealed claims.

**Claim(s) 1-7, 9, 10, and 13-20 are rejected under pre-AIA 35 U.S.C. 103(a) as obvious over Chinese Patent Application Publication no. 1664074A, published 9/2/2005 (reference pages below are to the English Translation of CN 1664074A provided by applicant on 06/01/2016 and the figures originally cited).**

With respect to **claims 1-7, 9,10, and 13-20**, Li discloses a method (see e.g. figure 1; p. 18 - p. 21) comprising: reacting hydrocarbon materials with a catalyst in a riser reactor (p. 1, ¶ 3-4) generating gas, oil, and reacted catalyst (p. 21, ¶ 2); separating the reacted effluent in a settler producing a spent catalyst and a reacted effluent of gas and oil (p. 1, ¶ 3); stripping the separated catalyst in a stripping zone (p. 1, ¶ 3); regenerating the stripped catalyst in a regenerator by burning (p. 1, ¶ 3); and cooling at least a portion of the hot regenerated catalyst in a regenerated catalyst cooler using heat extraction medium fluid 37A/B/C that flows through a heat taking element in the tube side of the cooler 8A/B and fluidizing gas 35A/B/C distributed in

the lower portion of the cooler (figure; p. 18, ¶ 3-4) before transferring the cooled catalyst directly to the riser for reuse (p. 4, ¶ 1; figure).

Li teaches that the regenerated catalyst cooler(s) comprise one or more coolers located inside or outside the regenerator (p. 2, ¶ 4). There may be separate coolers to adjust one or more of the risers and/or the regenerator or one catalyst cooler with a plurality of outlets for sending catalyst to each of the desired riser reactors and regenerator (e.g. p. 2, ¶ 4 to p. 4, ¶ 1). This includes wherein a catalyst cooler is connected to a riser and used to adjust the reaction temperature of each zone in the riser or the temperature. The cooler cools the catalyst to a temperature from 200 to 720ºC (p. 3, ¶ 2), which encompasses the range of 360-650ºC. The coolers may comprise a shell which the catalyst flows through and houses tubes (heat taking element) in the upper portion and fluidizing media in the lower portion, each for providing cooling (p. 18, ¶ 3-4). The temperature of the cooled catalyst is controlled using the flowrate of the fluidized media, the heat-taking media through the tube, or by adjusting the temperature of the regenerator which includes by adjusting the flow of cold catalyst returning to the regenerator (p. 4, ¶ 1; p. 8, ¶ 1; p. 18, ¶ 4- p. 20, ¶ 1). Fluidizing medium 35A/B enters the cooler below and downstream from the tubes (heat exchange element) (Figure; see p. 18, ¶ 3-4)). Heat taking media includes water, steam, oil (p. 18, ¶ 4). The term "mixing buffer space" is not used in Li, however, the space in the catalyst cooler in which cooled catalyst and the fluidizing gas mix before leaving the cooler is interpreted as the mixing buffer space (figures; p. 18, ¶ 3-4).

Li teaches that the reaction zone may comprise one or more risers having a plurality of zones (p. 5, ¶ 3; p. 6, ¶ 1)). Li does not expressly teach "at least one reaction zone" but one or more risers with a total of two or more reaction zones falls within the claimed range at least one reaction zone. The feed to the reaction zone(s) includes hydrocarbon oil feedstock, regenerated catalyst which may be one or a mixture of uncooled regenerated catalyst or cooled regenerated catalyst, and a fluidizing gas (p. 5, ¶ 5 to p. 6, ¶ 2). The feed and catalyst mixture enters the riser in a pre-lift section of the risers or auxiliary rising pipes (p. 9, ¶ 1; p. 15, ¶ 1; p. 18, ¶ 3- p.

20, ¶ 1; p. 23, ¶ 3). The temperature of the catalyst mixture is controlled by adjusting the amount of each of the cold and hot catalyst supplied (p. 6, ¶ 2). “After the lifting mixing of the cold regenerated catalyst and the hot regenerated catalyst by a lifting medium 32 in the pre-lifting zone 4 of the heavy oil riser reactor, the temperature reaches equilibrium" (p. 19, ¶ 2). The pre-lift medium includes e.g. gas, oil, water (p. 15, ¶ 1). The first reaction mixture from a first reaction zone may be mixed with a cold shock agent to adjust the mixture temperature and passed to the subsequent zone (p. 1, ¶ 4 to p. 2, ¶ 2; p. 5, ¶ 1; p. 5, ¶ 1). The cold shock agent ay include water, oil, cold regenerated catalyst, cold spent catalyst, etc. (p. 5, ¶ 1). Cold regenerated catalyst may be passed through auxiliary or assistant riser with pre-lift media to a zone of one or more riser reactors as a cold shock or quenching agent for reuse in the riser (p. 6, ¶ 1). The operating temperature in the riser may be controlled using the hydrocarbon to oil ratio, the amount of cold catalyst and hot catalyst, temperature of cold catalyst (p. 6; p. 8, ¶ 1; p. 20, ¶ 1), multi-point feeding (p. 17, ¶ 3), and cold shock or quenching agents (p. 5, ¶ 2). The second reaction mixture is the mixture which is separated in the settler and regenerated (p. 2, ¶ 3).

Li teaches that <u>the regenerator</u> may comprise single-stage regeneration or two-stage regeneration wherein semi-regenerated catalyst is obtained from a first stage and regenerated in a second stage to obtain fully regenerated catalyst (p. 14, ¶ 3-4). The regeneration device/process may utilize conventional methods and devices for coke-burning regeneration (p. 15, ¶ 2). Hot regenerated catalyst is sent to a cooler or directly to a riser without cooling (p. 3, ¶ 1). Cooled catalyst may be recycled to the regenerator to regulate temperature therein (p.3, ¶ 4).

**Claims 21, 22 and 23 are rejected under pre-AIA 35 U.S.C. 103(a) as being unpatentable over Li as applied to claims 1,13 and 20 above, and further in view of U.S. Patent no. 2011/0220548 to Roux et al.**

With respect to **claims 21-23**, Li teaches using single stage regeneration or using two-stage regeneration for producing semi-regenerated catalyst in a first stage and then fully regenerated catalyst in the second (p. 14, ¶ 3-4). Thus, Li teaches transferring the stripped catalyst to a first stage regenerator for combustion regeneration (i.e. a combustor) connected to the stripping section; combusting-burning the stripped catalyst in the first stage to obtain a semi-regenerated catalyst; transferring the burnt catalyst to a second stage regenerator for combustion regeneration of the semi-regenerated catalyst and burning the catalyst therein to obtain the fully regenerated catalyst.

Li fails to teach the details of the two-stage regenerator.

However, Roux teaches a two-stage regeneration zone wherein the stripped catalyst is sent to the first regenerator, i.e. combustor (2) semi-regenerated catalyst may be drawn off (7) for use and is drawn off from the first regeneration stage (2) by a pipe (9) and transferred to the second stage regenerator (8), and fully regenerated catalyst from the second regenerator is returned through a transmission pipe (20) and control valve (21) to the first regenerator to control temperature of the first stage regenerator, i.e. combustor. Temperature (Figure 1, 0063-0091). The transmission pipe may be outside the regenerator and combustor (see Figure 1, transmission line 20). Figure 3 shows a similar embodiment to that just described wherein the first regenerator, i.e. combustor, is located above the second stage, however, the second stage catalyst is returned by a transmission pipe inside the regenerator (Figure 3; 0099-0106).

Li teaches using two stage regeneration and Roux teaches a known two-stage regenerator. It is a prima facie case of obviousness to combine prior art elements according to known methods to yield predictable results. In this case, it would have been obvious to one of ordinary skill in the art at the time of the invention to select the two-stage regeneration steps of Roux for the means for two-stage regeneration in the process of Li to obtain the predictable result of a regeneration of the catalyst using two-stage regeneration. The rationale to support a conclusion that the claim would have been obvious is that all the claimed elements were known

in the prior art and one skilled in the art could have combined the elements as claimed by known methods with no change in their respective functions, and the combination yielded nothing more than predictable results to one of ordinary skill in the art.

Furthermore, it has been held that apparatus limitations are not entitled to patentable weight in method claims and do not support the patentability of the subject matter encompassed by the prior art unless there is evidence indicating the criticality and superior results of the limitations. See Ex Parte Norio Akamatsu (BPAI 1992) and In re Gelnovatch, 595 F.2d 32, 37, 210 USPQ 136, 141 (CCPA 1979).

**(2) Response to Argument**

Appellant's argue the obviousness rejection under 35 USC 103 was improperly applied with respect to the following two limitations presented in claim 1: (1) the mixing buffer space; and (2) the catalyst cooler is connected to the riser reactor and is used to adjust reaction temperature of each reaction zone of the riser reactor, the temperature in the regenerator, or both, respectively. Appeal Brief, Section A, pages 9-10. Appellant's arguments are not found persuasive and are summarized and addressed here.

**Appellant's Argument (1) on pages 10-26 and appendix pages 47-48**

Appellant argues "a mixing buffer space" is not taught in the prior art to Li (Chinese Patent 1664074A (hereinafter "Li")). Appellant's arguments in support of this are briefly summarized as follows:

a. The specification and claims were translated into English for the instant application incorrectly with respect to the phrase "a mixing buffer space" and it should be corrected to "a catalyst mix and buffer zone for mixing and buffering catalyst downstream of said catalyst cooler". Pages 10-11.

b. Appellant acknowledges the specification does not define the term "mixing buffer space" but argues that common knowledge, plain meaning and art specific meaning of the terms, and knowledge in the art of FCC and problems associated with FCC catalyst coolers all require the term be defined as mixing the non-uniform catalyst to achieve a uniform and stable catalyst stream in the cooler or at any point between the cooler and riser. Pages 11-26.

c. Appellant argues "in the downstream of the described catalyst cooler" does not mean in a downstream portion of the cooler but instead at any location after the cooler and before the riser. In support appellant argues (i) plain meaning, (ii) the drawing should not be restrictive, and (ii) that in the downstream, in the downstream of and downstream of are synonymous. Pages 11-12.

d. Li does not teach adjusting the temperature of the cooled catalyst in a mixing buffer space to obtain a uniform and stable temperature. Pages 13-15. The interpretation of Li as disclosing a mixing buffer space is conjecture based on drawings and the space surrounding the fluidized medium distribution facilities cannot be deemed a mixing buffer space because it is only used to keep the catalyst in a fluidized state and does not mix with or take much heat from the catalyst. Pages 14-15 and 19-25.

Appellant's arguments are not persuasive. In response, with respect to the instant application containing an incorrect translation, the claims are examined as currently of record. Arguments addressing claim language as appellant intended are not persuasive or relevant until an amendment reflecting such language is entered.

Mixing buffer space is given its broadest reasonable interpretation in light of the specification and ordinary meaning of the terms (see Office Action mailed 4/4/2017, pages 3-4). The "mixing buffer space" is not described in the instant application. Looking as all mention in the specification of a mixing buffer space and giving the terms their plain meaning, the term is defined as a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler.

