**No. 24-1209**

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

In re: LI LI, QUNZHU LI,
Appellants

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in U.S. Patent Application Serial Number 13/576,565

# REPLY BRIEF OF APPELLANTS LI LI AND QUNZHU LI

**Appellants**

Li Li
Qunzhu Li

5-1101, Building 1st, No. 5,
Lianmeng Road, Jianxi
District, Luoyang Henan
Province 471003, P. R China
+86-13511013479
45993.02@gmail.com;
45993.01@gmail.com;
ha8528@163.com

September 25, 2024

## IDENTIFICATION OF EXEMPLARY CLAIMS

### U.S. Patent App. No. 13/576,565

**Claim 1.** A method circulating a cold regenerated catalyst, comprising:

> reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;
>
> separating the gas and oil products from the reacted catalyst in a settler;
>
> stripping the separated catalyst in a stripping section;
>
> burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;
>
> cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;
>
> *wherein when the **one** riser reactor **comprises at least two** reaction zones, the **one** regenerated catalyst cooler is connected to the **one** riser reactor and is used to adjust the reaction temperature of **each of the reaction zones** of the **one** riser reactor, so as to keep the reaction temperature of **each of the reaction zones** in an optimal value, respectively, or when the **one** riser reactor **comprises only one** reaction zone, the **one** regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the **only one reaction zone** of the **one** riser reactor, so as to keep the reaction temperature in an optimal value.*

Appx787 (emphasis added).

**Claim 13.** A method for circulating a cold regenerated catalyst, comprising:

> reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;

wherein a heat-exchanging element-is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located in the lower part of the regenerated catalyst cooler;

*blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space being disposed* ***in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor;*** and

*wherein when the* ***one*** *riser reactor* ***comprises at least two*** *reaction zones, the* ***one*** *regenerated catalyst cooler is connected to the* ***one*** *riser reactor and is used to adjust the reaction temperature of* ***each of the reaction zones*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature of* ***each of the reaction zones*** *in an optimal value, respectively, or when the* ***one*** *riser reactor* ***comprises only one*** *reaction zone, the* ***one*** *regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the* ***only one reaction zone*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature in an optimal value.*

Appx789-790 (emphasis added).

**Claim 20.** A method for circulating a cold regenerated catalyst, comprising:

reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises at least one reaction zone;

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;

wherein a heat-exchanging element having a heat-taking medium inside is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located in the lower part of a catalyst mixing buffer space;

blending and buffering the cooled regenerated catalyst in the catalyst mixing buffer space ***being disposed underneath the heat-exchanging element before the cooled regenerated catalyst entering the riser reactor,*** wherein the catalyst mixing buffer space is independent and separate from spaces taken by the heat-exchanging element; and

*wherein when the* ***one*** *riser reactor* ***comprises at least two*** *reaction zones, the* ***one*** *regenerated catalyst cooler is connected to the* ***one*** *riser reactor and is used to adjust the reaction temperature of* ***each of the reaction zones*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature of* ***each of the reaction zones*** *in an optimal value, respectively, or when the* ***one*** *riser reactor* ***comprises only one*** *reaction zone, the* ***one*** *regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the* ***only one reaction zone*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature in an optimal value.*

Appx791-Appx792 (emphasis added).

.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES .......... 9

STATEMENT OF THE CASE .......... 12

I. The Patent Application as claimed .......... 12

II. The scope and content of Li .......... 24

III. The Prosecution History and the Burden of Evidence .......... 28

IV. Summary of the Arguments .......... 34

V. Arguments .......... 34

i. Standard of Review .......... 34

ii. Prosecution errors during patent examination and Appeal .......... 35

VI. As to claims 6, 16, 22 and other claims .......... 37

VII. Conclusion .......... 37

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

**1. The Case cited by MPEP §2145** ........................................................ 10,11

*Soni*, 54 F.3d at 750, 34 USPQ2d at 1687

*In re Alton*, 76 F.3d 1168, 37 USPQ2d 1578 (Fed. Cir. 1996)

*In re Beattie*, 974 F.2d 1309, 1313, 24 USPQ2d 1040, 1042-43 (Fed. Cir. 1992)

*Piasecki*, 745 F.2d at 1472, 223 USPQ at 788

**2. The Case cited by MPEP §2145 X.A.** ................................................ 10,36

*In re McLaughlin*, 443 F.2d 1392, 1395, 170 USPQ 209, 212 (CCPA 1971)

**3. The Case cited by MPEP §2144.03 A,C,E** .................................. 9,10,11,29

*Zurko*, 258 F.3d at 1385, 59 USPQ2d at 1697
*Ahlert*, 424 F.2d at 1092,165 USPQ 421

**4. The Case cited by MPEP§2144.04 II.B** .................................... 10,11,29,36

*In re Edge*, 359 F.2d 896, 149 USPQ 556 (CCPA 1966).

**5. The case cited by MPEP §2111** ...................................................... 14,21,33

*In re Cortright*, 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999)

**6. The Case cited by MPEP§2141.02 I** .................................................... 15,20

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed. Cir.1983);

*Schenck v. Nortron Corp.*, 713 F.2d 782, 218 USPQ 698 (Fed. Cir. 1983)

**7. The Case cited by MPEP§2141.02 II** .................................................. 15,20

*Jones v. Hardy*, 727 F.2d 1524, 1530, 220 USPQ 1021, 1026 (Fed. Cir. 1984)

*Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1 USPQ2d 1593 (Fed. Cir. 1987), cert. denied, 481 U.S. 1052 (1987)*

**8. The case cited by MPEP§716.01** ........................................ 10,11,29

*In re Rothermel*, 276 F.2d 393, 125 USPQ 328 (CCPA 1960).

**9. The case cited by MPEP §716.01(c)III** ........................................ 11

*In re Oelrich*, 579 F.2d 86, 198 USPQ 210 (CCPA 1978)

**10. The case cited by MPEP §716.02(a) I** ........................................ 11,36

*In re Corkill*, 711 F.2d 1496, 226 USPQ 1005 (Fed. Cir. 1985).

**<u>Remarks:</u>** For brevity, all subsequent citations of the above Case 1-15 in this Appeal document, are replaced with "MPEP §xxxx".