First, the specification was examined to glean a definition of the mixing buffer space. No express definition was provided in the specification. Relevant portions of the specification which define the cooler which houses the mixing buffer space disclose a cooler with "[the catalyst entrance of the shell of the described catalyst cooler directly (or through a pipeline)" having "internal components in the cooler for removing heat", "fluidized media distribution facilities under the cooler", and "a buffer space for mixed buffer catalyst" (page 4, lines 18-21). The catalyst are "cooled by catalyst cooler within 200 to 720°C" or "within 360 to 650°C" with the temperature of the cold regenerated catalyst "controlled by adjusting the flows of the fluidized media and/or taking-heat media or adjusting other parameters" (page 5, lines 13-24; page 6, lines 1-8). The coolers are defined as "traditional industrial equipment" with the invention

including a variety of structures and transmissions which one of skill in the art can easily understand (page 7, lines 8-14; page 8, lines 23-25). “When the cold regenerated catalyst through the catalyst cooler enters into the riser reactors directly (or fluidized bed reactor), the temperature of the cold regenerated catalyst in the reaction zones of riser reactors (or fluidized bed reactors) can be controlled by adjusting the flows of fluidized media and/or taking-heat media and/or the flows of cold catalysts retuned to the regenerator or adjusting other parameters." (page 7, lines 18-23; see also page 8, lines 11-15).

The mixed buffer space is described in the specification as “a buffer space for mixed buffer catalyst”, catalyst exiting “the catalyst mixed buffer space in the downstream of the described catalyst cooler", “the mixing buffer space in the lower part”, and “the regenerated catalyst after cooling enters into the mixing buffer space in the lower part”. Further, the transmission of catalyst form the buffer space to the regenerator/reactor may all occur outside or within the cooler's shell (page 5, lines 1 -6). From each of the figures (mixing buffer space is designated 9A, Figure 1; 9A and 9B in Figures 2-4) the heat exchanger is depicted as (not to scale) a shell housing (e.g. Figure 1, 8A) with a heat-exchange element (e.g. Figure 1, element fed by 37A) positioned in the upper portion of the shell (8A), extending through a portion of the shell and located above a fluidizing gas inlet (Figure 1, fed by fluidizing gas 35A), with empty space (Figure 1, 9A) between the tube and distributor labeled the mixing buffer space. In the figures, the buffering space appears to be contained below the mid line and within the lower portion of the shell (though the drawing is not to scale). The specification indicates that a number of catalyst withdraw lines are connected to the buffering space and the figures show these withdraw lines (e.g. Figure 1, 12A) are connected to the vessel/ buffering space below the fluidizing media distributor. The reference numeral 9 indicates that the buffering space is at least in part above the fluidizing media distributor. Thus the fluidizing media distributor, at least in some embodiments, appears to be located within the buffer space which would cause mixing of the fluidizing media and catalyst in the buffer space. With respect to the specification, there is

not description in terms of function, apparatus dimensions, or operating conditions for mixing buffer space.

Next, mixing buffer space does not appear to be a term in the art. Thus, looking at the ordinary meaning of the phrase "a mixing buffer space", mixing indicates combining or blending together into one mass or mixture (to combine or join; to create by combining ingredients; to add to another; a mixture of ingredients; or a combination of diverse elements), which could be combining two streams such as the cooled catalyst and the fluidizing gas into one stream. While another reasonable interpretation could also be mixing catalyst particles with other catalyst particles to produce a catalyst mixture or mixing particles of different temperatures to transfer heat among the same and produce one mixture having a uniform temperature as appellant alleges (appeal brief, page 16), there is nothing in the specification restricting the mixing buffer space to such interpretation. Buffer is something that lessens the shock of an impact or protects by intercepting or moderating adverse influences and space is a blank or empty area or an area provided for a purpose. This is consistent with some of the definitions provided by appellant (appeal brief, pages 16, 17, 18). Here, considering the definitions provided to the words, mixing, buffer and space and considering the figures and disclosure in the instant specification, a mixing buffer space can reasonably be interpreted as simply an area in the lower region of the shell/cooler designated for combining the catalyst with the fluidizing gas and/or hold up or space between the cooling tube and catalyst outlet which the cooled catalyst particles together pass through as the catalyst particles travel from the shell inlet in the upper region to the outlets in the lower base of the shell. This interpretation would allow the space "to perform mixing and buffering functions" as suggested by appellant (page 18).

There is no indication that the buffer space imparts any limitations beyond the empty area which allows the catalyst to pass through as it makes its way from the upper region of the shell and out of the withdraw lines in the lower region of the shell. There are no details regarding mixing in the claim that would require " a uniform and stable temperature" as argued by

appellant and no details provided in the specification that require the mixing step occur in any particular manner, under any particular conditions, for any time or happening, or to solve any known problem. Outside the phrase mixing/mixed buffer space, the instant specification does not use the word mix/mixed/mixing/mixture in discussing the steps of cooling the regenerated catalyst or the catalyst cooling apparatus. Thus, while Li does not disclose obtaining a uniform catalyst temperature in the cooler as indicated by applicant, this is not a claimed limitation.

Lastly, appellants argument that "in the downstream of the catalyst cooler" may indicate in the downstream of the cooler or downstream and outside of the cooler is not persuasive. This interpretation is contrary to the clear language and not supported in the specification.

**Appellant's Argument (2) on pages 25-32 and appendix pages 40-47**

Appellant argues the language of claim 1 requires "(only) one catalyst cooler (which is connected to only one riser reactor) is used (only) to adjust the reaction temperature of each reaction zone…" and that Li fails to teach such.

Appellant's arguments are not persuasive. In response, as shown by the insertion of language into the claim language when making the argument above, the claim is not restricted to only one riser, is not restricted to only one catalyst cooler, and is not restricted to wherein a cooler may only adjust the temperature of each reaction zone. While one riser having one reaction zone is an embodiment covered under claim 1, the claim utilizes the transition phrase "comprising" which does not exclude additional catalyst coolers, risers, and reaction zones, and the claim language itself states "at least one reaction zone" which includes more than one.

Further, Li teaches one or more risers having two or more reaction zones (pages 1-2, 5-6, and 8-9). One riser with two zones (1) and (2) is shown on pages 1-2. This includes a riser having at least one reaction zone as claimed. Li teaches wherein the regenerator is associated with one or more catalyst coolers, with examples providing 1, 2 or 3 coolers (pages 2, 3, 4, 8, 13, etc.) Li teaches wherein each of the risers and regenerator may be controlled with cooled catalyst or wherein only one may be controlled (page 4, 8, 13).

**Appellant's Argument (3) on pages 32-33**

Appellant merely makes a conclusory statement that claim 2 is non-obvious over Li with no discussion.

This statement is not accurate. The rejection of claim 2 over Li and rationale is provided above.

**Appellant's Argument (4) on pages 33-34 and appendix pages 44-47**

Appellant argues when the invention is considered as a whole the invention requires "'Precise control and optimal control of reaction temperature of each reaction zone'". Focus is drawn to the two features discussed in arguments (1) and (2), the technical field, technical problem to be solved, and technical effect of the difference. In support of the argument, Appellant alleges documentary evidence may be found in previously filed declarations (Zhang, Oct. 2015; Gao, Oct. 2015; Li, Jan. 2018; Li, Mar. 2018) and states such have not been considered. Appellant states the inventors sought to achieve reaction zone optimization and overcame problems including high catalyst-to-oil ratio, short reaction time, and high reaction temperature in addition to uniform cooled catalyst temperature.

Appellant's arguments are not persuasive. In response, Li teaches each of the limitations of the claims as presently claimed. Additionally, looking to the specification as a whole, Li achieves the same contact time, temperature and catalyst to oil ratio (discussed above), and Li teaches the same benefits of independent temperature control and reaction zone optimization (pages 3-4; benefits on pages 15-17)

**Appellant's Argument (5) on pages 34-35 and appendix pages 43-44 and 45-48**

Appellant argues objective evidence of unexpected results and commercial success shows the invention is not obvious over the prior art to Li. In support of this conclusion Appellant lists the following:

a. "long standing technical prejudice of 'short reaction time and high reaction temperature' and 'the temperature of the catalyst bed in the cooler is uniform' which

teaches away the object of the claimed method, and solves the technical problem that people have been eager to solve for more than 40 years but have never succeeded”;

b. “for the first time to realize truly ‘completely and absolutely freely independent control of the catalyst-to-oil ratio,’ and thereby realize the multi-zone overall optimization of each reaction zone of a riser reactor and optimal control of reaction depth”.

Appellant’s arguments are not persuasive. In response, first the declarations filed Oct. 2015 addressed other prior art utilized in previous rejections under §103 now withdrawn. The declarations were acknowledged in an office action when the rejection was withdrawn. Declaration filed Jan. 2018 was acknowledged in the advisory action. The arguments presented in the declaration followed the arguments addressed in the advisory and the response was not duplicated as indicated in PTO-303 mailed Feb. 23, 2018. Declaration filed March 2018 was considered and acknowledged in the Advisory Action mailed 4/16/2018 as not persuasive. The March declaration merely provides previously addressed arguments and a statement of a lack of commercial success of the prior art patent and in the field generally, no factual showings with respect to results or commercial success of the claimed invention was provided.

With respect to the evidence presented, the declarations and brief fail provide any factual showing of unexpected results or improvement over the invention disclosed in the Li patent. The contact time and temperatures of the instant application which are allegedly an unexpected improvement over the prior art are in the same ranges as those taught in Li.

| | **Instant Application** (referencing specification as filed 08/01/2012) | **Li (CN 1664074A)** (referencing translation supplied by Appellant 6/1/2016) |
|---|---|---|
| Temperature, heavy oil reaction zone | 400-650 C (page 10, line 27) | 400-650 C (page 1, last line) |
| Catalyst: Oil weight ratio, heavy oil reaction zone | 3-15 (page 11, line 1) | 3-10 (page 2, lines 2-3) |
| Contact time, heavy oil reaction zone | 0.05-5 sec (page 10, line 29) | 0.05-5 sec (page 2, line 2) |
| Temperature, gasoline reaction zone | 350-650 C (page 14, line 1) | 350-620 C (page 2, (2)) |
| Catalyst: Oil weight ratio, gasoline reaction zone | - | - |
| Contact time, gasoline reaction zone | 0.5-30 sec (page 14, line 3) | 0.5-30 sec (page 2, (2)) |

Some improvements over existing FCC technology and industry recognition are discussed in Appellants Reply to Office Action filed 10/19/2015 (see pages 26-28) but again this does not amount to a showing that the claims are non-obvious over the Li reference.

With respect to the knowledge of the art and the improvement of the invention, appellant has cited literature stating the catalyst bed of a fluidized reactor including exchanger is isothermal, but this does not amount to a teaching away from a mixing buffer space. Further, appellant's arguments presume the claim term mixing buffer space is interpreted in a way contrary to that provided in the action. As discussed above with respect to appellant's argument (1), the claim language is not so restrictive. Similarly, appellant's citations to art regarding reaction time and temperature of FCC reactors does not amount to teaching away from the claimed feature 1 by the Li patent. Without regard to art not cited, Li discloses the limitations of the invention as claimed in claim 1. Li discloses operating an FCC process with multiple reaction zones, which may be a single reactor having multiple zones or multiple reactors having one or more zones, with the heavy and gasoline reaction zones operating under the same conditions (see above table). Appellant has not provided any factual showing that the results obtained using the claimed invention are different than those of the Li patent.