**11. The Others**

*In re Van Os,* 844 F.3d 1359, 1360 (Fed. Cir. 2017) ............................ 35

Graham *v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966) ............ 35

*In re Lee,* 277 F.3d 1338, 1346 (Fed. Cir. 2002) .................................. 35

*Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 11-cv-033972014, WL 10983769 at *9 (C.D. Cal. March 23, 2014) ........................................ 31

*Young v. Brennan,* No. 15-cv-10633, 2018 WL 1079865 at *3 (N.D. Ill. Feb. 15, 2018) ........................................ 31

**Statutes**

28 U.S.C. § 1295(a)(4)(A) ........................................ 11

37 C.F.R. 1.132 ........................................ 10,11,28,36

## STATEMENT OF THE ISSUES

During prosecution, the Examiner cited merely Li against the nonobviousness of the pending claims, asserting that Li disclosed all the limitations of Features 1&2 of Claim 1 and thus claim 1 is obvious over Li.

Since Oct. 2015, in order to rebut the examiner's rejection, the appellants submitted Annexes 1-54 and their specific indications including 7 pages of detailed indications (see Table 1, 2, 3) that clearly detail the authenticity and relevance of all the Evidence (Annexes 1-54), **which adequately traverses the examiner's Findings,** but Examiner, without providing any documentary Evidence to support, disregarded all the them. **Unfortunately, the board affirmed the examiner's finding, which should simply be reversed.**

> **See MPEP 2144.03C:**
>
> If appellants adequately traverses Examiner's assertion of official notice, **Examiner must provide documentary evidence in the next Office action if the rejection is to be maintained.** See 37CFR 1.104(c)(2). See also *Zurko,* 258 F.3d at 1386, 59 USPQ2d at 1697 ("[T]he Board [or examiner] must point to some concrete evidence in the record in support of these findings" to satisfy the substantial evidence test). If Examiner is relying on personal knowledge to support the finding of what is known in the art, Examiner must provide an affidavit or declaration setting forth specific factual statements and explanation to support the finding. See 37 CFR 1.104(d)(2).**(emphasis added)**
>
> **and MPEP 2144.03 E**
>
> It is never appropriate to rely solely on common knowledge in the art without evidentiary support in the record as the principal evidence upon which a rejection was based. See *Zurko,*258 F.3d at 1386, 59 USPQ2d at 1697; *Ahlert,* 424 F.2d at 1092,165 USPQ 421.

**Appellants raise the following issues, also:**

1. Board erred in affirming that Examiner's decision that disregards or overlooks the **6 *key facts (or Arguments)* *reiterated*** by Appellants*(e.g. four "teach away", "unexpected results" over Li, and "omission of an element"*

*etc.)*, and supported by Annexes 1-6, 49,50 and ***four Declarations*** under 37 C.F.R. 1.132. Therefore, Board's Affirmance is erroneous under MPEP§2144.03 A, C,E,§2145,§2144.04, §2144.04 II.B, and §716.01 [*See In re Rothermel*, 276 F.2d 393, 125 USPQ 328 (CCPA 1960)].

Examiner's assertion that *"Li includes wherein a catalyst cooler is connected to a riser and used to adjust the temperature of **each zone** in the riser"* (see line 5-6 of 1st Full paragraph in Appx164 of Final Office Action) without providing any documentary evidence to support, is made based only on his/her own personal opinion. Therefore, Board's Affirmance is incorrect *under* MPEP§2144.03 A, C, E and *is an **"Impermissible Hindsight"*** under MPEP§2145 X.A.. *See In re McLaughlin*, 443 F.2d 1392, 1395, 170 USPQ 209, 212 (CCPA 1971)

2. Board erred in affirming Examiner's decision that disregards or overlooks the **2 *key facts (or Argum*ents) *reiterated*** by Appellants *(e.g. one "teach away", "unexpected results" over Li etc.)*, which are supported by Annexes 7-10, 46-48, 51-54 and by ***five Declarations*** under 37 C.F.R. 1.132. Therefore, Board's Affirmance is erroneous under MPEP§2144.03 A, C, E, §2145, §2144.04, and §716.01 [*See In re Rothermel*, 276 F.2d 393, 125 USPQ 328 (CCPA 1960)].

Examiner's assertion that *"Li disclosed the mixing buffering space"* (see Para. 7, at Appx161 and Para. 9, at Appx162 of Final Office Action filed on Dec. 24,2021) which, without any documentary evidence to support, was made only by comparing merely Fig. 2 of the present application with Fig. 1 of Li, while both figures are totally different. Therefore, Board's Affirmance is incorrect under MPEP§2143 A, C, E and is an ***"Impermissible Hindsight"*** under MPEP§2145 X.A. *See In re McLaughlin*, 443 F.2d 1392, 1395, 170 USPQ 209, 212 (CCPA 1971)

3. Board erred in affirming that Examiner's disregards or overlooks on the synergistic effect /result of Features 1 & 2 under MPEP §716.02(a)I.

4. Board erred in affirming that Examiner's disregards or overlooks on **three *"Opinion Evidence"*** of non-obviousness under MPEP §716.01(c)III and three ***"Objective Evidence"*** of non-obviousness （such as *the unexpected results* under MPEP §716.02(a)I, *Long-Felt Need and Failure of Others* under MPEP §716.04, *a commercial success* under MPEP §716.03）, all these are supported by the previously submitted Annexes 11-43 (Appx364-552) and the ***five Declarations*** under 37 C.F.R. 1.132, therefore, Board's Affirmance is not appropriate under MPEP §716.01, §2144.03A,C,E, §2144.04, and §2145.

6. Board erred in construing the "comprising" limitation as open-ended, allowing for different catalysts from different catalyst coolers for adjusting the reaction temperatures of ***each of*** different reaction zones of ***one riser reactor,*** as coming within the scope of the challenged claims.

Because Board failed to offer any Evidence regarding obvious modifications to the Li concerning the single use of a catalyst cooler, there would be nothing to address on remand, and **Board's decision should, therefore, simply be reversed.**

For the above-mentioned 18 key fact or Argument, **which adequately traverses the examiner's assertions of official notice,** But Examiner, without providing any documentary Evidence to support, disregarded all them. **However, the board affirmed the examiner's finding, which should simply be reversed.** See again the above **MPEP 2144.03C, E.**

# STATEMENT OF THE CASE

This appeal arises from the examination of U.S. Patent Application No. 13/576,565. Specifically, the Board affirmed the Examiner's rejection of claims 1-7, 10, 13-25, 27, 29, 31 and 33 as obvious over Li and rejection of claim 32 as obvious over Li in view of Palmas. See Appx1-Appx15; Appx114-Appx156; Appx97-Appx113; Appx79-Appx96. Appellants filed a Request for Rehearing, which the Board denied. See Appx225-Appx238; Appx810-Appx865. Appellants then appealed to this Court.