Appellant's argument regarding commercial success is not persuasive. First, the applicant "bears the burden of proof of establishing a nexus between the claimed invention and evidence of commercial success". MEPE 716.03 Additionally, the commercial success discussed is that of the claimed invention, not the prior art, and the commercial success must be derived from the claimed invention. Id. In the instant argument and the prior cited declaration, the commercial success discussed is the lack of commercial success of the prior art Li patent. No evidence of commercial success of and derived by the claimed invention has been provided.

**Appellant's Argument (6) on page 38**

Appellant argues Li fails to teach the limitation of claims 6 and 16, "controlling the reaction temperature in the reaction zone of the riser reactor by adjusting a ratio of the cold regenerated catalyst that enters the riser reactor and feed of the hydrocarbon materials that enter the riser reactor, adjusting the temperature of the cold regenerated catalyst, using a multi-point feeding technology, adding a quenching agent to the riser reactor, or a combination thereof."

Appellant's arguments are not persuasive. In response, Li teaches the regenerator and risers may be controlled by regulating the flow rate of fluidization medium and cold catalyst returning (e.g. pages 3, 4, 6, 9), which includes ratio of cold catalyst to feed, controlling cold shock agent added to the riser (e.g. pages 5, 10, 26), i.e. quenching agent, or combinations. Li teaches that the catalyst to oil ratio (i.e. total catalyst having both hot and cooled regenerated catalyst) may be controlled independent of temperature by controlling the amount of cold regenerated catalyst (e.g. pages 3, 4, 6, 9). Li teaches "Better effects will be seen when the current dense-phase region heat removal technique, termination agent injection technique or multipoint feeding is employed along with the present invention" (page 17).

**Appellant's Argument (7) on page 39**

Appellant argues that dependent claims 21-23 are nonobvious for at least the same reasons presented with respect to claims 1, 13 and 20. The arguments are not persuasive for the same reasons discussed above.

For the above reasons, it is believed that the rejections should be sustained.

Respectfully submitted,

/BRANDI M DOYLE/
Examiner, Art Unit 1771

Conferees:

/PREM C SINGH/
Supervisory Patent Examiner, Art Unit 1771

/Walter D. Griffin/
Supervisory Patent Examiner, Art Unit 1774

**Requirement to pay appeal forwarding fee.** In order to avoid dismissal of the instant appeal in any application or ex parte reexamination proceeding, 37 CFR 41.45 requires payment of an appeal forwarding fee within the time permitted by 37 CFR 41.45(a), unless appellant had timely paid the fee for filing a brief required by 37 CFR 41.20(b) in effect on March 18, 2013.

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

Application of:
Li, Li and Li, Qunzhu

Examiner:
Doyle, Brandi M.

Serial No.: 13/576,565

Group Art Unit: 1771

Filing Date: August 1, 2012

Confirmation No.: 8815

For: METHOD AND EQUIPMENT FOR CIRCULATING COOLED REGENERATED CATALYST

Customer No.: 155692

MAIL STOP: **Submitted via EFS**
Commissioner for Patents
P.O. Box 1450
Alexandria, Virginia 22313-1450

**SUBMISSION UNDER 37 CFR §41.52**

This submission accompanies a Request for Rehearing under Board Rule (BdR) 37 concerns the Appeal under 35 U.S.C. § 134 of the Final Office Action dated October 17, 2017. The Request for Rehearing is timely as it was filed within the two-month period from the Decision of The Patent Trial and Appeal Board ("Board") dated October 8, 2020 ("Board Decision") under 37 C.F.R. §41.52

The Board has jurisdiction under 35 U.S.C. § 134(a).

**Amendment to Claims** is reflected in Listing of the Claims that begins at page 2.

**Remarks** begin at page 12

## LISTING OF THE CLAIMS

The following listing of claims will replace all prior versions, and listings, of claims in the present application:

1. (Currently amended) A method for circulating a cold regenerated catalyst, comprising

reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst;

separating the gas and oil products from the reacted catalyst in a settler,

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;

wherein a heat-exchanging element having a heat-taking medium inside is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located at the lower portion of the regenerated catalyst cooler;

wherein there is a catalyst mixing buffer space for mixing and buffering the cooled regenerated catalyst being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor a heat exchange element, the heat exchange element being located in a catalyst cooler and having a heat-taking medium inside;

adjusting temperature of the cooling catalyst in a mixing buffer space in the catalyst cooler downstream of the heat exchange element, the mixing buffer space having distribution facilities for a fluidized medium at a lower portion and one or more outlets for exiting regenerated catalyst, to form a cold regenerated catalyst having a temperature in a range of 200°C to 720°C; and

reusing the cold regenerated catalyst in the riser reactor directly through a transmission channel;

wherein the riser reactor comprises at least one reaction zone, the stripping section, and the settler;

the catalyst cooler is connected to the riser reactor and is used to adjust reaction temperature of each reaction zone of the riser reactor, the temperature in the regenerator, or both,

~~respectively~~

wherein the said one regenerated catalyst cooler is connected only to the said one riser reactor and is used to adjust the reaction temperature of each reaction zone of the riser reactor, so as to keep them in the optimal value, respectively.

2. (Currently amended) The method of claim 1, further comprising

lifting the cold regenerated catalyst through an assistant riser by a pre-lift medium to the riser reactor, and

using the cold regenerated catalyst as a quenching agent for reuse[[,]]

~~wherein the riser reactor further comprises a plurality of reaction zones for carrying out the reaction~~.

3. (Currently amended) The method of claim 1, wherein the temperature of the ~~cold~~ cooled regenerated catalyst ranges from 360°C to 650°C.

4. (Currently amended) The method of claim 1, further comprising

controlling the temperature of the cold regenerated catalyst by adjusting a flowrate of the fluidizing medium, the heat-taking medium, ~~the cold catalyst returning to the regenerator,~~ or a combination thereof.

5. (Currently amended) The method of claim 1[[5]], wherein being disposed a bypass transmission channel for transferring the hot regenerated catalyst to mix with the cooled regenerated catalysts, and the temperature of the cold regenerated catalyst mixture is controlled by adjusting a ratio of the cold regenerated catalyst and the hot regenerated catalyst.

6. (Currently amended) The method of claim 1, further comprising

controlling the reaction temperature in the reaction zone of the riser reactor by adjusting a ratio of the cold regenerated catalyst that enters the riser reactor and feed of the hydrocarbon materials that enter the riser reactor, adjusting the temperature of the cold regenerated catalyst[[;]], using a multi-point feeding technology, adding a quenching agent to the riser reactor, or a combination thereof.

7. (Previously presented) The method of claim 1, wherein the heat-taking medium is selected from the group consisting of water, steam, air, and oils.

8. (Canceled)

9. (Canceled)

10. (Currently amended) The method of claim l, wherein the ~~cold~~ regenerated catalyst ~~exiting from~~ <u>entering into</u> the catalyst cooler is a generated catalyst with a carbon content, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

11-12. (Canceled)

13. (Currently amended) A method for circulating a cold regenerated catalyst, comprising:

reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst;

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in are generator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst <u>by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use</u> ; ~~in a~~

<u>wherein a heat-exchanging element having a heat-taking medium inside is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located at the lower portion of the regenerated</u> catalyst cooler;

~~adjusting a temperature of the cooling catalyst in a mixing buffer space in the catalyst cooler downstream of a heat exchange element to form a cold regenerated catalyst having a temperature in a range of 200°C to 720°C, the mixing buffer space having distribution facilities for a fluidized medium at a lower portion inside the catalyst cooler and one or more outlets for exiting regenerated catalyst,~~

~~returning the cold catalyst to the regenerator to get lowered temperature therein; and~~

~~transferring the hot regenerated catalyst from the regenerator to the riser reactor through a transmission channel, without cooling, for direct reuse therein,~~

~~wherein the catalyst cooler is used to adjust the reaction temperature of each reaction zone of the riser reactor,~~

wherein there is a catalyst mixing buffer space for mixing and buffering the cooled regenerated catalyst being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor; and

being disposed a transmission channel at the lower portion of the catalyst mixing buffer space for returning the cooled regenerated catalyst to regenerator;

wherein the riser reactor comprises at least one reaction zone;

wherein the said one regenerated catalyst cooler is only connected to the said one riser reactor and is used to adjust the reaction temperature of each reaction zone of the riser reactor, the temperature in the regenerator, or both, respectively.

14. (Currently amended) The method of claim 13, further comprising

~~controlling the reaction temperature in the reaction zone of the riser reactor by adjusting a ratio of the regenerated catalyst that enters the riser reactor and feed of the hydrocarbon materials that enters the riser reactor, using a multi-point feeding technology, adding a quenching agent to the riser reactor, or a combination thereof~~

controlling the temperature of the cold regenerated catalyst by adjusting a flowrate of the fluidizing medium, the heat-taking medium, the cold catalyst returning to the regenerator, or a combination thereof.

15. (Currently amended) The method of claim 13, further comprising

~~mixing the cold regenerated catalyst exiting from the catalyst cooler with the hot regenerated catalyst exiting directly from the regenerator to obtain a regenerated catalyst mixture that has a uniform temperature lower than that of the hot regenerator catalyst,~~

~~transferring the regenerated catalyst mixture into each reaction zone of the riser reactor by a pre-lift medium; and~~

~~reusing the regenerate catalyst mixture in reaction in the riser reactor~~

being disposed a bypass transmission channel for transferring the hot regenerated catalyst

to mix with the cooled regenerated catalysts, and the temperature of the cold regenerated catalyst mixture is controlled by adjusting a ratio of the cold regenerated catalyst and the hot regenerated catalyst.

16. (Currently amended) The method of claim 1[[5]]3, further comprising

controlling the reaction temperature in the reaction zone of the riser reactor by adjusting a ratio of the cold regenerated catalyst mixture that enters the riser reactor and feed of the hydrocarbon materials that enters the riser reactor, adjusting the temperature of the cold regenerated catalyst, using a multi-point feeding technology, adding a quenching agent to the riser reactor, or a combination thereof.

17. (Currently amended) The method of claim 13, wherein the heat-taking medium is selected from the group consisting of water, steam, air, and oils.

~~wherein the riser reactor comprises a pre-lifting section;~~

~~the cold regenerated catalyst and the hot regenerated catalyst enter separately and directly into the pre-lifting section to get a uniform temperature of the regenerated catalyst mixture by pre-lifting media, and~~

~~the regenerated catalyst mixture is transferred into the reaction zone for reuse.~~

18. (Currently amended) The method of claim 1[[7]]3, wherein the regenerated catalyst entering into the catalyst cooler is a generated catalyst with a carbon content, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

~~wherein the temperature of the regenerated catalyst mixture is controlled by adjusting a ratio of the cold regenerated catalyst and the hot regenerated catalyst.~~

19. (Currently amended) The method of claim 1[[7]]3, wherein the temperature of the cooled regenerated catalyst ranges from 360°C to 650°C.