But claim 32,33 are cancelled during the appeal to the Board. See Appx36.

Examiner offered the Chinese publication of Li (CN1664074), Appx738-Appx762, and later asked the appellants to submit an English translation, Appx699-Appx737.

## I. The Patent Application as claimed

The claimed invention pertains to the "use of the method and equipment for circulating cooled regenerated catalyst for tar catalytic cracking and low-grade gasoline catalytic cracking." See [Specification at 6 (Appx215), ¶0001 of the '556 publication].

## The interpretation of the claimed claim

### i. The claimed Feature 1 of claims 1, 13, and 20

**The independent claimed Feature1 of 1,13,20 recite, *inter alia*:**

" … wherein when the one riser reactor comprises at least two reaction zones, the ***one*** regenerated catalyst cooler is connected to the ***one*** riser reactor and is used to adjust the reaction temperature of each of the reaction zones of the one riser reactor, **so *as to keep the reaction temperature of each of the reaction zones in an optimal value,*** respectively, or when the

one riser reactor comprises only one reaction zone, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the only one reaction zone of the one riser reactor, ***so as to keep the reaction temperature in an optimal value*.”** (hereinafter referred to as **“Feature 1”)**

**1. Here, Appellants respectfully submit that:**

(1) The claimed Feature 1 is **an overall means including a functional limitation,** which has been proposed by present application **for the first time** in the art (i.e. FCC field), and there is **No documentary record** in all Common Knowledge and prior arts including Li that disclose feature 1 before the filing date of the present application.

(2) As we can see from the above claimed claim 1, both its preamble and the claimed feature 1 state only that "the **one riser reactor comprises one or at least two reaction zones”** (does not mention one or more catalyst cooler), But it is explicitly stated that "the **one** regenerated catalyst cooler connected **only one** riser reactor and is used to adjust the reaction temperature of **each reaction zone** of the **one** riser reactor”(see also paragraph [0015] in specification (Appx215) and page 3 of Response filed on Sept. 15, 2021(Appx878) , it is explicitly stated that *"**each** catalyst cooler being respectively connected **one riser reactor** is used to adjust the reaction temperature of **each reaction zone** of the corresponding reactor”.*

It is specified also in the description of attached Figure 1-4 that

① the one non-limiting example of *the one riser reactor comprises only one reaction zone 2* (*see* para. 0083, line 3-4 of the specification and Fig. 1(Appx.219 and 211));

② the one non-limiting example of *the one riser reactor comprises two reaction zones* having the 1st reaction zone 3 and the 2nd reaction zone 2

(*see* para.0094, line 3-5 of the specification and Fig.2(Appx.219 and212));

③ the one non-limiting example of *the two different riser reactor, the heavy oil riser reactor* comprise the 1st reaction zone 3 and the 2nd reaction zone 2, the gasoline riser 6, ***each riser reactor*** *is connected* **only one** *catalyst cooler* (*see* para.0112, line 4-6 of the specification and Fig.3(Appx.220 and 213)); and

④ the one non-limiting example of *the two heavy oil riser reactor* comprise the 1st reaction zone 3A and the 2nd reaction zone 2A, ***each riser reactor*** *is connected* ***only one*** *catalyst cooler* (*see* para.0134, line 3-6 of the specification and Fig.4(Appx222 and 214)).

In view of the above, NO matter it is the specific limitation of the claimed feature 1 of claim 1 or the specific description in specification and Figure 1-4, the open-ended term "comprising" in the claimed Feature 1 of claim 1 permits merely **one** reactor the use of one or more reaction zone, rather than the use of one or ***more*** catalyst cooler.

Therefore, the Board's finding of ***the "comprise*** in claim 1***"*** *(see the first full paragraph in page 2* of the Appellee's Brief), is not consistent with the claimed feature 1 as recited in claim 1,13,20, and is not consistent with the statement in the specification and drawings, therefore, the Board's finding is erroneous under MPEP §2111.

> [see "The broadest reasonable interpretation does not mean the broadest possible interpretation. Rather, the meaning given to a claim term must be consistent with the ordinary and customary meaning of the term (unless the term has been given a special definition in the specification), and ***must be consistent with the use of the claim term in the specification and drawings.*** Further, the broadest reasonable interpretation of the claims ***must be consistent with the interpretation that those skilled in the art would reach.*** *In re Cortright*, 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999)]

**(3)** As recited independent claim 1,13, 20 of the present application, the claimed Feature 1 is **an overall means *including a functional limitation,*** rather than the selection of the specific operating parameters and rather than the specific structure and the connecting manners etc. of the "catalyst cooler" itself, therefore, should not be split and the non-obviousness of the claimed Feature 1 should be evaluated as a whole under MPEP 2141.02 I and II.

Therefore, the Board erred in affirming that Examiner split excessively the claimed Feature 1 to the term word "catalyst cooler" etc., and **failed to consider its function** *that is "is used to adjust the reaction temperature of* ***each reaction zone of the one riser reactor*** *comprising* ***one or more*** *reaction zones, respectively"*.

And the Board erred in finding that ① ***for the "catalyst cooler" limitation,*** the open-ended term "comprising" in claimed Feature 1 of claim 1 permits the use of ***more than one*** catalyst cooler; and ②Li also teaches using a single catalyst cooler.

2. **The Examiner disregarded the substantial differences in the problem to be solved and the function/results to be achieved between the traditional catalyst cooler and the regenerated catalyst cooler.** See Specification of the present application, Appx172(3:26-30)-Appx173(4:1), Appx180(11:25-26), Appx181(12:16-19); and Li's English translation, Appx700(1:7-11), Appx715(16:2-3, 15-20).

In fact, there is no documentary evidence that prior art (***including Li***) discloses the problem to be solved proposed firstly by the claimed Feature 1 of claim 1 of the present application.

**3. The Examiner disregarded the substantial differences between the traditional catalyst cooler and the regenerated catalyst cooler.**

Here, Appellants respectfully submits that there are significant differences in the technical requirements (including location of use, connection manner, structure and parameters, etc.) between the traditional external catalyst cooler and the regenerated catalyst cooler of the present application.