~~further comprising~~

~~controlling the reaction temperature in the reaction zone of the riser reactor by adjusting a ratio of the regenerated catalyst mixture that enters the riser reactor and feed of the hydrocarbon materials that enters the riser reactor, adjusting the temperature of the regenerated catalyst~~

~~mixture, using a multi-point feeding technology, adding a quenching agent to the riser reactor, or a combination thereof.~~

20. (Currently amended) A method for circulating a cold regenerated catalyst, comprising

reacting hydrocarbon materials with a catalyst in a ~~first reaction zone of~~ riser reactor to generate ~~a first reaction mixture~~ gas and oil products and a reacted catalyst;

~~controlling temperature of a second reaction zone by injecting a quenching agent downstream of the first reaction zone and mixing the quenching agent with the first reaction mixture to form a second reaction mixture,~~

~~reacting the second reaction mixture in the second reaction zone downstream of the first reaction zone to generate gas and oil products and a reacted catalyst,~~

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in are generator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;

wherein a heat-exchanging element having a heat-taking medium inside is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located at the lower portion of the regenerated catalyst cooler;

wherein there is a catalyst mixing buffer space for mixing and buffering the cooled regenerated catalyst being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor;

wherein the riser reactor comprises at least one reaction zone;

wherein the said one regenerated catalyst cooler is connected only to the one riser reactor and is used to adjust the reaction temperature of each reaction zone of the riser reactor, respectively.

~~reacting the second reaction mixture in the second reaction zone downstream of the first reaction zone to generate gas and oil products and a reacted catalyst,~~

~~separating the gas and oil products from the reacted catalyst in a settler downstream of the second reaction zone,~~

~~stripping the separated catalyst in a stripping section,~~

~~burning the stripped catalyst to obtain a hot regenerated catalyst,~~

~~cooling the hot regenerated catalyst in a catalyst cooler by a heat-taking medium in a heat- exchange element,~~

~~adjusting a temperature of the cooling catalyst in a mixing buffer space in the catalyst cooler downstream of the heat-exchange element to obtain a cold regenerated catalyst having a temperature in a range of 200°C to 720°C, the mixing buff er space having distribution facilities for a fluidized medium at a lower portion inside the catalyst cooler and one or more outlets for exiting regenerated catalyst, and~~

~~reusing the cold regenerated catalyst in the riser reactor for adjusting the temperature of the first reaction zone,~~

~~wherein the riser reactor comprises the first reaction zone, the second reaction zone, the settler, and the stripping section, and the reaction temperature of the second reaction zone is controlled by injecting the quenching agent.~~

21. (Currently amended) The method of claim 20, further comprising

controlling the temperature of the regenerated catalyst by adjusting a flowrate of the fluidizing medium, the heat-taking medium, or a combination thereof.

~~transferring the stripped catalyst to a combustor that is connected to the stripping section and burning the stripped catalyst in the combustor,~~

~~transferring the burnt catalyst to a regenerator and burning the catalyst in the regenerator to obtain the hot regenerated catalyst, and~~

~~maintaining the temperature of burning in the combustor by a transmission pipe and a control valve connecting the regenerator to the combustor,~~

~~wherein the combustor is connected to the regenerator by the transmission pipe outside the regenerator for returning the hot catalyst to the combustor, and the temperature for burning the stripped catalyst in the combustor is maintained by adjusting the flowrate of the hot catalyst back to the combustor via the transmission pipe and the control valve.~~

22. (Currently amended) The method of claim 20, further comprising

controlling the reaction temperature in the reaction zone of the reactor by adjusting a ratio

of the regenerated catalyst that enters the riser reactor and feed of the hydrocarbon materials that enters the riser reactor, adjusting the temperature of the regenerated catalyst, using a multi-point feeding technology, adding a quenching agent to the reactor, or a combination thereof.

~~transferring the stripped catalyst to a combustor that is connected to the stripping section,~~

~~burning the stripped catalyst in the combustor,~~

~~transferring the burnt catalyst to a regenerator and burning the catalyst m the regenerator to obtain the hot regenerated catalyst, and~~

~~maintaining the temperature of burning in the combustor by a transmission pipe and a control valve connecting the regenerator and the combustor,~~

~~wherein the combustor is connected to the regenerator by a transmission pipe for returning the hot catalyst to the combustor , and the temperature for burning the stripped catalyst in the combustor is maintained by adjusting the flowrate of the hot catalyst back to the combustor via the transmission pipe and the control valve.~~

23. (Previously amended) The method of claim [[1]]20, ~~further comprising~~ wherein the heat-taking medium is selected from the group consisting of water, steam, air, and oils.

~~transferring the stripped catalyst to a combustor that is connected to the stripping section and burning the stripped catalyst in the combustor,~~

~~transferring the burnt catalyst to a regenerator and burning the catalyst m the regenerator to obtain the regenerated catalyst, and~~

~~maintaining the temperature of burning in the combustor by a transmission pipe and a control valve connecting the regenerator to the combustor,~~

~~wherein the combustor is connected to the regenerator by a transmission pipe outside the regenerator for returning the hot catalyst to the combustor, and the temperature for burning the stripped catalyst in the combustor is maintained by adjusting the flowrate of the hot catalyst back to the combustor via the transmission pipe and the control valve.~~

24. (New) The method of claim 20, wherein the regenerated catalyst entering into the catalyst cooler is a generated catalyst with a carbon content, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

25. (New) The method of claim 20, wherein the temperature of the cooled regenerated catalyst ranges from 360°C to 650°C.

26. (New) The method of claim 1, wherein the method is used for various FCC process or other gas-solid fluidized bed reaction-regeneration process; and the regenerated catalyst entering the regenerated catalyst cooler is a regenerated catalyst, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

27. (New) The method of claim 1, wherein the method is used for Heavy oil fluid catalytic cracking, gas oil catalytic cracking, gasoline catalytic conversion, or light hydrocarbon catalytic conversion; or is used for Heavy oil pre-treating, methanol to olefins, fluid coking or flexible coking; and the regenerated catalyst entering the regenerated catalyst cooler is a regenerated catalyst, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

28. (New) The method of claim 13, wherein the method is used for various FCC process or other gas-solid fluidized bed reaction-regeneration process; and the regenerated catalyst entering the regenerated catalyst cooler is a regenerated catalyst, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

29. (New) The method of claim 13, wherein the method is used for Heavy oil fluid catalytic cracking, gas oil catalytic cracking, gasoline catalytic conversion, or light hydrocarbon catalytic conversion; or is used for Heavy oil pre-treating, methanol to olefins, fluid coking or flexible coking; and the regenerated catalyst entering the regenerated catalyst cooler is a regenerated catalyst, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

30. (New) The method of claim 20, wherein the method is used for various FCC process or other gas-solid fluidized bed reaction-regeneration process; and the regenerated catalyst entering the regenerated catalyst cooler is a regenerated catalyst, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

31. (New) The method of claim 20, wherein the method is used for Heavy oil fluid catalytic cracking, gas oil catalytic cracking, gasoline catalytic conversion, or light hydrocarbon catalytic conversion; or is used for Heavy oil pre-treating, methanol to olefins, fluid coking or flexible

coking; and the regenerated catalyst entering the regenerated catalyst cooler is a regenerated catalyst, an incompletely regenerated catalyst, or a contact agent with a carbon content or coking particles.

# REMARKS

Claims 1-6, 7, 10, 13-31 are pending.

Claims 1-6, 10, 13-23 are currently amended.

Claims 8, 9, 11 and 12 are canceled or were previously canceled.

Support to the Amendment to claims is found at least in the claims pending prior to entry of the current amendment. No new matter is introduced.

## GROUNDS FOR REHEARING UNDER 37 C.F.R. §41.52

Appellants' attorney wishes to point outs that Appellants believe they are compelled to require, and insist, that the following remarks/comments be presented as they are. Appellants request the Board and the Examiner consider the following remarks on the Board Decision and Examination of the instant application by the Examiner.

Appellants respectfully submit that the Board erred in affirming the rejections of claims by the examiner in the Final Action and request that the Board grant an opportunity for rehearing. Appellants wish to present the following grounds for rehearing according to 37 CFR 41.52. For concise presentation, supporting materials and evidence previously submitted and referenced below are not re-submitted. Newly submitted supporting materials are appended hereto as ANNEX 51-54 provided in Table 3 and the previously not submitted Annex 11-43.

## 1. Two main misapprehending of the claimed invention by the Board's Decision

**In summary:**

① ***Appellants respectfully indicate that Board's affirm on examiners' factual assertion and findings*** *that "Li discloses Feature 1 and Feature 2"* ***relying solely on theirs personal understanding*** *or experience* ***without any documentary Evidence, are two 'Impermissible Hindsight'*** *( belonging to* ***two Misunderstandings****) under MPEP§2145 X.A. and §2144.03A,* ***which should be brought to rehearing.***

**MPEP§2144.03 A:**

*It is not appropriate to rely solely on "common knowledge" in the art without evidentiary support in the record, as the principal evidence upon which a rejection was based.* Zurko, 258 F.3d at 1385, 59 USPQ2d at 1697 ("[T]he *Board cannot simply reach conclusions* ***based on its own understanding or experience****—or on its assessment of what would be basic knowledge or common sense. Rather, the Board must point to some concrete evidence in the record in support of these findings.*").

***② The Common Knowledge (Annex 1-6,7-10, 46-48, etc.) show that there are <u>three</u> "teaching away" from the claimed <u>Feature 1 and Feature 2</u>*** under *MPEP§2145 X.D.*

***Appellants respectfully indicate that the Examiner and Board's Appeal Decision have not been considered with any explanation by any documentary Evidence, as to <u>three</u> "teaching away" asserted many times by Appellants during Previous Procedures such as AFCP, Pre-appeal and Appeal, therefore it is insufficient*** *under MPEP §2144.03 A, B, C, and §2145 X.D,* ***all of which should belong to "overlook", which should be brought to rehearing.***

③ ***Regarding the three Expert's Opinion Evidence*** *under MPEP §716.01(c)III* and ***the three Objective Evidence of non-obviousness*** under *MPEP §716.01(a) , §716.02 , §716.03 and §716.04*, which is supported by the previously submitted Appendixes 1-8 and the previously submitted four Declarations by Gao, Zhang and Li

***Appellants respectfully indicate that*** the Board's Appeal Decision and the ***Examiners*** have ***NO comment or only one general sentence*** *(i.e. one general statement* ) on the above ***six key facts for argument, all of which should belong to "overlook", which should be brought to rehearing.***

④ ***Appellants respectfully indicate that, in any case, the <u>Board's Decision overlooks</u> the above rebuttal of*** *<u>three</u> "teaching away", three Expert's Opinion Evidence and three Objective Evidence of non-obviousness,<u> and **affirms simply** the Examiners' factual assertion and finding **without any support relying on scientific theory,**</u> merely* ***relying on legal precedent*** *without any documentary evidence and* ***theirs' own understanding***, **which is NOT appropriate** under MPEP §2144.04 and MPEP§2145, ***and should be brought to rehearing***.