Firstly, Figure 2 of the present application, as an non-limiting example *(because the traditional external catalyst cooler ( i.e. heat exchanger) is not showed in Figure 1,3,4)* for illustrating the fundamental differences between the regenerated catalyst cooler and conventional external heat exchangers.




Remarks**: a non-limiting example:** another outlet ***(****with the red cycle path)* in the Fig. 2 represents a bypass 12A, which is designed ***for adjusting or controlling*** the temperature of the cooled regenerated catalyst and/or ***the reaction temperature*** of each

> reaction zone (*which is within the scope of* the traditional external heat exchanger recited in paragraph 29 etc. of the present application).

(1) ***The green dashed box*** represents a traditional external catalyst cooler (or exchanger) 8B. The circulating Catalyst in it comes from the regenerator 5, goes through transport pipe 10B for heat-exchanging and cooling, and then returns to the regenerator 5 via transport pipe 12B to complete one cycle ***(the green cycle path*** in the diagram), achieving heat removal from the regenerator 5.

(2) ***The red dashed box*** represents the regenerated catalyst cooler 8A described in the present application. The regenerated catalyst enters the regenerated catalyst cooler 8A through transport pipe 10A for heat-exchanging and cooling, then goes through transport pipe 11A into the riser reactor ***(****including* ***1st reaction zone 3, or 2nd reaction zone 2***) via pre-lift zone 4 and subsequently enters the settler 1 for separation of reaction gases and catalyst. The separated catalyst then goes through the stripping section 1A and returns to the regenerator 5, this is a reaction-regeneration cycle, including the *"connected to the riser reactor's each reaction zones*" as mentioned in claim 1 (see ***the blue cycle path*** in Fig. 2).

**(3)** ***The red cycle path*** in the diagram represents a catalyst circulation bypass 12A which is designed for adjusting or controlling the temperature of the regenerated catalyst after cooling. It allows a portion of the catalyst to return to the regenerator 5.

The innovative cooled regenerated catalyst circulation, as represented ***by the blue cycle,*** the regenerated catalyst enters a regenerated catalyst cooler to cool down to a lower temperature after leaving the regenerator, and after cooling enters the riser reactor at a high oil-to-catalyst ratio (***blue cycle***), while another portion

(optionally configured) returns to the regenerator (***red cycle***). By adjusting the blue and/or red cycles, it becomes possible to achieve high oil-to-catalyst operation while maintaining high regeneration and feed temperatures.

Therefore, the regenerated catalyst cooler in claim 1 of the present application is connected to the reaction zone, while the conventional external heat exchanger *(i.e.,* conventional external catalyst cooler) is connected to the regenerator. There are substantial differences between the two types of catalyst coolers in the connection mode, technical function, control requirement, etc.

In addition, the function of the conventional external catalyst cooler is only "heat-removing", while the regenerated catalyst cooler in claim 1 not only has the "heat-removing" function, but also has the function of *"optimizing the operation conditions of the reaction system"*.

Secondly, As known, before the filing date of the present application, the large catalyst-to-oil ratio under heat balance of riser reactor is not achieved and the claimed function of the claimed ***regenerated*** catalyst cooler *"for adjusting the reaction temperature of each reaction zone is not achieved",* also.

There are the two key milestones in FCC's catalyst cooler, please see the following figure:




Here, Appellants respectfully submit that after 27 years of tireless exploration and research starting from UOP's first patent of the catalyst cooler connected with the Riser（*US4396531 to Lomas*, see Appx763-769), **the present application came out in 2008 and achieved the commercial running for the first time in 2008.**

Therefore, Feature 1 of the present application satisfies **the "Long-Felt Need and Failure of Others"** under MPEP §716.04, so the claim 1,13,20 is nonobvious and patentable.

*For details，please see page 17, last line –page 20, last 2nd line of the Appeal brief to court.*

**ii. The claimed Feature 2 of the claim 13,20**

**The independent Feature 2 of 13,20 recite, *inter alia*:**

*blending and buffering the cooled regenerated catalyst in a catalyst*

*mixing buffer space being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor;* （hereinafter referred to as ***"Feature 2"*** ）

**Here, Appellants respectfully submit that:**

① It is clear from independent claims 13,20 that the *"blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space"* is one independent step to get the cooled catalyst itself an uniform and stable temperature.

② **Feature 2** is an overall means including a functional limitation, which have been proposed by present application **for the first time** in the art (that is FCC field), and there is No documentary record in all Common Knowledge and prior arts including **Li that disclose feature 2** before the filing date of the present application (see Table 2 on Appx582 and Annexes 7-10,46-48,51-54 (Appx583-614, 615-630)).

In fact, **"*a catalyst mixing buffer space*"** shows a clear limitation of "for mixing and buffering the cooled catalyst" (see paragraph [0016] in specification (Appx216)); **rather than** "for the cooled catalyst mixing with the fluidizing medium" argued by Examiner (see 1st full paragraph of page 12(Appx.108)).

As recited independent claim1,13, 20 of the present application, the claimed Feature 2 is **an overall means *including a functional limitation,*** rather than the selection of the specific operating parameters and rather than the specific structure of the "mixing buffer space" itself, therefore, should not be split and the non-obviousness of the claimed Feature 2 should be evaluated as a whole under MPEP 2141.02 I and II.

Therefore, the Board erred in affirming that ***Examiner split excessively*** the claimed Feature 2 to the term word "**mixing buffer space**"

etc., and **failed to consider its function** that is *"for mixing and buffering the cooled catalyst"*.

③ Appellants search carefully through the whole Specification of the present application also, **but there is no description** as to "*fluidizing media mixes with the catalyst"*. Therefore, **there is no factual basis at all** that Examiner asserted "*fluidizing media mixes with the catalyst in the catalyst mixing buffer space"*.

Additionally, the Board construed mistakenly the claimed "*catalyst mixing buffer space*" of the claimed Feature 2 to mean *"in a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler."*.

In view of the above, the Board erred in affirming that the Examiner ***split excessively*** the claimed Feature 2, and that the Examiner disregarded both the clearly limitation *of "catalyst"* and the claimed function *"for mixing and buffering the cooled catalyst"*, and that the Examiner mistakenly asserted *"in which the catalyst is combined (mixed) with the fluidizing media"*; and the Board mistakenly construed the *"in downstream location of"* as a narrower meaning *"in a lower region of"*, also; which is not consistent with the claimed feature 2 as recited in claim13,20, and is not consistent with the statement in the specification and drawings, therefore, the Board's finding is erroneous under "the broadest reasonable interpretation" as cited in MPEP §2111.