**<u>MPEP§2144.04：Legal Precedent as Source of Supporting Rationale [R-11.2013]</u>**

*As discussed in MPEP § 2144, if the facts in a prior legal decision are sufficiently similar to those in an application under examination, the examiner may use the rationale used by the court. Examples directed to various common practices which the court has held normally require only ordinary skill in the art and hence are considered routine expedients are discussed below. If the applicant has demonstrated the criticality of a specific limitation, it would not be appropriate to rely solely on case law as the rationale to support an obviousness rejection.*

⑤ ***Appellants respectfully indicate that*** *it is* ***not in conformity with MPEP 2125*** for the Examiner and the Board ***to infer or speculate*** that *"Li discloses the claimed Feature 1 and Feature 2"*, ***by comparing merely Figure 2 of the present application with Figure 1 of Li's patent,*** because the regenerator structure, catalyst cooler structure and overall process flow of both Fig. 2 of instant application and Fig. 1 of Li, are totally different from each other, ***which should be brought to rehearing.***

**MPEP§2125:**

Drawings and pictures can anticipate claims if they clearly show the structure which is claimed. *In re Mraz, 455 F.2d 1069, 173 USPQ 25 (CCPA 1972).* However, the picture *must show all the claimed structural features* and how they are put together. *Jockmus v. Leviton, 28 F.2d 812 (2d Cir. 1928).*

When the reference is a utility patent, it does not matter that the feature shown is unintended or unexplained in the specification. *The drawings must be evaluated for what they reasonably disclose and suggest to one of ordinary skill in the art. In re Aslanian, 590 F.2d 911, 200 USPQ 500 (CCPA 1979).*

**The details as follows:**

**1) the Board overlooks the overall understanding and evaluation of claim 1 of the present application, which can be brought to rehearing.**

The present application is related to a method patent instead of an improvement of the specific structure of the apparatus.

The key point is that the present applicant, for the first time proposes "a regenerated

*catalyst cooler is used to adjust the reaction temperature of each reaction zone of the riser reactor, so as to keep them in the optimal value, respectively*( i.e. *to realize the overall optimization of multi zone reaction*) **(Feature 1)** and for the first time proposes "being set a catalyst mixing buffer space downstream of the catalyst cooler " **(Feature 2).**

**A. Claim 1, *as an integrated whole,* is not dividable,**

wherein Feature 1 put forward *the stricter requirement of the uniformity (especially in temperature)* of *the cooled regenerated catalyst exiting the catalyst cooler, so as to realize "precise and optimal control of reaction temperature of each reaction zone";* and *meanwhile Feature 2 is to ensure the more uniform and more stable temperature of the cooled catalyst entering to the downstream riser reactor for the first time in FCC field, so as to meet the above stricter requirement.*

**B. There is a close connection between *the Feature 1 and Feature 2 in the technical means and the technical effects/functions.***

*In a cooperative combination of the Feature 1 and Feature 2 which are synergistic, can improve operational reliability, safety, controllability and flexibility, hereby really solving the problem of "achievability" in commercial unit with better operability.*

**C. *Here, Appellants respectfully indicate that the present application eliminates the mutual interference between the two regenerated catalyst coolers*** *existing inherently in Li, thereby improving the stability and flexibility of the adjustment of the reaction temperature also, so as to enhance the operability of the riser reactor and so on.*

● ***The above criticality or unexpected results of Claim 1 over Li,*** *is supported by four declaration by Zhang, Gao, and Li, but which have not been considered by Examiners and Board* by any documentary Evidence, and *is **NOT adequate under MPEP§716, §716.01 and §2145.***

● **The interpretation of the claimed Feature 1 and Feature 2 of claim 1 by the Board and** the **Examiner *did not comply with the provisions of MPEP § 2111,*** and **deviated from the Specification of instant application and Common knowledge.**

● **Claim 1 should be seen as an integral technical feature and cannot be separated.**

Therefore, **claim 1 should be evaluated as a whole. The Feature 1 of Claim 1 is also an integral technical feature, which cannot be divide and should be evaluated as a whole.**

**Neither Examiner nor Board has evaluated according to the *"overall evaluation"* principle, which is a major OVERLOOK. We herein raise rehearing accordingly.**

Furthermore, the Examiner and the Board have confused the terms such as *"downstream" and "lower part", "radial" and "axial" direction, "adjust" and "connect", "reaction temperature" and "reactor inlet temperature", etc.,* and have also confused the substantial difference between ***ordinary external heat exchanger 8B and regenerated catalyst cooler 8A* of the present application.**

The Board's Appeal Decision has not followed the provisions of MPEP and departed from the rules and procedures set forth therein as follows.

**MPEP §2111:**

a. The Patent and Trademark Office ("PTO") determines the scope of claims in patent applications not solely on the basis of the claim language, but upon giving claims their broadest reasonable construction *"in light of the specification as it would be interpreted by one of ordinary skill in the art." In re Am. Acad. Of Sci. Tech. Ctr., 367 F.3d 1359, 1364[, 70 USPQ2d 1827, 1830] (Fed. Cir. 2004).*

b. "……. Further, the broadest reasonable interpretation of the claims must be consistent with the interpretation that those skilled in the art would reach." *In re Cortright, 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999)*

c. "For example, a particular embodiment appearing in the written description *may not be read into a claim* when *the claim language is broader than the embodiment.*" *Superguide Corp. v. DirecTV Enterprises, Inc., 358 F.3d 870, 875, 69 USPQ2d 1865, 1868 (Fed. Cir. 2004).*

**2) Misunderstandings on Feature 2**

**A. There is no documentary evidence, including Li, showing the term *"catalyst mixing buffer space" in the art*** *before the filing date of the present application.*

a. First, in terms of the structure, the catalyst cooler *(bayonet-type)* shown in **the Figure 2**

**of the present application** is totally different from that in **the Figure 1 of Li** *(coil-type)*.

Therefore, **according to MPEP§ 2125, the Figure 1 of Li cannot be used as the closest prior art to evaluate the patentability of the present application.**

**b. There is no record in Li's patent showing that Li has disclosed the "catalyst mixing buffer space". Moreover, it is apparently groundless that "catalyst mixing buffer space" can be identified in the Figure 1 of Li' patent under MPEP§2163.07(a) and MPEP§2144.03A, B, C.**

**MPEP§2163.07(a):**

"To establish inherency, the extrinsic evidence '*must make clear* that the missing descriptive matter is necessarily present in the thing described in the reference, and *that it would be so recognized by persons of ordinary skill. Inherency, however, may not be established by probabilities or possibilities.* The mere fact that a certain thing may result from a given set of circumstances is not sufficient.'" *In re Robertson,* 169 F.3d 743, 745, 49 USPQ2d 1949, 1950-51 (Fed. Cir. 1999) (citations omitted).

**Actually, before the filing date of the present application, it is unusual that a space is set at axial direction (vertical direction) in the lower port of the catalyst cooler,** *including the cooler shown* **in the Figure 1 of Li,** ***wherein the fluidizing medium distributor is usually disposed between the heat-exchanging tubes, or between the heat exchanger tubes and the shell of the cooler.*** *(see Fig. 6-61, on page 338 of Annex 52 , and Fig. in Annex 53 )*

Apparently, **those radial space or gap** ***cannot be deemed as the space downstream of the cooler based on the direction of flow of catalyst***, *thus cannot be seen as* ***the "downstream catalyst mixing buffer space".***

**As a result, it does not comply with MPEP§2163.07(a) for the Examiner and the Board to deduce that Li has disclosed "*downstream catalyst mixing buffer space*"** without any documentary evidence, merely according to Figure 1 of Li' patent .

**c. It is incorrect that Board consider that the present application does not actually provide a "catalyst mixing buffer space"** even though it is explicitly recited and identified "catalyst mixing buffer space 9A" in the specification of the present application( see para. 0015,0016,0017,0029, 0086,0098) , just because Li did not specifically identified the burner or

the combustor 5A within the regenerator 5.*(See line 5-10, page 12, in Decision on Appeal)*

Actually, the regenerators in Fig. 1 and 3 of the present application are the same structure with that shown in Fig. 1 of Li *(single-stage regeneration, no coke-burning drum),* while the regenerators in Fig. 2 and 4 of the present application are the other structure of regenerators with coke-burning drums that is ***totally different from the regenerators in Fig. 1 and 3 of the present application.***

Thus, it is totally misunderstanding for the Board to consider Li has disclosed "*downstream catalyst mixing buffer space*" based on the speculation that Fig. 1 fails to use 5A to mark the coke-burning drum while ***there is NOT Coke-burning drum 5A*** at all in Fig. 1 of Li.

● Coke-burning drum(烧焦罐), a fast-bed regeneration, is a professional term in the field of FCC. In the Figure 2 and 4 of the present application(two stage regeneration), Coke-burning drum 5A is fast-bed coke-burning regeneration device being mounted upstream of the regenerator 5. Therefore, it is not correct that the "烧焦罐" is translated into ″combustor″ in Board's Decision.

**B. According to MPEP 2111,** there are at least following **2 misunderstandings** in **Board's Decision** when interpreting Feature 2 on the basis of errors in factual assertion that Li has disclosed "catalyst mixing buffer space":

**First, the Board's Decision** *(See line 4-7 in page 10)* indicates: according to para. 0016 and 0017 in Specification of instant application, the expression "catalyst mixing buffer space in the downstream of the catalyst cooler" should be interpret as " a separated space downstream of the catalyst cooler", rather than "in the catalyst cooler downstream of heat-exchanging element".

According to recitation about *″the position of catalyst cooler″* in the specification of the present application, for example, "*set in the regenerator*" in Para. 0015, *"upflow mode"* in Para. 0029, etc., "the mixing buffer space 9A in the downstream of the catalyst cooler" should be reasonably interpreted as a separated space that *can be arranged "alone in any location that is after the cooler and before the riser reactor",* and can be disposed "*under the cooler 8A"*, thereby forming a integrated equipment with *the cooler 8A (see Figure 2 of instant application).*

For example, Fig 8-104, 8-105 of Annex 51 ( see Table 3 ) , show the up-flow catalyst cooler, whose *"downstream" is in the top of the catalyst coolers*, wherein the catalyst flows from bottom to top.

**Second,** there are at least **two misunderstandings** in the Board's and the Examiner's interpretation of Figure 2 of the present application.

**a. It is not correct that "the mixing buffer space under heat-exchanging element" in Figure 2** of present application **is interpreted as "the mixing buffer space in the catalyst cooler downstream of heat-exchanging element",** because "downstream of" and "upstream of" heat-exchanging element" are all in the top of the cooler.

In Figure 2 of the present application, the arrows shown beside 37A show the flow directions of the heat-taking medium. It can be seen from Figure 2 that the flow direction of the heat-taking medium is wholly different from the flow direction (*from top to bottom*) shown in Figure 1 of Li.

In the Figure 2 of the present application, the heat-taking medium 37A flows *from top to bottom* in the inner tube of the heat-exchanging element, and then enters the outer tube at the bottom of the heat-exchanging element, and then flows *from bottom to top* ,upwardly to leave the at the top of heat-exchanging.

There are many examples in which there is NO downstream space in the external heat exchanger, such as Figures 8-106 and 8-107 on page 1341, Figures 8-109, 8-110 on page 1342 of evidence 51; Figure 6-60 on page 337 of evidence 52; and Figures in evidences 53, 54. Please refer to Table 3 for details.

**b. It is not correct for the Examiner to consider that the catalyst cooler 8A is the 'Shell'.**

In Figure 2 of the present application, the arrows show the flow directions of the catalyst. The catalyst cooler is down-flow-mode that the catalyst flows downwardly *from top to bottom*, as recited in the para. 0098, lines 2-4 : "the cold regenerated catalyst after cooling enters into the mixing buffer space 9A in the lower part "("9A" is omitted in the specification).

Although, the description of Figure 2 is kind of compendious, the skilled in the art would

be very clear without any misunderstanding.

That is, this unibody-type heat exchanger comprises catalyst cooler 8A in the upper portion and mixing buffer space 9A in the lower portion[See para.0095 of Specification].The catalyst cooler 8A in the upper portion comprises a catalyst inlet connected to the regenerator, an internal heat-exchanging element (bayonet-type or coil-type, etc.) ,and a catalyst outlet which has the same diameter of the shell of the mixing buffer space.