## iii. The rebuttal argument to Appellee's brief

### A. The '565 Application

### 1. Beginning at page 5-7 of Appellee's brief

The rebuttal argument submitted by Appellants are as follows:

(1) Appellee's mentioned contents all are the "traditional catalyst cooler", "[a] person skilled in the art" would easily understand theirs "structures, connection styles, operation and control process" etc., "which will not be restricted by any specific embodiment." See Appx176(7:8-14).

(2) Regarding the "traditional industrial equipment" catalyst coolers [see Appx173(4:9-28); Appx176(7:8-18); Appx185(16:4-7); Appx187(18:8-11)], the specification explains that the present application may use "one, two, or more catalyst coolers" that cool catalyst from the regenerator and connect to the riser reactor to adjust reaction temperature of each reaction zone of one riser rector.

But, based on the context of the claimed Feature 1 and Specification of the present application, it is certain that (only) **one regenerated catalyst cooler,** as defined in claim 1, is used to adjust the reaction temperature of **each reaction zone of (**only) **one riser rector** which is connected to the corresponding catalyst cooler.

*For details, please see page 16-18* of this Brief.

## 2. First full paragraph at page 7 of Appellee's brief

The rebuttal argument submitted by Appellants are as follows:

(1) The claimed "catalyst mixed buffer space" is disposed in the downstream location of the catalyst cooler or the lower part of the heat-taking equipment, **rather than the lower area of the catalyst cooler.**

Support are found throughout Specification (including Figs. 1-4 and the Figures' description) of the originally-filed application.

① It is recited literally **in page 4**(Appx173), line 21-22 of the specification *"**In the downstream <u>location</u>,** there is a buffer <u>zone or</u> space*

*for buffering and mixing the cooled catalyst;”;* and also **in page 4**(Appx173), line 24-26 of the specification *“There are one, two or more catalyst exits set in the mixing and buffering zone or space, which is* ***in the downstream location of*** *the described catalyst cooler;”.*

② The claimed “catalyst mixed buffer space” is disposed in the downstream location of the catalyst cooler, that is the lower part of the heat-taking equipment, **rather than the lower area of the catalyst cooler;** because *the catalyst cooler (8A/B) and the catalyst mixing buffer space (9A/B)* in the attached figures1-4, are two different equipment ***having the same diameter only,*** and the two constitute ***an integrated device*** i.e. the heat-taking equipment. *(See also the amendments to Specification at page 4-5*(Aappx879-880) of the Response filed on Sept.15,2021*; see also Table 3 and Annexes 51-54(Appx646-698)*

③ It is recited literally in the description (*see* page 16, lines 10-19 of the originally-filed specification) that ***"[T]the regenerated catalyst is cooled and then enters the lower mixing buffer space*** (9A)" *See* also, Fig. 1, which has clearly indicated that the catalyst mixing buffer space is a downstream space that is independent and separate from the spaces taken by the catalyst cooler. *See* also page 18, lines 14-16, page 19, lines 15-17, page 22, lines 14-16, page 23, lines 2-4 of the originally-filed specification (at Appx187,188, 191,192).

In the drawings of the description, particular reference numbers 9A and 9B have been specifically identified. *See* Figs. 1-4 of the originally-filed application.

(**Remarks:** the reference number “9A” indicating the lower mixing buffer space is recited literally in the original PCT International Publication, but the reference number “9A” was inadvertently

omitted in the English translation of the present application).

(2) As to *"The recycled catalyst temperature is controlled by adjusting the flow of fluidizing media, which* ***mixes with*** *the catalyst in the bottom of the catalyst cooler, or by adjusting the catalyst's flow or "other parameters."* Appx175(6:4-8)*"*.

But, after Appellants search carefully through the Appx175(6:4-8), there is no word regarding "***mixes or mix".***

> The regenerated catalysts coming from regenerator as step (5) described are cooled by the catalyst cooler within 360 to 650 ℃.
>
> The temperature of the described cold regenerated catalyst can be controlled by adjusting the flows of the fluidized media and/or taking-heat media or adjusting other parameters; or controlled by adjusting the flows of the fluidized media and/or taking-heat media and/or adjusting the flows of cool catalyst returning regenerator or other parameters.

See Appx175(page 6, line 1-8)

Appellants search carefully through **the whole Specification** of the present application also, **but there is no description** as to "*fluidizing media mixes with the catalyst"*. Additionally, the fluidization media, *for controlling the catalyst temperature*, is very small and No meaningful catalyst cooling can be achieved. Therefore, **there is no factual basis at all** that Examiner asserted "*fluidizing media mixes with the catalyst in the catalyst mixing buffer space"*, which is not consistent with the interpretation *that* ***those skilled in the art would reach.***

**II. The scope and content of Li** (CN1664074A)

As Board recognized, the Li "teaches the cooled regenerated catalyst is

sent from a catalyst cooler (e.g., 8A) as a feed to the riser reactor via transporting pipe 11A." *See* [Decision on Appeal at Appx6] (citations omitted).

Further, "a second catalyst cooler 8B may be used to feed cold regenerated catalyst to reaction zone 2 . . . via auxiliary rising pipe 6 (*i.e.*, transporting pipe) and pipeline 11B." *Id.* The two cooled regenerated catalyst paths from regenerated catalyst coolers 8A and 8B in the Li Reference are depicted in Figure 1, as follows:




Cooled regenerated catalyst sent from first regenerated catalyst cooler (8A)




Cooled regenerated catalyst sent from second regenerated catalyst cooler (8B)

See [Li Reference at Appx759], Fig. 1.

But**, Nowhere** does that **Li** expressly teach that either regenerated catalyst **cooler 8A or 8B** adjusts "the reaction temperature of **each** of the reaction zones . . . so as to keep the reaction temperature of **each** of the reaction zones in an optimal value." and **nowhere** does also **Li** expressly teach "a catalyst mixing buffer space".