It is common sense for the skilled in the art to design the apparatus in a way of setting **the same diameter of** catalyst transfer tubes and the devices (such as catalyst cooler), please refer to USP 5066627 for such settings (For more examples, please refer to Table 3, Figures 8-106 and 8-107 on page 1341 of evidence 51, Figures 6-61 on page 338 of evidence 52, and Figures in evidence 53 ,54).

In the Figure 2 of the present application, the catalyst mixing buffer space 9A is located downstream of the cooler 8A, i.e. the lower portion of the unibody-type external heat exchanger (under the heat-exchanging element). Actually, since the heat-taking medium enters into the upper portion of the heat- exchanging element, and leaves also from the upper portion of the heat-exchanging element, thus the space under the heat-exchanging element is not the downstream location of the heat-exchanging element.

It is well-known that a catalyst cooler comprises an inlet, a shell, a heat exchange element and an outlet. It is incorrect to consider that the catalyst cooler 8A is deemed only be the shell of the cooler for the skilled in the art.

**C. In the Office Actions in 2014 and 2015** (for example: two FOA in 2014 and 2015), Examiner indicates that **Li did not disclose the Feature 2** "catalyst mixing buffer space", and **Li did not disclose the Feature 1** "a catalyst cooler is used for separately adjusting the reaction temperature of each reaction zone" to maintain them in the optimal value separately ( Feature 1' disclosure must be evaluated in a combination of Li with Harandi).

However, the Examiner changes his opinion in the FOA in 2016, and the Examiner overturned the factual finding in previous OA in 2014 and 2015, and **asserts** that **Li oneself discloses the distinguishing Features 1 and 2** (this is **an Impermissible Hindsight**).

**Respectfully, Appellants point out that it is also not correct for the Board to sustain**

**and confirm this.**

The Board's misunderstanding on factual assertion that Li discloses the claimed Feature 2 of the present application is based on the **following 4 misunderstandings in common sense:**

**i. The Examiner alleged that the following 3 points:**

**a.** the size of the buffer space for catalyst mixing can be any size; **b.** the catalyst is mixed with other materials (i.e. air); **c.** the catalyst can be buffered to any temperature;

**Appellants respectfully point out that the Board maintain and confirm them, which are all misunderstandings.** (see last line 3-7, page 10 in the Board Decision on appeal).

Since the mixing and buffering are well-known concepts, the calculation of the size of the mixing buffer space is a common knowledge. Those skilled in the art know **how to calculate based on the technical requirements and production capacity of** the downstream reactor reaction temperature control accuracy (< 1 °C). *(please refer to Annex 46-48 of table 2).*

**ii. The following 3 points are all common knowledge in the FCC field.**

a. The function of fluidizing air is keeping the catalyst in a fluidizing status, rather than cooling the catalyst by mixing. That is because that the flow rate of the fluidizing air is only 0.5‰ based on the flow rate of the catalyst, which means that the fluidizing air has substantial NO influence of cooling the catalyst.

b. Other publication has disclosed that in the catalyst cooler, the cooling of the catalyst is achieved by changing heat transfer coefficient of heat-exchanging element, and the heat transfer coefficient of heat-exchanging element is changed by changing the flowrate of the fluidizing medium.

c. The fluidizing medium is mixed with the catalyst by fluidizing medium distributor, so Extra space is not necessary for mixing fluidizing medium and catalyst.

Therefore, the Examiner thinks that 'the function of catalyst mixing buffer space' is to realize the mixing of catalyst and fluidized air, which ***is a misunderstanding***. ***It is also incorrect for the Board to sustain and confirm this*** (see last line 3-7, page 10 in decision on appeal).

**D. Harandi's patent teaches an external cooler,** wherein the catalyst is cooled by catalytic conversion of light alkane, the reaction of catalytic conversion of light alkane is

endothermic, thus the catalyst can be cooled thereby. The Examiner incorrectly considers that Harandi discloses the mixing buffer space. However, Harandi is fundamentally different from the present application in terms of the way of heat exchanger. (The Examiner has realize these mistakes, and stop using Harandi as a prior art since 2016)

When the examiner realized the above mistake, the present application should be granted accordingly. However, the Examiner then pointed out that Li disclosed Feature 2 without providing any documentary evidence.

**Appellants respectfully point out that there is no reason for the Board to support the Examiner's opinion because neither the Examiner nor the Board has provide any documents to support their opinion.**

**E.** ***Feature 2 is non-obvious over Li-patent*** *under MPEP §2145 X.D.*

i. The evidence (e.g. textbooks, dictionaries, etc.), as common knowledge, prove that there is a long-standing technical prejudice "the catalyst bed temperature in the catalyst cooler is uniform (*although there is a radial temperature difference of up to a dozen degrees, even dozens degree in the catalyst bed* ) in FCC field, which teaches away from <u>Feature 2</u> under MPEP § 2145 X.D.(*see Table 2, Annex 7-10,46-48 and theirs' purposes, filed by IDS on Jan. 17, 2018)* .

Thus, ***those skilled in the art do not have the motivation to set up "a catalyst mixing buffer space" downstream of the catalyst cooler,*** **which is a** ***"superfluous, or useless"*** **step** ***(duo to the catalyst with uniform temperature)*****,** ***and Do be impossible to think of that it is necessary " being disposed a catalyst mixing buffer space downstream of the catalyst cooler or in the lower part of the catalyst cooler".***

ii. *In many cases, once the problem is found, the means are often easily available, but if the problem is not found, the means are impossible to talk about.*

***Therefore, Feature 2 is a typical example of which the technical problem, existing indeed in production practice and being neglected for a long time, has been solved by the use of common knowledge*** *(in the chemical filed )which has been abandoned because of technical bias in FCC field, So, Feature 2 is non-obvious over Li-patent under MPEP §2145 X.D.*

iii. **The above** ***criticality or unexpected results of Feature 2 over Li, is also supported by four declaration*** *by Zhang, Gao, and Li, but which* **have not been considered by Examiners**

***and Board*** by any documentary Evidence, which *is NOT adequate under MPEP§716, §716.01 and§2145.*

**3) Misunderstandings on Feature 1**

It is not in conformity with MPEP§2125 for the Examiner and the Board to compare Fig. 2 of the present application with Fig. 1 of Li, and then infer or speculate that Li discloses the Feature 1, because the regenerator structure, catalyst cooler structure and overall process flow of Fig. 2 of instant application and Fig. 1 of Li, are totally different from each other.

The Examiner's and the Board's confusion in the overall understanding of claim 1 and Feature 1 leads to at least two misunderstandings in the Appeal Decision.

**i.** ***"Although claim 1**…, **the catalyst cooler need not be directly connected the riser reactor by virtue of the conjunction 'or'.*** *instead, the claim broadly encompasses* a catalyst cooler that is *directly connected to ,e.g. the regenerator only, the riser reactor, or both and adjusts the temperature in regenerator and only one of the reactor zone in the riser reactor( e.g. Li , Fig. 1, catalyst cooler B*)" (*see line 11-20, Page 14* in Decision on Appeal)

***The above assertion is completely out of the spirit of the specification*** *(see para. 0019)* and ***the claim 1*** of the present application, and ***is not correct for the skilled in the art, since the term "adjust" and "connect" are totally two different concepts***.

a. The regenerated catalyst cooler in Figure 2 of the present application can be "connected to the riser reactor" and "connected to the regenerator". In any event, it can realize the *"adjusting the temperature only one of the reactor zone in the riser reactor, and only the temperature in regenerator, and the both, respectively"*.

When the temperature of each reaction zone have reach to the best values without any further adjustment, while the temperature of the regenerator has not yet reach to the best value, there is a need ***to adjust the temperature of the regenerator alone*** so as to render the whole system in the best mode. This is the basic principle of Multivariable control.

b. According to para. 0019 of the specification of the present application, **the catalyst pipeline connecting regenerator can be omitted.** Under such circumstance, the regenerated

catalyst cooler only can be used to adjust the temperature of each reaction zone, while it cannot be used to directly adjust the temperature of the regenerator.

***ii. "In any event, Li teaches a catalyst cooler that is directly connected to the riser reactor*** *and,……, from a thermodynamics standpoint, necessarily adjusts the temperatures of each reaction zone in the riser reactor*" (*see last sentence i.e. line 20 to last line 1,Page 14 in Decision on Appeal).*

As a matter of fact, according to Figure 1 of Li, cooler 8A is connected to reactor, and is used to adjust the temperature of the first reaction zone, thus may have an impact on the temperature of the second reaction zone. However, '*impacting the temperature*' is different from '*adjusting the temperature* to the best value', as '*impacting*' does not amount to '*adjusting and controlling*' of the temperature of a reaction zone.

Respectfully, the Board's confusion of the above two different solutions is apparently inconsistent with the basic principles of fluidized catalytic cracking ("FCC") and automatic control thereof, which is **a misunderstanding**.

Especially, for the "parallel sequence reaction" such as FCC (the reaction products will further react to produce undesired products gas and coke), the change of reaction temperature and catalyst-to-oil ratio will have ***a great impact on the reaction depth***. And the change of chemical equilibrium, i.e. the change of reaction depth will affect greatly the heat balance of each reaction zone in the reactor. Therefore, realizing the optimal control of reaction temperature and the optimization of reaction depth are very important. This is determined by the basic principle of "parallel sequence reaction" like FCC. (See table 1, especially page326-327 of Annex 1 and page 916 of Annex 3).

Therefore, if the claim 1 was interpreted only from the point of view of thermodynamics, without considering the effects of chemical kinetics and chemical equilibrium, the conclusion will be very fallacious for "parallel sequential reactions" such as FCC, *because* ***the interaction of high reaction temperature and large oil-to-catalyst ratio can result in an increasing in the yields of coke and off-gas.***

***Appellants respectfully point out that while the common sense evidence (table1 and annexes 1-6) submitted by the inventor can fully prove the above-mentioned standpoint,***

***neither the Examiner nor the Board looked into them,*** so their interpretation and finding that '*Li teaches a catalyst cooler that ...in a manner indistinguishable from that shown in Figure 2 of the current application.'* , *splitting excessively the claimed Feature 1,* is **not only deviates from the recitation** of " the location of catalyst cooler" in the specification, **but also deviates from the recitation regarding the technical result/effect** in paragraphs 0012, 0044 and 0054 of the specification.

Therefore, Appellants submit that the examiner's and the Board's assertion and findings fail to comply with the relevant provisions of MPEP 2111, 2143.01 III. and MPEP 2143.03.

**MPEP§ 2143.03**

*"All words in a claim must be considered in judging the patentability of that claim against the prior art."* In re Wilson, 424 F.2d 1382, 1385, 165 USPQ 494, 496 (CCPA 1970).