**Li** discloses merely that "***two** <u>regenerated catalyst coolers</u>*" is used to adjust the reaction temperature of the reaction zones of the riser reactor comprising at least two reaction zones, respectively *i.e.* ***catalyst cooler A*** is used to adjust the reaction temperature of 1st reaction zone, ***catalyst cooler B*** is used to adjust the reaction temperature of 2nd reaction zone", and

that the use of multiple catalyst coolers which is connected to one riser reactor by ***an auxiliary Riser or a gasoline Riser etc***. *(see **page 2/18 (Appx742), line 21** to page 3/18 (Appx743), the fourth line from the bottom in Specification of **Li** and Figs 1-4 of **Li**)*

Here, Appellants respectfully submit that ***the term "mixing" and "buffering" is well-known*** to those skilled in the art, therefore, the effects/functions of **Feature 2** is well-known to those skilled in the art, so that there is ***no a verbose statement*** in Specification of the present application.

**i. The rebuttal argument to Appellee's brief**

**1. Li Reference**

**- Beginning at page 10-11 of Appellee's brief**

The rebuttal argument submitted by Appellants are as follows:

(1) As to *"In particular, catalyst enters the catalyst cooler to be cooled, after which it mixes with "fluidization medium" (e.g., air, water, steam) in the catalyst cooler, and is then returned to the reactor.* Appx703; Appx717-Appx718."

But, after Appellants search carefully through the Appx703; Appx717-Appx718, there is no word regarding "***mix or blend".***

The catalyst cooler of the present invention is provided with one or more catalyst outlets, wherein one of them is used to transport the cold regenerated catalyst back to the regenerator, and the regenerator temperature can be controlled by regulating the flow rate of the fluidization medium including air, steam and so on and the flow rate of catalyst returning pipe conveying medium including air, steam and so on, to maintain it at the optimum value. The other one or two catalyst outlets are individually used to transport the cold regenerated catalyst to recycle to one or two raising pipes (reactor), and the temperatures of the reaction zones of the raising pipes can also be controlled by regulating the flow rate of the fluidization medium including air, steam and so on and the flow rate of catalyst returning pipe conveying medium including air, steam and so on, to maintain it at the optimum value.

See Appx703 (page 4, last paragraph)

According to the technological requirements, the catalyst cooler-A and the catalyst cooler-C can be omitted, wherein the hot regenerated catalyst directly enters the first reaction

zone without being cooled. The regenerator temperature is controlled by regulating the flow rate of the fluidization medium of the catalyst cooler-B including air, steam and so on and the quantity of the catalyst that returns to the regenerator or by the thermal equilibrium of the reaction regeneration system.

See Appx717-718 (page 18, last two line- page 19, line 1-4)

Appellants search carefully through **the whole Specification** of **Li** also, **but there is no description** as to "it *(i.e. the cooled catalyst) mixes with "fluidization media"(e.g., air, water, steam) the catalyst in catalyst cooler".*

Additionally, the fluidization media, *for controlling the catalyst temperature,* is very small and No meaningful catalyst cooling can be achieved. Therefore, **there is no factual basis at all** that Examiner asserted "*fluidizing media mixes with the catalyst in Li"*, which is not consistent with the interpretation *that **those skilled in the art would reach.***

## III. The Prosecution History and the Burden of Evidence

### i. The Prosecution History of the present Application

1. In 2015's non-final Office Action, Examiner offered the six References: CN1664074A (i.e. Li), U.S. Patent No. 5,019,353, US Patent No. 4830728, U.S. Patent No. 6,059,958, U.S. Patent No. 4,396,531 and U.S. Patent No. 2,531,356, as the basis for the rejections by Examiner, Appellants provided the two Declarations by Zhang and by Gao, showing the criticality or unexpected results of the present application.

(1) On October 19, 2015, Appellants submitted Appendix 1-8, of which Appendix 1-5 correspond to Annex 18,40,24,12,17, respectively; Which supports that the claimed claim 1 (including Features 1&2) of the instant application have the criticality or unexpected results over Li, and over Li in views of Others; and

On Oct. 23, 2015, Appellants submitted the **two Declaration by Zhang and by Gao** Under 37 C.F.R. 1.132**.**

(2) During Previous Procedures AFCP, on Jan. 17, 2018, and on March 23,2018, Appellants submitted **the two Declaration** by Qunzhu Li, based on Table 1 and Annexes 1-6,49,50 and their indications; and Table 2 and Annexes 7-10,46-48 and theirs indications, which supports the four "teach away" and that the claimed claim 1 (including Features 1&2) of the instant application have the criticality or unexpected results over Li.

(3) On Jan. 23, 2021, Appellants submitted Annexes 11-43 and on Sept. 15, 2021, Appellants submitted a Declaration by Qunzhu Li, herewith Table 3 and Annexes 51-54 and their indicators.

(4) Appellants respectfully indicate that the facticity and nexus of all objective Evidences i.e. Annexes 11-43） and the present application, is supported also by Li's Declaration (see page 4, line 5-10, filed on March 19, 2018).

But, the Examiner, only with the "one sentence" or "general statement" etc. in a *"conclusory fashion",* disregarded all Evidence (Annexes1-54) and the five Declarations, and the Board affirmed the examiner's disregard, which are procedure errors.

In fact, Appellants submitted Annexes 1-54 and their specific indications including 7 pages of detailed indications (see Table 1, 2, 3) **that clearly detail the authenticity and relevance of the Evidence** (Annexes 1-54). Rather, the Examiner and the Board, without providing any documentary Evidence to support, disregarded all of Annexes 1-54 and their indications.

**The only excuse of the Examiner is that "Li disclose all limitation of the Features 1&2".** However, the common knowledge (Annexes 1-6,7-10,46-54 ) do prove the four "teach away", which show that "Li disclose all limitation of the Features 1&2" are two "impermissible hindsight".

Accordingly, it is wholly inappropriate that the Examiner and the Board disregarded the above-mentioned common knowledge and Appellants' arguments, which show that **the Examiner is engaging in *"impermissible hindsight"***, and that **the common knowledge "teach away"** from the claimed Features 1&2.

*For details，please see page 35-37 of the Appeal brief to Court.*

The Examiner's Rejection and the Board's Decision are in a "conclusory fashion" and a manner of a "one sentence" or "general statement" etc., and as discussed in MPEP § 2144 and §2144.04, relying solely on case law as the rationale to support without any fact or documentary evidence, which would not be appropriate according to MPEP § 2144, §2144.04 and § 716.01.