**MPEP§2143.01 III**

*The mere fact that references can be combined or modified does not render the resultant combination obvious unless the results would have been predictable to one of ordinary skill in the art.* KSR Int'l Co. v. Teleflex Inc., 550 U.S. 538, 417, 82USP Q2d 1385, 1396 (2007)

**iii. Feature 1 is non-obvious over Li-patent** under MPEP §2145 X.D.

**a. Feature 1 of claim 1, as a whole, is inseparable also.**

The Examiner's Answer *splits excessively Feature 1* of claim 1 (*almost splits into "technical term levels", such as "a catalyst cooler or a reaction zone", etc.). But the above "over-splitting" does not even reflect the sequence, function of the above basic steps,* and does not comply with the provisions of *MPEP§2143.03: All Claim Limitations Must Be Considered.*

*Base on the Specification and Claim 1 of the instant application* (see *Para. 0012, 0015-0019, in specification, and page 15 of PPT*), Feature 1 *has a lot of technical content that clearly defines that " the location of the cooler, what it is connected with , and what it adjusts"; and its effect/function is "to keep them at the best value, respectively".*

**b. That the problem to be solved of claimed Feature 1** is "to make the catalyst-to-oil ratio an freely independent adjustable variable" (see para.0012, in Specification), so as to use "the suitable catalyst-to-oil ratio and the suitable (relatively lower) reaction temperature of first

reactor zone "(see para.0052 ,in Specification), further realizing the overall optimization of the multi-reaction zone and the optimal control of the reaction extent for the first time.

**c.** ***The above multi-parameter optimization of Feature 1, in combination of Feature 2,*** **do produce a remarkable synergetic effect and a huge "butterfly effect"** *(especially with the lower yield of offgas and coke and a larger increase in capacity of 15-20%. See Para. 0059, 0060 in specification) with better safety and operability and stability and controllability over Li, which is not anticipated for those skilled in the art, based on the teachings of Li and the prior art, before the filling date of the instant invention.*

In fact, the prior art including Li DO be never aware of the above-mentioned technical effects/functions of the claimed Feature 1 of instant application.

**d. the Examiner and the Board overlook following "teach away"** under MPEP§2145 X.D

① Many textbooks and Patents give the opposite suggestions of "high catalyst-to-oil ratio and high reaction temperature," which teach away from *claimed* Feature 1.*(see Table 1 and Li +Annex 1,P366+Annex 2+Annex 3, P1153 +Annex 4, P349 -353 + Annex 5, P.49 + Annex 49, 50).*

② Li discloses that catalyst coolers A and C can be omitted, which teaches that catalyst cooler B cannot be omitted, which teaches away from claimed Feature 1.(see Para. 5, in Page 3/18, in Specification of Li-patent.)

**e. the Examiner and the Board overlook the "Non-obviousness of** claimed Feature 1" **over Li** under MPEP §2144.04,I.B.*(see Page 36 of PPT)*

In view of the above, claimed Feature 1, "omitting catalyst cooler B and auxiliary riser (or gasoline riser) 6 etc.", is with retention of all functions of Li also (In fact, with the better function, especially with the better results and better operability over Li), which is non-obvious over Li-patent under the MPEP §2144.04,I.B.

Li fails to disclose, suggest Feature 1, let alone the technical function/effects [i.e. adopting "a more suitable (relatively low) reaction temperature" *(See para.0052 in page 4 in specification of instant invention ]*, so as to achieve *"the Multi-zone overall optimization" and "the optimal control of reaction extent"*, which are produced by Feature 1 (See Table 1 and Annexes 1-6,49 and 50).

**f. The above criticality or unexpected results of Feature 1 over Li,** ***supported*** *by four declaration by Zhang, Gao, and Li,* ***have not been considered by Examiners and Board*** by any documentary Evidence, which ***is NOT adequate*** *under MPEP§716, §716.01 and§2145.*

**2. The Board cites more than 10 <u>legal precedent,</u> and also uses some new arguments *(for example, the following four points mentioned above)* without any written evidence.**

**<u>All of rejections</u> by following 4 new arguments <u>should belong to "new ground".</u>**

<u>1) In any case, Board's Appeal Decision affirms simply the factual assertion and finding by Examiners without any support relying on scientific theory, merely relying on legal precedent without any documentary evidence and theirs' own understanding, which is ***NOT appropriate*** under MPEP§2144.02, §2144.03 and §2144.04.</u>

2) the <u>Board's Appeal Decision</u> uses New Arguments (for example, the following 4 points mentioned above), which are not supported by any written evidence, ***should belong to "New Ground", and rehearing can be filed accordingly.***

① "…and unclaimed feature cannot impact patentability to claim" (see last 5 line, Page 9 in Decision on Appeal)

② "Although claim 1…, the catalyst cooler need not be *directly connected the riser reactor by virtue of the conjunction 'or'. instead, the claim broadly encompasses* a catalyst cooler that is *directly connected to ,e.g. the regenerator only, the riser reactor, or both and adjusts the temperature in regenerator and only one of the reactor zone in the riser reactor( e.g. Li , Fig. 1, catalyst cooler B*)" (*see line 11-20, Page 14* in Decision on Appeal)

③ "Although in claim 1…, the catalyst cooler need not be *directly connected the riser reactor by virtue of the conjunction 'or'. instead, the claim broadly encompasses* a catalyst cooler that is *directly connected to ,e.g. the regenerator only, the riser reactor, or both and adjusts the temperature in regenerator and only one of the reactor zone in the riser reactor( e.g. Li , Fig. 1, catalyst cooler B*)" (*see line 11-20, Page 14* in Decision on Appeal)

④ "That is so because, e.g. Li also did not specifically identify the burner or combustor 5A within regenerator 5…" (see line 5-8,Page 12 in Decision on Appeal)

**3. Five main "Overlook" in Decision on Appeal**

1) The evidence submitted on January 18, 2018 (Annex 1-10, 46-50) can fully prove the above-mentioned ***three "teach away"*** under MPEP 2145 X.D. and ***one "omitted element"*** under MPEP 2144.04 I.B. etc., which further proves that the Examiner's assertion and findings that "Li discloses or enlightens distinguishing Feature 1 and distinguishing Feature 2", is "impermissible hindsight" under MPEP§2145 X.A.

However, the Board overlook the above evidence and rebuttal merely by indicating that *"the game is the claim and unclaimed feature cannot impact patentability to claim"*, which is not in line with the relevant provisions of MPEP, **and belongs to "overlook".**

2) Regarding "reducing coke and gas yield, increasing the capability" has been explicitly recited in the present application; moreover, in Appeal Brief, Reply Brief and two Li's Declarations, the Appellant explains the above technical effect in details with the evidence of common sense (Annexes 1-6,49,50). However, the Board, in the decision(see line 1-7, Page 15 in Board's Decision on Appeal), considered that Appeal Brief, Reply Brief are entitled to little values as they are ***not accompanied by detailed comparisons and discussion*** about Li and the present application. *(see from last 12th line, Page 25 to last 3rd line, Page 32* , in Appeal Brief; *especially from last 7th line, Page 29 to 11th line, Page 30* ,especially in Appeal Brief).

**This belongs to "overlook" also.**

**4. Regarding the four Declaration, three experts' Opinion Evidence** *under MPEP §716.01(c)III* and **three objective evidence of non-obviousness** under *MPEP §716.01(a)*:

The Board's Decision on appeal has NO comment or only one *general* sentence *(or one general statement)* on the following ***six key facts and arguments,*** all of which should ***belong to "overlook"*** and ***can be brought to rehearing.***

All the submitted evidence about common sense (Annex 1-10, 49, 50, f*iled on Jan.17, 2018*), evidence about the technical fact (Appendix 1-8, *filed on Oct.19, 2015) and evidence currently submitted (*Annex 11-43), are new evidence for the Board to consider.

1) All of these complementary evidences together with the submitted evidence about the common knowledge evidence and technical fact prove that:

i. the present application has unexpected technical effect;

ii. three "teach away" in the field are overcome;

iii. For the first time, this present application realizes "independent control of the catalyst-oil ratio" in the commercial unit in the field, and truly solves the world-wide technical problem that people have been eager to solve but have never been successful, which has plagued the field for more than 40 years;

iv. the present application has great commercial successes.

2) This present application's great commercial successes can be proved by the second prize of Chinese National Science And Technology Progress Award. The technical features of the awarded project (Annex 11,12), the sci-tech novelty search report (Annex 13-17), the industrial application results of 15 users (Annex 25-39, 42, 43), and the experts' evaluation opinions (Annex 18, 21-24, 40, annex 13-17) and the industrial running results of 15 users (Annex 25-39, 42, 43) and expert evaluation opinions (Annex 18, 21-24, 40, 41) are completely consistent with the features 1 and 2 of claim 1 of the instant application.

i. Feature 1 of claim 1 of the present application uses "appropriate reaction temperature" (see paragraph 0048 of the specification of the present application) and multi-parameter synergy to realize the multi-zone overall optimization of catalytic cracking reaction for the first time, thus obtaining a huge "butterfly effect", reducing the coke yield of dry gas, and obtaining unexpected economic and social benefits. The technical effect obtained by the (multi-parameter) multi-zone overall optimization is far greater than the simple sum of the (single parameter) single optimization technical effects, resulting in a qualitative change of "quantity", which is beyond expectation, and cannot be predicted or inferred by the skilled in the art.

Appellants respectfully indicate that *the unexpected results drives from the claimed invention, and flows from the function and the advantage disclosed or inherent in Specification, and accords with the scope and the contents of the instant invention, which is supported by all documentary Evidence* (*see Table 1,2 and Annexes 1-50*) , *as follows:*

*The multi-parameter overall optimization of the present invention brings out* a *unexpected synergetic effect* and *a huge "butterfly effect" [see Amendment and Response (page 25-29) ,and Appendix 1-8, filed on Oct. 19,2015], as follows :*

- The running result of a unit *with capacity of 1.0 million ton/year* shows *that there is a great increase in the profit of 166 million RMB annually(see the underlined part of Appendix 1,2, );* ***and***

- The running result of a unit *with capacity of 1.4 million ton/year shows that there is a great increase in the profit of 185 million RMB annually,* and *the payback period of invest* is about *1.5 months (normally more than two years) (see the underlined part of Appendix 7).*

Applicants respectfully indicate that ***the above difference of 16 times in profit as different as before, much greater than those which would have been expected from the prior art to an unobvious extent, are of a significant, practical advantage, so the claimed claim 1 possesses non-obviousness and patentability under MPEP §716.02(a) I.***

**ii. Each FCC unit has a "downstream catalyst mixing buffer space" which is proposed by the present application for the first time.**

The two distinguishing features of claim 1 of the present application are complementary and inseparable. They are interrelated and interact in the technical sense.

They work together to solve a technical problem, that is, to improve the controllability, flexibility, reliability and stability of the device operation. Therefore, they should not be treated separately and isolated, but as a whole.

**iii. Since the technical effect of the present application is far better than that of Li patent.** Nobody is willing to adopt Li- patent after the successful operation by using the present application. By the end of 2014, invention claimed in this application has been applied to 15 commercial plants and achieved great commercial success.

The above commercial success is not caused by the improvement of sales technology and advertising, but from the present invention, the scope of claim 1, and the functions and advantages of the distinctive Feature 1 as recited in the specification (adopting a more suitable reaction temperature, See paragraphs 0012, 0048, 0055 and 0056 of the description) and the inherent functions and advantages of the distinctive Feature 2 (improving the controllability,

flexibility, reliability and stability of the operation).

**Applicants respectfully indicate that the Board, as did the Examiner, overlooked the above objective evidence (Item i ),** ***only by one sentence of no relevance*** without any detailed analysis and written evidence to support, which is NOT appropriate under MPEP§716 and MPEP§2144.03 C.