Therefore, **Appellants adequately traverse the Examiner's assertions,** but the Examiner, without providing any documentary Evidence to support, disregarded all of them. **The board affirmed the Examiner's finding, which**

**should simply be reversed.** See MPEP 2144.03 C, E.

**ii. The Board's Decision**

For both distinguishing features 1&2, the Examiner did not establish the *"Prima Facie Case"*, and Board have overlooked or disregarded this ground yet.

**A. The claimed Feature 1**

As mentioned above, the independent claim 1,13, 20 of the present application, the claimed Feature 1 is **an overall means *including a functional limitation,*** therefore, the Board erred in affirming that Examiner split excessively the claimed Feature 1 to the term word "catalyst cooler" etc., and **failed to consider its function** *that is "is used to adjust the reaction temperature of* ***each reaction zone of the one riser reactor*** *comprising* ***one or more*** *reaction zones, respectively"*; and

the Board erred in finding that ① ***for the "catalyst cooler" limitation,*** the open-ended term "comprising" in claimed Feature 1 of claim 1 permits the use of ***more than one*** catalyst cooler; and ②Li also teaches using a single catalyst cooler.

The Examiner did not establish the *"Prima Facie Case"* on the following grounds.

① By way of illustration, the Appellants pointed out in the Appeal Brief to Board that the *"cold shock"* agent in Li, as a non-limited example, could potentially produce wide swings in the reaction temperature which could take the reaction temperature outside of the optimum value in the reaction zone, and that therefore the limitation is not inherently met by the documentary reference. However, there is **no burden on Appellants to show** that this will necessarily infer a lack of control of the reaction temperature as the Examiner suggests. The purpose of this argument was, and is, to aid in understanding **how the limitation**

**of** "*to keep the reaction temperature of each of the reaction zones in an optimum value*" **has not been met** because it is reasonable that the *"cold shock"* agent could cause swings in temperature which are outside of the optimum value in the reaction zones in an optimum value.

② The Examiner's finding in Final Office Action *(see page 5, lines 8-9)* regarding *"This includes wherein a catalyst cooler is connected to a riser and used to adjust the temperature of each zone in the riser"* in **Li,** but the Appellants respectfully points out that the Examiner does not show in the rejection how the limitation of that "*cooler B being designed to adjust the second reaction zone may be cancelled* " is met.

The Board addressed the Li's acknowledged use of multiple catalyst coolers to adjust different reaction zone reaction temperatures by positing that "[f]eeding the cold regenerated catalyst to the bottom of the riser reactor and into reaction zone 1 (ref. no. 3) would also feed the catalyst to reaction zone 2 (ref. no. 2) in Li's Figure 1 and adjust the temperature at some level within reaction zone 2 as the catalyst is sent through reaction zones 1 and 2 on its way to disengager 1 (Li, Figure 1)." Appx.6 [Decision on Appeal at 5] (emphasis added). In other words, because of the configuration shown in Figure 1 of the Li reference, the Board concluded that the catalyst coming from one cooler affects the temperature of reaction zone 2 by happenstance. An infirmity with the Board's reasoning is that the language of the proposed claims requires that the catalyst cooler "adjust" the reaction temperature of each reaction zone. As courts have recognized, the plain meaning of "adjust" is "to change so as to match or fit," i.e., not a temperature change that occurs through mere happenstance. See *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 11-cv-033972014, WL 10983769 at *9 (C.D. Cal. March 23, 2014). See also *Young v. Brennan,* No. 15-cv-10633, 2018 WL 1079865 at *3 (N.D. Ill. Feb. 15, 2018). Thus, a change in the reaction temperature "at some

level" due to happenstance does not constitute the requisite adjustment of that temperature.

On a related note, proposed claim 1 separately requires that the catalyst cooler *"keep the reaction temperature of each of the reaction zones in an optimal value."* There is no evidence in the record that a temperature change within a reaction zone by happenstance "keeps" that temperature at any particular value, let alone an optimal one. Indeed, the best the Board could do was to characterize the temperature adjustment as being *"at some level."* Appx. 6 [Decision on Appeal at 5].

③ The Examiner overlooks *that "catalyst cooler 8A" and "catalyst cooler 8B"* in **Li** is different substantively in theirs function (See from Last line 1-3 of Page 2(Appx 701) to Line 1-10 of Page 3(Appx702) of Li's English translation ).

Therefore, the above assertion by Examiner is not consistent with the interpretation that one of ordinary skill in the art would reach. It is because that one of ordinary skill in the art *(including Li also)* would think that it is impossible *that a catalyst cooler is used to adjusting the reaction temperature of each reaction zone of a riser* before the filling date of the instant application.

**Therefore, regarding Feature 1, the Examiner did not establish the *"Prima Facie Case"*.**

For the non-obviousness of Feature 1 under *Graham,* please see page 47-59 of the Appeal Brief to Court.

**B. The claimed feature 2**

As mentioned above, the Board erred in affirming that the Examiner ***split excessively*** the claimed Feature 2, and that the Examiner disregarded both the

clearly limitation *of "catalyst"* and the claimed function *"for mixing and buffering the cooled catalyst"*, and that the Examiner mistakenly asserted *"in which the catalyst is combined (mixed) with the fluidizing media"*; and the Board mistakenly construed the *"in downstream location of"* as a narrower meaning *"in a lower region of",* also; which is not consistent with the claimed feature 2 as recited in claim13,20, and is not consistent with the statement in the specification and drawings, therefore, the Board's finding is erroneous under "the broadest reasonable interpretation" as cited in MPEP §2111.

Therefore, regarding the claimed feature 2 under *Graham*, the Examiner did not establish the *"Prima Facie Case"*.

For the non-obviousness of Feature 2 under *Graham,* please see page 59-65 of the Appeal Brief to Court.

### C. Regarding the *"comprising"* limitation

Prior to the second appeal to Board, Examiner rejected claims 1-7, 10, 13-25, 27, 29, 31 ***(****claims 32, 33 are cancelled,* see Appx.36 ) on Section 103 grounds in view of the Li Reference.[1] see [Decision on Appeal at Appx2-4]. As a ground for appeal, Appellants raised the Li's failure to teach "***one regenerated catalyst cooler*** . . . used to adjust the reaction temperature of ***each reaction zone of the one riser reactor*** comprising at least two reaction zones." see [Decision on Appeal at Appx5].