**Applicants respectfully indicate also that** ***there is no comment in the Board Decision on the above*** *item ii and iii,* which is also NOT appropriate under MPEP§716 and MPEP§2144.03 C.

Although Annexes 11-43 has not been submitted, but the two Li's declarations submitted in 2018 have a detailed comparative analysis of the technical solutions and effects of the invention and Li's patent, and ***declare the authenticity of all evidences*** (including common knowledge evidence and objective evidence, annexes 1-50) and ***their relevance*** (see item 4A on page 4/4, file on Mar. 19, 2018).

**●.As to Four Declaration**

1) **Zhang's Declaration** (7 pages, filed on Oct. 23,2015)declares: The criticality and non-obviousness of claim 1 and its distinguishing Feature 1 *(see item 11 on page 4 and items 13 and 14 on page 5-7),* and the criticality and non-obviousness of distinguishing Feature 2 *(see item 12 on page 5).*

2) **Gao's Declaration** (7 pages, filed on Oct. 23, 2015) declares also: The criticality and non-obviousness of claim 1 and its distinguishing Feature 1 *(see item 11 on page 4 and items 13 and 14 on page 5-7),* and the criticality and non-obviousness of distinguishing Feature 2 *(see item 12 on page 5).*

After having reviewed and understood the following ***6 references:*** CN 1664074 (i.e. Li-patent), U.S. 5,019,353 to Harandi, US 4830728 to Herbst, U.S. 6,059,958 to Ramos, U.S. 4,396,531 to Lomas and U.S. 2,531,356 to Evans, which are ***the basis for rejections set forth in the Office Action*** regarding independent claim 1,

***the above-mentioned two Declaration by Zhang and Gao,*** *declare that Criticality and Non-obviousness of Claim 1 , Criticality and Non-obviousness of the claimed* ***Feature 1 and***

***Feature 2*** *of Claim 1* over Li-patent according to Specification and Claim 1 of instant invention.

**The key points of two Declaration by Zhang and Gao, as follows:**

A. By means of regenerated catalyst cooling technology, *under the requirement of chemical equilibrium* , the present invention puts forward for the first time, which uses *'suitable large catalyst-to-oil ratio and suitable low reaction temperature'* to realize *the multi-zone optimization* of FCC reaction and *optimal control of reaction extend,* further realizing *overall optimization of the whole reaction and regeneration process.* As a result, this can help restrain greatly the unideal reactions such as over-cracking, thermal cracking and thermal condensation etc., and enhance greatly ideal reactions such as catalytic cracking, isomerization and aromatization etc. with high selectivity, and promote the reaction selectivity , so as to reduce coke and off-gas yield.

B. In order to do so (as above item A), *the means for making the temperature of the cooled regenerated catalyst* from the regenerated catalyst cooler *adjustable is critical* ,because the cooled regenerated catalyst exiting the mixing buffer space is directly fed to the each reaction zone.

The said mixing buffer space downstream of the catalyst cooler can help control *precisely the temperature of the cooled regenerated catalyst* exiting the catalyst cooler, so as *to help control precisely the reaction temperature* of riser reactor, which *is critical, also.,*

C. Li-patent neither pays attention especially to overall optimization for both each reaction-zone of the RISER and the whole reaction and regeneration process, nor points out especially that *the 'suitable lower reaction temperature'* could bring huge technical and economic effects. (See Li, page 2/18, line 21- page 3/18, line 36; *page 8/18, lines 19-20,* and page 8/18, lines 15-37, *in Chinese.*)

**D. Main distinguishing features of the present invention over Li** are as follows:

a. The claim 1 in present patent isn't provided with auxiliary riser or gasoline riser.

b. The claim 1 in present patent has one reaction zone at least. But Li-patent has two reaction zones at least.

c. Li neither sets the mixing buffer space to get uniform and stable temperature in the downstream of the catalyst cooler as recited in claim 1.

**Therefore Li does not teach or suggest *the claimed Feature 1, Feature 2* of Claim 1.**

**3) Li's Declaration** (7 pages, filed on Jan. 17, 2018), based on Common Knowledge (Annex 1-6,7-10, 46-48 , etc.) and evidence(Annex 11-43,49,50), declares also: Criticality and non-obviousness of distinguishing Feature 1 (see Item 2 on page 1 / 7 to item 3 on page 3 / 7), and criticality and non-obviousness of distinguishing Feature 2 (see Item 4 on page 3 / 7 to item 5 on page 5 / 7); and

A. Non-obviousness of claim 1 should be evaluated as a whole*(see item 6 on page 5/7)* ;

B. "the unexpected results under MPEP §716.02" *(see item 8 on page5/7 to page 6/7)* ;

C. "a Commercial Success under MPEP §716.03"*( see tem 9 on page 6/7 to page 7/7)* ;

D. "Long-Felt Need and Failure of Others under MPEP §716.04"*(see item 7 on page 6/7).*

**4) Li's Declaration** (7 pages, filed on March 19, 2018), based on Common Knowledge (Annex 1-6,7-10, 46-48, etc.) and evidence (Annex 11-43), declares also: The criticality and non-obviousness of distinguishing Feature 1 (see page 3 / 7 to page 4 / 7 item 3), and the criticality and non-obviousness of distinguishing Feature 2 (see Item 1 on page 2 / 7 to Item 2 on page 3 / 7); and

A. The authenticity and relevance of all evidence (Annex 1-50, including evidence (Annex 11-43) (see item 4A on page 4 / 4);

B. Long felt need and failure of others under MPEP 716.04 (see page 4 / 4, item 4b-4e).

***Appellants respectfully indicate* that *the facticity of all objective Evidences*** *(i.e. Annex 11-43, including Appendix1-8, filed on Oct.19,2015 and Annexes 11,13-16,25-40,42-43, as further corroborating evidences for the filed Appendix 1-8, have been not filed*) ***and nexus with the instant invention, is supported also by the declaration by Li*** (*see line 5-10, page 4, filed on March 19, 2018).*

**But, Appellants respectfully indicate that:**

① *the above-mentioned criticality and non-obviousness of claimed Feature 1 and*

*Feature 2 of claim 1 as a whole, ② the unexpected results under MPEP §716.02", and ③ "a Commercial Success under MPEP §716.03",*

*supported by four declaration by Zhang, Gao, and Li,* ***have not been considered by examiners and by Board*** with specific rationale (*only a general statement i.e.one sentence*) by adequate documentary Evidence*(see line 4,Page 13 to line 7,Page 13 in Decision on Appeal);* and

***there are NO any statement*** (*without a general statement i.e.one sentence yet*) *as to* ① *non-obviousness of claim 1 as a whole, and ② "Long-Felt Need and Failure of Others under MPEP §716.04"*,which is *NOT adequate* under *MPEP§716, §716.01* , § 2143.03 *and§2145.*

**5) The evidence submitted at this stage (Annex 11-43) contains 13 industrial experiments or operation data (to be added to table 1) to prove the technical effect of the claimed Feature 1 and Feature 2, which also proves the non-obviousness of the technical solution and claim 1 of the present invention.**

**6) MPEP §716.01(c)III: OPINION EVIDENCE**

See also *In re Oelrich,* 579 F.2d 86, 198 USPQ 210 (CCPA 1978) (*factually based expert opinions on the level of ordinary skill in the art were sufficient to rebut the prima facie case of obviousness*);

The following 3 OPINIONS, supporting by *the running results* of more than 6 years operation of *15 commercial units* , are factually based expert opinions on the level of ordinary skill in the art, *and are sufficient to rebut the prima facie case of obviousness.*(see Annex 25-39,42-43)

A. In June 2015, *Passed Appraisal of the Identification Committee* led by Yang Qiye (*Academician from Chinese Academy of Engineering*), that 'the innovativeness of the technology is outstanding and at international leading level' (See the underlined part of *Appendix 1 i.e. Annex 18*) . *The members of the Committee are all senior engineer, senior professor, senior researcher from Sinopec, CNPC, Tsinghua University, and Chemchina, etc..*

The unanimous *Opinions* are as follows:

a. To propose the conception of 'the optimization of multi- reaction-zone and the control

of reaction extent of FCC ***for the first time,*** so as to high-effectively promote ideal reactions such as Catalytic Cracking, Isomerization and Aromatization etc. while to restrain unideal reactions such as thermal cracking and thermal condensation etc.

b. To realize truly and absolutely independent control of regeneration temperature, catalyst-to-oil ratio and reaction temperature ***for the first time.***

c. To propose and study the necessary condition of multi-zone optimization in riser reaction: 'suitable low-temperature regenerated catalyst, suitable high-temperature feed, suitable reaction temperature, suitable catalyst-to-oil ratio'; to realize multi-zone optimization of riser for the first time, and to promote catalyst activity and reaction selectivity.

**B. In February 2015, having obtained high praise** of Identification Committee led by Jin Yong, Academician from Chinese Academy of Engineering, etc. that *'The technology innovation is outstanding and at the international leading level'.* (*See the underlined part of* Appendix 2 *i.e. Annex 40*)

**The unanimous *Opinions are, as same as the above Yang Qiye's Opinions.***

**C. High praised by Chen Bingzhen, Academician** from Chinese Academy of Engineering, in July 2015'…, In view of this problem, the present invention…, puts forward 'FCC process with cooled regenerated catalyst recycling technology'…, ***which solves the worldwide problem by optimizing the above operation parameters***,…'(See the underlined part of Appendix 8, i.e. Annex 24, the opinions by Chen Bingzhen, Academician).

## 5. As to claim 6, 16, 22

Appellants respectfully indicate that ***Li-patent uses only single-parameter adjustment of the catalyst-to-oil ratio*** to realize the control of reaction temperature.

*There is* ***no evidence including Li*** which discloses or suggests that ***the reaction temperature is controlled by the adjustment of the temperature of the cooled catalyst or the cold regenerated catalyst mixture, nor the*** *combined control* ***of the multi-parameters*** to realize the optimal control and accurate control of reaction temperature (*See para. 0024 in the specification*).

The ***criticality or unexpected results of claim 6 ,16and 22 over Li, is also supported by four declarations*** by Zhang, Gao, and Li, which have ***not been considered also by Examiners*** with rationale by adequate documentary Evidence.

Therefore, ***the claim 6, 16, and 22 are non-obvious and patentable over Li-patent.***

Appellants respectfully indicate that the ***Board's Decision overlooks the above rebuttal*** *and* ***affirms simply*** *the Examiner' finding* ***without any documentary support relying on scientific theory, which is NOT appropriate and should be brought to rehearing***.

## CONCLUSION

Appellants respectfully request a Rehearing on the Appeal under 37 CFR §41.52.

Appellants believe that no additional fees are required with this submission. However, if Appellants are incorrect, the undersigned authorizes the Commissioner to charge any fees that may be required, or credit any overpayment to be made, to the **Taylor English Duma LLP Deposit Account No. 50-5154.**

Respectfully submitted

Taylor English Duma LLP

Date: December 8, 2020

By: /zhaoyang li/
Zhaoyang Li, Ph.D.
Reg. No. 46,872
Attorney for Appellants

1600 Parkwood Cir. STE 200
Atlanta, Georgia 30339
Tel: (415) 851-9211
Fax: (415) 851-8868
zli@taylorenglish.com
Customer No.: 155692