Because Board misconstrued the "comprising" limitation, its resulting

---

[1] Examiner also rejected claim 32 of the Present application on Section 103 grounds over the Li in view of Palmas (U.S. Appl. Pub. No. 2010/0152515). *See* [Decision on Appeal at Appx4]. As Board noted, Appellants rely solely on their arguments regarding the Li in urging the patentability of claim 32. *See id.* **(But claims 32, 33 are cancelled,** see Appx.36)

obviousness conclusion is clearly erroneous. Moreover, because Board failed to offer any evidence regarding obvious modifications to the Li concerning the single use of a catalyst cooler, there would be nothing to address on remand, and Board's decision should, therefore, simply be reversed.

Regarding **the Construction of *"Comprising"*,** for details, please see page 27-31 of the Appeal brief to Court.

## IV. Summary of the Arguments

(Omitted) the Same as the Appeal brief to Court.

## V. Arguments

Generally, the Appellants respectfully submits that Li (CN1664074A), the prior art relied upon by Examiner, does not disclose all the limitations of Features 1 & 2 of the claims of the present application. Appellants submits that the detailed reasons for this are given in the Appeal Brief, the Reply Brief, the PPT for the Oral Hearing , the Request for Rehearing, and the Appeal to Court previously submitted by Appellants. Appellants now responds to some key arguments and points raised by Examiner , by Board and by Appellee. However, the lack of a response to an issue raised by Examiner , by Board and by Appellee should not be taken as agreement with them since the Appellants believes, the PPT for the Oral Hearing, the Request for Rehearing, and the Appeal to Court previously submitted by Appellants adequately counters all of the issues.

Appellants respectfully submit that Board erred in affirming the rejections of all claims by Examiner（in the Final Office Action）.

### i. Standard of Review

This Court reviews the Patent Trial and Appeal Board's factual findings for substantial evidence and legal determinations de novo. See, e.g., *In re Van Os,* 844 F.3d 1359, 1360 (Fed. Cir. 2017).

Obviousness, the sole basis for rejecting the proposed claims below, is a question of law based on underlying factual inquiries. The factual inquires are set forth in *Graham v.* John Deere Co., 383 U.S. 1, 148 USPQ 459 (1966).

Objective evidence relevant to the issue of obviousness must be evaluated by Office personnel. *Id.* at 17-18, 148 USPQ at 467. Such evidence, sometimes referred to as "objective evidence" or "secondary considerations," may include evidence of commercial success, long-felt but unsolved needs, failure of others, and unexpected results.

Further, Board ***"must make findings*** of relevant facts, and ***present its reasoning in sufficient detail*** that the court may conduct meaningful review of the agency action." *In re Lee,* 277 F.3d 1338, 1346 (Fed. Cir. 2002).Emphasis added）

**ii. Prosecution errors during patent examination and Appeal**

During the prosecution, Examiner cited merely CN1664074A ("Li") against the nonobviousness of the pending claims, asserting that Li disclosed all the limitations of Features 1&2 and that Features 1&2 are obvious over Li, but without any documentary evidence to support their assertions and finding.

1. In the Appellee's Brief, Appellee Argued that Appellants have the burden to show that the Board committed reversible error. *In re Watts,* 354 F.3d 1362, 1369 (Fed. Cir. 2004).

   **But this Appellee's arguments lacks merit.**

2. **In the Appellee's Brief, Appellee argued that "Substantial**

**Evidence supports the Board's findings".**

**But** the Examiner did not provide any documentary evidence to support their findings, during patent examination and Appeal to Board, all which are the their personal opinion or understanding under MPEP §2144.04.

**Therefore, there is No "Substantial Evidence" provided by the Examiner and the board that supports the Board's findings, and this Appellee's arguments lacks merit.**

Rather, Appellants submitted respectfully the five Declarations by Zhang, Gao, and Qunzhu Li Under 37 C.F.R. 1.132(Appx239-266), Annexes 1-54 (Appx272-698) and their specific indications including 7 pages of detailed indications (see Table 1, 2, 3 on Appx267-271, 582, 646), which prove that

① the level of ordinary skill in the art and the two "impermissible hindsight" regarding features 1&2 under MPEP §2145 X.A;

② the four "teaching away" from feature 1 and Feature 2 supported by the Common Knowledge (see Table 1,2,3 on Appx267-271, 582, 646 and Annexes 1-6,7-10, 46-48,49,50,51-54 (Appx272-344, 583-614, 615-645, 553-567, 568-581, 647-698));

③ "Omission of an element with retention of its function" under MPEP §2144.04 II B; and

④ the synergistic effect /result of Features 1 & 2 under MPEP §716.02(a)I, and the six "Objective Evidence" under MPEP §716 (or "the so-called secondary consideration", see Table 1,2,3 on Appx267-271, 582, 646 and Annexes 1-54 (Appx272-698)).

Here, Appellants respectfully submit that all these prosecution errors (at least 18 items) **result in the root Errors in factual assertion and findings** of the

Board's Decision, which should be withdrawn.

*For details, please see page 32-47* of the Appeal Brief to Court.

## VI. As to claim 6,16, 22 and other claims

(Omitted) Same with the Appeal Brief to Court at page 66.

## VII. <u>Conclusion</u>

Because Examiner and Board failed to provide any documentary evidence, and failed to present a *prima facie* case of obviousness which addresses all of the limitations of these independent claims. The same reasons are also applicable to the remaining depending claims.

For the foregoing reasons, Appellants respectfully request that this Court reverse Board's decision.

Last but not least, the present application has been examined for more than 11 years.

If there is something unclearly or any questions regarding this Appeal, please direct to Qunzhu Li, at +86-13511013479, or via email: ha8528@163.com.

Respectfully submitted,

Dated: September 25, 2024

By: /s/ Li Li
Li Li

By: /s/ Qunzhu Li
Qunzhu Li

5-1101, Building 1st, No. 5,
Lianmeng Road,
Jianxi District, Luoyang Henan
Province
471003, P. R China
+86-13511013479
45993.02@gmail.com;
45993.01@gmail.com
ha8528@163.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. Cir. R. 32(b).

This brief contains 6,992 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fed. Cir. R. 32(b). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in fourteen (14) point Times New Roman font.

Respectfully submitted,

Dated: September 25, 2024

By: /s/ Li Li
Li Li

By: /s/ Qunzhu Li
Qunzhu Li

5-1101, Building 1st, No. 5,
Lianmeng Road,
Jianxi District, Luoyang Henan Province
471003, P. R China
+86-13511013479
45993.02@gmail.com;
45993.01@gmail.com
ha8528@163.com