**No. 24-1209**

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FEDERAL CIRCUIT**

---

In re: LI LI, QUNZHU LI,
Appellants

---

Appeals from the United States Patent and Trademark Office,
Patent Trial and Appeal Board in U.S. Patent Application Serial Number 13/576,565

---

# CORRECTED REPLY BRIEF OF APPELLANTS LI LI AND QUNZHU LI

---

**Appellants**

Li Li
Qunzhu Li

5-1101, Building 1st, No. 5,
Lianmeng Road, Jianxi
District, Luoyang Henan
Province 471003, P. R China
+86-13511013479
45993.02@gmail.com;
45993.01@gmail.com;
ha8528@163.com

November 29, 2024

---

## IDENTIFICATION OF EXEMPLARY CLAIMS

### U.S. Patent App. No. 13/576,565

**Claim 1.** A method circulating a cold regenerated catalyst, comprising:

> reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction zones;
>
> separating the gas and oil products from the reacted catalyst in a settler;
>
> stripping the separated catalyst in a stripping section;
>
> burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;
>
> cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;
>
> *wherein when the **one** riser reactor **comprises at least two** reaction zones, the **one** regenerated catalyst cooler is connected to the **one** riser reactor and is used to adjust the reaction temperature of **each of the reaction zones** of the **one** riser reactor, so as to keep the reaction temperature of **each of the reaction zones** in an optimal value, respectively, or when the **one** riser reactor **comprises only one** reaction zone, the **one** regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the **only one reaction zone** of the **one** riser reactor, so as to keep the reaction temperature in an optimal value.*

Appx787 (emphasis added).

**Claim 13.** A method for circulating a cold regenerated catalyst, comprising:

> reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises only one reaction zone or at least two reaction

zones;

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a regenerated catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;

wherein a heat-exchanging element-is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located in the lower part of the regenerated catalyst cooler;

*blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space being disposed* ***in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor;*** and

*wherein when the* ***one*** *riser reactor* ***comprises at least two*** *reaction zones, the* ***one*** *regenerated catalyst cooler is connected to the* ***one*** *riser reactor and is used to adjust the reaction temperature of* ***each of the reaction zones*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature of* ***each of the reaction zones*** *in an optimal value, respectively, or when the* ***one*** *riser reactor* ***comprises only one*** *reaction zone, the* ***one*** *regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the* ***only one reaction zone*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature in an optimal value.*

Appx789-790 (emphasis added).

**Claim 20.** A method for circulating a cold regenerated catalyst, comprising: reacting hydrocarbon materials with a catalyst in a riser reactor to generate gas and oil products and a reacted catalyst, wherein the one riser reactor comprises at least one reaction zone;

separating the reacted catalyst from the gas and oil products in a settler;

stripping the separated catalyst in a stripping section;

burning and regenerating the stripped catalyst in a regenerator to obtain a hot regenerated catalyst;

cooling the hot regenerated catalyst by a catalyst cooler to form a cooled regenerated catalyst having a temperature in a range of 200°C to 720°C, for cycling use;

wherein a heat-exchanging element having a heat-taking medium inside is mounted inside the regenerated catalyst cooler, and a fluidizing medium distributor is located in the lower part of a catalyst mixing buffer space;

blending and buffering the cooled regenerated catalyst in the catalyst mixing buffer space ***being disposed underneath the heat-exchanging element before the cooled regenerated catalyst entering the riser reactor,*** wherein the catalyst mixing buffer space is independent and separate from spaces taken by the heat-exchanging element; and

*wherein when the* ***one*** *riser reactor* ***comprises at least two*** *reaction zones, the* ***one*** *regenerated catalyst cooler is connected to the* ***one*** *riser reactor and is used to adjust the reaction temperature of* ***each of the reaction zones*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature of* ***each of the reaction zones*** *in an optimal value, respectively, or when the* ***one*** *riser reactor* ***comprises only one*** *reaction zone, the* ***one*** *regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the* ***only one reaction zone*** *of the* ***one*** *riser reactor, so as to keep the reaction temperature in an optimal value.*

Appx791-Appx792 (emphasis added).

.

# TABLE OF CONTENTS

STATEMENT OF THE ISSUES ........................................................................ 13

STATEMENT OF THE CASE ........................................................................ 14

I. The Patent Application as claimed ........................................................ 14

i. The Feature 1, an overall means including a functional limitation, should not be split and its non-obviousness should be evaluated as a whole under MPEP 2141.02 I, II, V, VI. .................... 14

1. The Claimed Feature 1 is an overall means including a functional limitation, rather than the selection of the specific operating parameters, the specific structure and the connecting manners etc. of the "catalyst cooler" itself. . 15

2. There is No documentary record in all Common Knowledge and prior arts (including Li) that disclose the Feature 1 before the filing date of the present application. ............ 15

3. Based on the context of the claim 1 and Specification of the present application, it is certain that (only) one regenerated catalyst cooler is used to adjust the reaction temperature of each reaction zone of (only) one riser reactor which is connected to the corresponding catalyst cooler. ............. 15

4. History of development on FCC's catalyst cooler and Li's de facto failure show that Feature 1 satisfies the "Long-Felt Need and Failure of Others" under MPEP §716.04. ........................................................................................ 16

5. The Board erred in finding the "comprising" and the "a" permits the use of more than one catalyst cooler under MPEP §2111. .................................................................. 17

6. The Board's construction of the "comprising" was open-ended (see Appx6) and is a new ground. ........................ 19

7. The Board disregarded the substantial differences between the regenerated catalyst cooler of the claimed Feature 1 and the traditional catalyst cooler. ......................................... 20

8. The Board disregarded the substantial differences on the problem to be solved and the function/results to be achieved between the Feature 1 of present application and Li. ..... 22

9. Both the Feature 1 and the specification do limit that only one catalyst cooler is used in each cycle of one or more catalyst-cycling system between regenerator-cooler-reactor. ........................................................................ 23

**ii.** The Feature 2 is an overall means including a functional limitation, the Board mistakenly split excessively it to the term level "mixing buffer space". ............................................ 24

1. The Board erred in affirming that Examiner split excessively the Feature 2 to the term level *"mixing buffer space"* etc., and failed to consider its function that is *"for mixing and buffering the cooled catalyst"*. ...................... 24

2. There is No documentary record in all Common Knowledge and prior arts including Li that disclose the Feature 2 before the filing date of the present application. ..................................24

3. The Feature 2 is an overall means *including a functional limitation,* rather than the selection of the specific operating parameters and the specific structure of the "mixing buffer space" itself. ..................................................................... 24

4. The Board construed also mistakenly the claimed "*catalyst mixing buffer space*" of the claimed Feature 2 to mean *"in a lower region of the catalyst cooler…"*. ....................... 25

5. The claimed "catalyst mixing buffer space" is disposed in the downstream location of the catalyst cooler or the lower part of the heat-taking equipment, rather than the lower area of the catalyst cooler argued by Appellee. ............................................25

II. The scope and content of Li....................................................................28

**i.** The Board disregarded three "teach away" regarding the Feature 1 and found mistakenly that *"Li also teaches using one catalyst cooler"*. ...28

1. Nowhere does that Li expressly teach "using one catalyst cooler" adjusts "the reaction temperature of each reaction zones of one riser reactor . . .". ........................................ 28

2. There is no documentary evidence that prior arts (including Li) disclose the problem to be solved proposed firstly by the claimed Feature 1 of claim 1 of the present application. ...... 28

3. The Board disregarded three "teach away" regarding Feature 1 which result in *an "impermissible hindsight"* concerning Feature 1. ..................................................... 29

4. Appellee's Arguments (see page 11, line 4-5 of Appellee's Brief), disregarded *that the two catalyst coolers 8A and 8B* have different functions. .................................................. 30

5. Li doesn't disclose the "only one catalyst cooler for adjusting only one reactor" as claimed in the Feature 1 under either the broadest reasonable construction or Appellants' construction based on Li's specification. ……………………………..30

**ii.** Nowhere does also Li expressly teach "a mixing buffer space". ...... 32

1. The term *"mixing"* and *"buffer"* is well-known to those skilled in the art, therefore, the effects/functions of Feature 2 is well-known to those skilled in the art …. .................................... 32

2. There is no factual basis at all that Board asserted "*fluidizing*

*media mixes with the catalyst in Li”*. .................................. 32

3. The Examiner’s finding “Li discloses the Feature 2”, is conjectured based on Li's attached Figures and is not consistent with the interpretation that those skilled in the art would reach. Thus, this is wrong under MPEP § 2125. ............................. 34

4. The Board disregarded one “teach away” regarding Feature 2 which results in an “impermissible hindsight” concerning Feature 2. ………………………………………………34

III. The Prosecution History and the Burden of Proof .................................... 34

**i.** Examiner should bear the burden of proof for facts supporting final Rejection. However, the Examiner is engaging in two “impermissible hindsight”, and the common knowledge and prior arts “teach away” from the claimed Features 1&2. …34

**ii.** All Objective Evidences 11-43 have the same subject matter *“the cold regenerated catalyst cycle and its commercial running”* which accord with the scope and the contents of both claim 1 and Specification and are relevant to Features1&2. ………….36

**iii.** Objective Evidence (Annexes 11-43 and five Declarations) demonstrates *the ‘unexpected results’*, *the ‘commercial success’, the ‘long-felt need and others’ failure’* under MPEP §2145, three *‘Opinion Evidence’ under* MPEP §716.01 (c)III and the ***‘synergism’*** of the Features 1&2 and the unexpected results over Li under MPEP §716.02 (a)I. ………..................................37

**iv.** The Board’s Decision: For both claimed Features 1&2, the Examiner did not establish the "Prima Facie Case", and the Board overlooked or disregarded this ground. ……………………..……37

IV. Summary of the Arguments ..................................................................... 40

V. Arguments ................................................................................................ 40

**i.** Standard of Review ............................................................................... 40

**ii.** Prosecution errors during patent examination .......................................41

**iii.** There is No "Substantial Evidence" provided by the Examiner and the Board that supports the Board's findings, therefor this Appellee's arguments lack merits. …………..……………42

**iv.** All these prosecution errors (at least 18 items) collectively result in wrongful factual assertion and findings of the Board's Decision, which should be withdrawn. ……………………..………………42

VI. Regarding claims 6, 16, 22 and other claims...............................................42

VII. Conclusion ..........................................................................................42

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

**1. The Case cited by MPEP §2145** ........................................ 8,13,32,35,36,37

*Soni,* 54 F.3d at 750, 34 USPQ2d at 1687

*In re Alton,* 76 F.3d 1168, 37 USPQ2d 1578 (Fed. Cir. 1996)

*In re Beattie,* 974 F.2d 1309, 1313, 24 USPQ2d 1040, 1042-43 (Fed. Cir. 1992)

*Piasecki,* 745 F.2d at 1472, 223 USPQ at 788

**2. The Case cited by MPEP §2145 X.A.** ........................................ 32,41

*In re McLaughlin,* 443 F.2d 1392, 1395, 170 USPQ 209, 212 (CCPA 1971)

**3. The Case cited by MPEP § 2145 X.D.** ........................................ 29,32,34

*In re Hedges, 783 F.2d 1038, 228 USPQ 685 (Fed. Cir. 1986)*

**4. The Case cited by MPEP §2144.03 C,E** ........................................ 13,32,35

*Zurko,* 258 F.3d at 1385, 59 USPQ2d at 1697

*Ahlert,* 424 F.2d at 1092,165 USPQ 421

**5. The Case cited by MPEP§2144.04 II.B** ........................................ 32,41

*In re Edge,* 359 F.2d 896, 149 USPQ 556 (CCPA 1966)

**6. The Case cited by MPEP §2125** ........................................ 8,34

*Jockmus v. Leviton,* 28 F.2d 812 (2d Cir. 1928).

*In re Aslanian,* 590 F.2d 911, 200 USPQ 500 (CCPA 1979).

**7. The case cited by MPEP §2111** ........................................ 5,17,25,40

*In re Cortright,* 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999)

**8. The Case cited by MPEP§2141.02 I** ............................................ 5,14,15,24

*Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 218 USPQ 871 (Fed. Cir.1983);

*Schenck v. Nortron Corp.*, 713 F.2d 782, 218 USPQ 698 (Fed. Cir. 1983)

**9. The Case cited by MPEP§2141.02 II**............................................ 5,14,15,24

*Jones v. Hardy*, 727 F.2d 1524, 1530, 220 USPQ 1021, 1026 (Fed. Cir. 1984)

*Panduit Corp. v. Dennison Mfg. Co., 810 F.2d 1561, 1 USPQ2d 1593 (Fed. Cir. 1987), cert. denied, 481 U.S. 1052 (1987)*

**10. The case cited by MPEP§2141.02 V** …………………………..………5,14,24

*In re Rijckaert*, 9 F.3d 1531, 28 USPQ2d 1955 (Fed. Cir. 1993)

**11. The Case cited by MPEP § 2141.02 VI** ……………..5,14,24,29,34,35

*W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 220 USPQ 303 (Fed. Cir. 1983),
*cert. denied*, 469 U.S. 851 (1984)

**12. The case cited by MPEP§716.01** ........................................................ 32,36

*In re Rothermel*, 276 F.2d 393, 125 USPQ 328 (CCPA 1960).

**13. The case cited by MPEP §716.01(c)III** ................................................. 8,37

*In re Oelrich*, 579 F.2d 86, 198 USPQ 210 (CCPA 1978)

**14. The case cited by MPEP §716.02(a) I** ............................................. 8,37,41

*In re Corkill*, 711 F.2d 1496, 226 USPQ 1005 (Fed. Cir. 1985).

**<u>Remarks:</u>** For brevity, all subsequent citations of the above Case 1-14 in this Reply document, are replaced with "MPEP §xxxx".

**15. The Others**

*In re Van Os*, 844 F.3d 1359, 1360 (Fed. Cir. 2017) .............................. 40

Graham *v. John Deere Co.*, 383 U.S. 1, 148 USPQ 459 (1966) ............. 40

*In re Lee*, 277 F.3d 1338, 1346 (Fed. Cir. 2002) ....................................41

*Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 11-cv-033972014, WL 10983769 at *9 (C.D. Cal. March 23, 2014) ..........................................................38

*Young v. Brennan*, No. 15-cv-10633, 2018 WL 1079865 at *3 (N.D. Ill. Feb. 15, 2018) ..........................................................................38

**Statutes**

37 C.F.R. 1.132 ..........................................................................32,34,42

## STATEMENT OF THE ISSUES

**Features 1 & 2 are an overall means including a functional limitation,** which have been proposed by present application **for the first time in the art,** and their nonobviousness should be evaluated in entirety.

The Examiner cited merely Li against the nonobviousness of the pending claims, asserting that Claim 1 are obvious over Li.

Since Oct. 2015, appellants submitted Annexes 1-54 and their 7 pages of detailed indications (see Table 1, 2, 3) and five Declarations that clearly detail the authenticity and relevance of all Evidence (Annexes 1-54), **which adequately traverses the examiner's Findings.** Examiner should bear the burden of proof for facts supporting their Rejection under MPEP §2144.03 C, E and §2145**,** but Examiner, without providing any documentary Evidence to support or explanation, disregarded all the them. The ***only excuse*** is that "*Li includes all claimed element of claimed Features 1 & 2"*.

Thus, Examiner's Rejection and Board's Decision, **relying solely on legal conclusions in case law** as the rationale without any fact or documentary evidence to support, therefore, would not be appropriate under MPEP §2144, §2144.04, §2144.03A, C, E, and §2145.

For details, See pages 12-15 of Corrected Opening Brief of Appellants submitted *on July 8,2024* (Hereinafter referred to as *"Opening Brief" ).*

**Therefore, the Board's Decision, should simply be reversed.**

## STATEMENT OF THE CASE

This appeal arises from the examination of U.S. Patent Application No. 13/576,565. Specifically, the Board affirmed the Examiner's rejection of claims 1-7, 10, 13-25, 27, 29, 31 and 33 as obvious over Li and rejection of claim 32 as obvious over Li in view of Palmas. See Appx1-15. Appellants filed a Request for Rehearing, which the Board denied. See Appx225-238. Appellants then appealed to this Court.

Claims 32 and33 were cancelled during the appeal to the Board. See Appx36.

Examiner offered the Chinese publication of Li (CN1664074), Appx738-762, and then asked the appellants to submit an English translation, Appx699-737.

### I. The Patent Application as claimed

#### i. The claimed Feature 1, an overall means including a functional limitation, should not be split and its non-obviousness should be evaluated as a whole under MPEP 2141.02 I, II, V, VI.

**The claimed Feature 1 of claims 1, 13, and 20 recites, *inter alia*:**

" … wherein when the one riser reactor comprises at least two reaction zones, the ***one*** regenerated catalyst cooler is connected to the ***one*** riser reactor and is used to adjust the reaction temperature of each of the reaction zones of the one riser reactor, **so *as to keep the reaction temperature of each of the reaction zones in an optimal value,*** respectively, or when the one riser reactor comprises only one reaction zone, the one regenerated catalyst cooler is connected to the one riser reactor and is used to adjust the reaction temperature of the only one reaction zone of the one riser reactor, ***so as to keep the reaction temperature in an optimal value*.**" (hereinafter referred to as **"Feature 1")**

1. **The Feature 1 is an overall means** *including a functional*

*limitation*, **rather than the selection** of the specific operating parameters, the specific structure and the connecting manners etc. of the "catalyst cooler" itself.

Therefore, the Feature 1 should not be split and the non-obviousness of the Feature 1 should be evaluated as a whole under MPEP 2141.02 I and II.

2. The Feature 1 is proposed by present application **for the first time** in the art (i.e. FCC field), and there is **No documentary record** in all Common Knowledge and prior arts (including Li) that disclose the Feature 1 before the filing date of the present application.

3. **Based on the context of the claim 1 and Specification of the present application, it is certain that (only) one regenerated catalyst cooler** is used to adjust the reaction temperature of **each reaction zone of (**only) **one riser reactor** which is connected to the corresponding catalyst cooler.

As we can see from the claim 1, both its preamble and the Feature 1 state only that "the **one riser reactor comprises one or at least two reaction zones"** (does not mention one or more catalyst cooler). In addition, it is explicitly stated that "the **one** regenerated catalyst cooler is connected to the **(only) one** riser reactor and is used to adjust the reaction temperature of **each reaction zone** of the **one** riser reactor" . And it is explicitly stated in Specification that *"**each** catalyst cooler being respectively connected **one riser reactor** is used to adjust the reaction temperature of **each reaction zone** of the corresponding reactor"*. (see Appx215(4:12-17) and page 3 of Response filed on Sept. 15, 2021(Appx878).

**4. History of development on FCC's catalyst cooler and Li's *de facto failure***

**show that Feature 1 satisfies the "Long-Felt Need and Failure of Others" under MPEP §716.04.**




Appellants respectfully submit that after 27 years of tireless exploration and research starting from UOP's first patent of the catalyst cooler connected with the Riser (*US4396531*, see Appx763-769), **the present application came out in 2008 and achieved the commercial running** for the first time in 2008. And in fact, **no one uses Li** since 2008 because of Li's inherent defect. (see Appx 254-260, 261-264).

Therefore, the claim 1 of the present application satisfies **the "Long-Felt Need and Failure of Others"** under MPEP §716.04, so the claims 1, 13, and 20 are nonobvious and patentable.

*For details, please see pages 17 to 20* of Opening Brief.

**5. The Board erred in finding that *the*** "comprising" **and** the ***"a"*** permit the use of ***more than one*** catalyst cooler under MPEP §2111.

> [see "The broadest reasonable interpretation does not mean the broadest possible interpretation. Rather, the meaning given to a claim term must be consistent with the ordinary and customary meaning of the term (unless the term has been given a special definition in the specification), and ***must be consistent with the use of the claim term in the specification and drawings.*** Further, the broadest reasonable interpretation of the claims ***must be consistent with the interpretation that those skilled in the art would reach.*** *In re Cortright*, 165 F.3d 1353, 1359, 49 USPQ2d 1464, 1468 (Fed. Cir. 1999)]

**It is stated expressly also in the Description of attached Figures 1-4** as follows:

**(1) In Only one catalyst-cycle, only one regenerated catalyst cooler** *is used* **for adjusting one** *reaction* **zone or *each* of two *reaction zone of* only *one riser reactor* (in Figs 1,2).**

① In Figure 1, the one riser reactor comprises *only one reaction zone 2*, *"**Catalyst cooler 8A** is mainly used to adjust the reaction temperature of the first reaction zone, to keep it in the best value;* ***another*** *catalyst cooler (not shown), as* ***the conventional external heat-exchanger,*** *is primarily used for regulating the temperature of the regenerator to keep it in the best value*. (*see* Appx184(15:23-27); Appx185(15:4-7); Appx206.)

②In figure 2, the one riser reactor comprises *two reaction zones,* ***Catalyst cooler 8A*** *is mainly used to adjust the reaction temperature of the 1st reaction zone and the 2nd reaction zone, to keep it in the best value respectively; (Another*) ***catalyst cooler B,*** *as* ***the conventional external heat-exchanger,*** *is*

*primarily used for regulating the temperature of the regenerator to keep it in the best value*. (*see* Appx186(17:21-24); Appx187(18:8-11); Appx207.)

**(2) In two catalyst-cycle, only one regenerated catalyst cooler is used for adjusting each of two reaction zone of only one riser reactor** (see Figures 3,4).

③ In Figure 3, there are two different riser reactors, *the heavy oil riser reactor* comprises the 1st reaction zone 3, the 2nd reaction zone 2, and the gasoline riser 6. ***Each riser reactor*** *is connected to* ***only one*** *catalyst cooler*. (*see* Appx189(20:28-29)- Appx190(21:1-3), Appx208.)

④In Figure 4, there are *two heavy oil riser reactors* comprising the 1st reaction zone 3A,3B and the 2nd reaction zone 2A,2B. ***Each riser reactor*** *is connected to* ***only one*** *catalyst cooler*. (*see* Appx194(25:11-14), Appx209.)

**Therefore, the Board's interpretation of the terms "comprising" and "a" in claim 1** (see page 2 and page 21-26 of Appellee's Brief) **is not consistent with the Feature 1, is not consistent with the statement in the specification and Figures, and is not consistent with the interpretation that those skilled in the art would reach.**

In view of the above, taking into consideration of the specific limitation of the Feature 1 of claim 1, the specific description in specification and Figures 1-4**,** the open-ended term "comprising" in the Feature 1 of claim 1 should be interpreted to mean **merely one** catalyst cooler, **rather than** one or ***more*** catalyst cooler.

In addition, both **"a" catalyst cooler** in the preamble of the claim 1 and **"the one" catalyst cooler** in the claimed Feature 1 support the interpretation that "only one catalyst cooler is connected to only one same riser reactor." *See*

Br. 30, 47. This interpretation doesn't conflict with **the open-ended claim language** because, when **"a" catalyst cooler** *in the preamble* means that "two or more" catalyst coolers, there must be two or more catalyst cycles, for example in figure 3 and figure 4, that is, another **"one"** catalyst cooler is used **only** to adjust reaction temperature of each reaction zone of another "**one"** (i.e. different) riser reactor. Therefore, it **does preclude other catalyst coolers from being connected to the one same riser reactor.**

**(3) Regarding the *"comprising"* limitation**

Prior to the second appeal to Board, Examiner rejected claims 1-7, 10, 13-25, 27, 29, 31 ***(****claims 32, 33 are cancelled*, see Appx36) on Section 103 grounds in view of the Li. see [Decision on Appeal at Appx2-4]. As a ground for appeal, Appellants raised the Li's failure to teach "***one regenerated catalyst cooler*** . . . used to adjust the reaction temperature of ***each reaction zone of the one riser reactor*** comprising at least two reaction zones." see [Decision on Appeal at Appx5].

Because Board misconstrued the "comprising" limitation, its resulting obviousness conclusion is clearly erroneous. Moreover, because Board failed to offer any evidence regarding obvious modifications to the Li concerning the single use of a catalyst cooler, there would be nothing to address on remand, and Board's decision should, therefore, simply be reversed.

For details, please see also page 26-31 of Opening Brief .

6. **The Board's construction of the "comprising" was open-ended (Appx6) but is a "new ground".**

**First,** during Appellants' first appeal to Board, the **Examiner** expressly argued that "the "comprising" claim language "does not exclude additional

catalyst coolers, risers, and reaction zones." (see SAppx12), which was based on the claims submitted during first board appeal; **but Appellants had amended** the "**a** catalyst cooler" to the "**one** catalyst cooler", before this second appeal to Board. **Second,** the Examiner rejected the claim over Li merely under pre-AIA 35 USC 103, but didn't mention the **"comprising"** construction. Appx99-102. **Third,** it was only at the Oral hearing that the Board first presented the construction of the "comprising" recited in claims *(See Appx27(11:22)-Appx28(12:11))*. Therefore, **The Board's construction of the "comprising"** should be a "new ground".

**7. The Borad disregarded the substantial differences between the regenerated catalyst cooler in claimed Feature 1 and the traditional catalyst cooler.**

**Thus, Appellee's arguments** regarding "the Feature 1" (see from page 5, line 9 to page 7, line 7 of the Appellee's Brief) **is not persuasive.**

Firstly, we take Figure 2 of the present application, as a non-limiting example for illustrating the **substantial differences between the** regenerated catalyst cooler and **traditional** external heat exchanger (not showed in Figure 1,3,4) in details.




（See Figure 2 (annotated) on Appx207）

(1) ***The green dashed box*** represents a traditional catalyst cooler (or external heat exchanger) 8B. The circulating Catalyst in it comes from the regenerator 5, goes through transport pipe 10B for heat-exchanging, and then returns to the regenerator 5 via transport pipe 12B to complete one cycle ***(the green cycle path*** in Fig. 2), achieving heat removal from the regenerator 5.

(2) ***The red dashed box*** represents the regenerated catalyst cooler 8A and a downstream mixing buffer space 9A. The regenerated catalyst enters the regenerated catalyst cooler 8A through transport pipe 10A for heat-exchanging and

cooling, then goes through the mixing buffer space 9A and transport pipe 11A, then enter the riser reactor ***(****including* ***1st reaction zone 3*** *and* ***2nd reaction zone 2***) via pre-lifting zone 4 and subsequently enters the settler 1 for separation of reaction gases and catalyst. The separated catalyst then goes through the stripping section 1A and returns to the regenerator 5, this is a catalyst cycle (see ***the blue cycle path*** in Fig. 2).

**(3)** ***The red cycle path*** in Fig.2 represents **another** catalyst circulation bypass 12A which is designed for adjusting or controlling the temperature of the regenerated catalyst after cooling, see Appx 176(7:8-14). It allows a portion of the catalyst back to regenerator 5.

(4) The regenerated catalyst cooler has two exits (connect respectively with 12A and 21A), wherein one is used to cycle cooled catalyst to one riser, and the other, **as a bypass,** is used to adjust the temperature of the regenerated catalyst by adjusting the flowrate of the cooled catalyst back to regenerator.

**Therefore,** There are substantial differences between the two types of catalyst coolers in the connection mode, function**/Effect to be achieved**, control requirement, etc.

**8. The Board disregarded the substantial differences on the problem to be solved and the function/results to be achieved between the Feature 1 of present application and Li.**

The problem to be solved of the present application is *"to make the ratio of catalyst to feed as an independent adjustable variable*", see Appx172(3:26)-Appx173(4:1), the function/results to be achieved is *"using optimal reaction temperature"* **and** *"reducing the coke and dry gas yield, the*

*processing capacity will be increased by 15-20%*", see Appx180(11:25-26), Appx181(12:16-19).

Rather, **Li** is *"to increase the blending ratio of residual oil and at the same time decrease the contents of olefins and impurities of gasoline"*. See Appx700(1:7-11), *"using higher reaction temperature"* and *"... increasing the yields of gasolines and light increasing the gasoline octane number, and reducing the olefin and impurity contents of the products"* Appx715(16:2-3, 19-21).

In fact, **there is no documentary evidence** that prior arts (including **Li**) **disclose the problem to be solved proposed firstly by the Feature 1** of claim 1 of the present application.

9. **In short, both the claim 1 and the specification do limit that only one catalyst cooler is used in each cycle of one or more catalyst-cycling system between regenerator-cooler-reactor,** which means that only one catalyst cooler is used to control or adjust the temperature of each reaction zone of the one riser reactor.

**Therefore, the specification of the present application doesn't support the Board's broader claim construction of the Feature 1.**

**ii. The Feature 2 is an overall means *including a functional limitation,* the Board mistakenly *split excessively* it to the term level "mixing buffer space"** under MPEP 2141.02 I, II, V, VI.

**The claimed Feature 2 of claims 13 and 20 recite, *inter alia*:**

*blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space being disposed in the downstream location of the regenerated catalyst cooler before the cooled regenerated catalyst entering the riser reactor;* （hereinafter referred to as ***"Feature 2"*** ）

**1. The Board erred in affirming that Examiner split excessively** the Feature 2 to the term level "**mixing buffer space**" etc., and **failed to consider its function** that is *"for mixing and buffering the cooled catalyst"*.

**2. Feature 2** is proposed by present application **for the first time** <u>in the art (that is FCC field),</u> and there is No documentary record in all Common Knowledge and prior arts including **Li that disclose Feature 2** before the filing date of the present application (see Table 2 on Appx582 and Annexes 7-10,46-48 (Appx583-614, 615-645)).

**3. The Feature 2** is **an overall means *including a functional limitation,*** rather than the selection of the specific operating parameters and the specific structure of the "mixing buffer space" itself**.**

Thus, the Feature 2 should not be split and its non-obviousness should be evaluated as a whole under MPEP 2141.02 I, II, V, VI.

The Board erred in affirming that ***Examiner split excessively*** the Feature 2 to the term level "**mixing buffer space**" etc., and **failed to consider its function** that is *"for mixing and buffering the cooled catalyst"*.

4. the Board construed **also** mistakenly the claimed "*catalyst mixing buffer space*" of the Feature 2 to mean *"in a lower region of the catalyst cooler in which the catalyst is combined (mixed) with the fluidizing media and withdrawn from the cooler."*.

① The independent claims 13,20 show **a clear functional limitation** of *"for mixing and buffering the cooled catalyst"* (see **[0016]** in specification (Appx216)); **rather than** "*for the cooled catalyst mixing with the fluidizing gas*" argued by Examiner (see 1st full paragraph of page 12(Appx.108)).

② Appellants search carefully through the whole Specification of the present application also, **but there is no description** regarding "*fluidizing media mixes with the catalyst".*

Therefore, **there is no factual basis at all** to support the Examiner's assertion of "*fluidizing media mixes with the catalyst in the catalyst mixing buffer space".*

In view of the above, the Board erred in affirming that the Examiner ***split excessively*** the Feature 2 and disregarded both the clear limitation *of "catalyst"* and the claimed function of Feature 2 *"for mixing and buffering the cooled catalyst"*, and that the Examiner mistakenly asserted *"in which the catalyst is combined (mixed) with the fluidizing media"*; and

the Board mistakenly construed the *"in downstream location of"* as a narrower meaning *"in a lower region of"*.

The Board's construction is not consistent with the Feature 2 as recited in claims 13 and 20, and is not consistent with the statement in the specification and drawings. Therefore, the Board's finding is erroneous under "the broadest reasonable interpretation" as cited in MPEP §2111.

**5.** The claimed **"**catalyst **mixing** buffer space" is disposed in the downstream location of the catalyst cooler or the lower part of the heat-taking

equipment, **rather than the lower area of the catalyst cooler argued by Appellee.**

Therefore, Appellee's arguments regarding "the Feature 2" (see page 7, lines 8-15 of the Appellee's Brief) are not persuasive.

**(1) materials** supporting Appellants' position are found throughout Specification (including Figs. 1-4 and the Figures' description) of the originally-filed application.

① It is recited literally **in page 4** (Appx173), lines 21-22 of the specification *"**In the downstream location,** there is a buffer zone or space for buffering and mixing the cooled catalyst;"* and also **in page 4** (Appx173), lines 24-26 of the specification *"There are one, two or more catalyst exits set in the mixing and buffer zone or space, which is **in the downstream location of** the described catalyst cooler;"*. (See also **the amendments to Specification** at page 3(Aappx878)

② The claimed "catalyst mixing buffer space" is disposed in the downstream location of the catalyst cooler, that is the lower part of the heat-taking equipment, **rather than the lower area of the catalyst cooler,** because *the catalyst cooler(8A/B) and thecatalyst mixing buffer space(9A/B)* in the attached figures1-4, are two different pieces of equipment ***having the same diameter only,*** and the two constitute ***an integrated device*** i.e. the heat-taking equipment.*(See also amendments to Specification at pages 4-5* (Aappx879-880)*; see also Table 3 (Appx646)and Annexes 51-54 (Appx647-698).)*

③ It is recited literally in the description (*see* page 16(Appx185), lines 10-12) that ***"[T]the regenerated catalyst is cooled and then enters the lower mixing buffer space*** (9A)" *See* also, Fig. 1, which has clearly indicated that the catalyst mixing buffer space is a downstream space that is independent and separate from the spaces taken by the catalyst cooler.

It is recited literally in the description (*see* page 16, lines 10-19 of the specification) that "[T]the regenerated catalyst is cooled and then enters the lower mixing buffer space (9A)" *See* also, Fig. 1, which has clearly indicated that the catalyst mixing buffer space is a downstream space that is independent and separate from the spaces taken by the catalyst cooler. *See* also page 18, lines 14-16, page 19, lines 15-17, page 22, lines 14-16, page 23, lines 2-4 of the specification. Apparently, in the present application, the step of blending and buffering the cooled regenerated catalyst in a catalyst mixing buffer space" is conducted at a downstream space that is independent and separate from the spaces taken by the catalyst cooler with the heat-exchanging element. In the drawings of the description, particular reference numbers 9A and 9B have been specifically identified. *See* Figs. 1-4.

(Note: the reference number "9A" indicating the lower mixing buffer space is recited literally in the original PCT International Publication, but the reference number "9A" was inadvertently omitted in the English translation of the present application).

See Appx 889(8:16-28)

(2) **There** is **no factual basis at all** to support the Examiner's assertion of "*fluidizing media* ***mixes with*** *the catalyst in the catalyst mixing buffer space",* which is not consistent with the interpretation *that* ***those skilled in the art would reach.***

After Appellants search carefully through the Appx175(6:4-8), there is nowhere regarding "***mixes or mix".***

The regenerated catalysts coming from regenerator as step (5) described are cooled by the catalyst cooler within 360 to 650 °C.

The temperature of the described cold regenerated catalyst can be controlled by adjusting the flows of the fluidized media and/or taking-heat media or adjusting other parameters; or controlled by adjusting the flows of the fluidized media and/or taking-heat media and/or adjusting the flows of cool catalyst returning regenerator or other parameters.

See Appx175(page 6, line 1-8)

Therefore, Appellants search carefully through **the whole Specification** of the present application also, **but there is no description** regarding "*fluidizing*

*media mixes with the catalyst"*.

Additionally, the fluidization media, *for controlling the catalyst temperature,* is very small and No meaningful catalyst cooling can be achieved.

## II. The scope and content of Li (CN1664074A)

**The** Board **disregarded** the **three** "teach **away" regarding** the **Feature 1, and found mistakenly that** ***"Li also teaches using one*** catalyst ***cooler"*** *which is not consistent with* the *scope* and *content of the specification and drawings and not consistent with the interpretation that those skilled* in the *art would reach.*

1. **Nowhere** does that **Li** expressly teach "using one catalyst **cooler**" adjusts "the reaction temperature of **each** the reaction zones of one riser reactor . . .".

   **Li** discloses merely that "***two** regenerated catalyst coolers* is used to adjust the reaction temperature of the reaction zones of the riser reactor comprising at least two reaction zones, respectively *i.e.* ***catalyst cooler A*** is used to adjust the reaction temperature of 1st reaction zone, ***catalyst cooler B*** is used to adjust the reaction temperature of 2nd reaction zone", and

   that one of the two regenerated catalyst coolers is connected to ***an auxiliary Riser or a gasoline Riser*** which is connected the conjunction of the reaction zone of another heavy oil riser reactor. *(see **page 2/18 (Appx742), line 21** to page 3/18 (Appx743), the fourth line from the bottom in Specification of **Li** and Figs 1-4 of **Li**)*

2. As we discussed above, in fact, **there is no documentary evidence** that prior arts (including **Li**) **disclose the problem to be solved proposed firstly by the Feature 1** of claim 1 of the present application.

   For details, please see Point 8 at page 21-22 of this Reply Brief.

**3.** The Board disregarded the three "teach away" from Feature 1 which result in **a "impermissible hindsight"** concerning Feature 1.

For details, please see page 36-38 of Opening Brief.

① The "high reaction temperature" in Li teaches away from feature 1. See also Annex 1 (Appx272-282), page 366; Annex 3 (Appx292-306), page 1153; Annex 4 (Appx307-338), page 349-353; Annex 5 (Appx339-344), page 49 and Annex 50 (Appx568-581).

The claimed function of Feature 1 ***"using suitable reaction temperature",*** which is **proceeding contrary to the above accepted wisdom in the art** and **is evidence of nonobviousness.**

② "The catalyst-to-oil ratio is not freely independently adjustable variable" in Li teaches away from the function of Feature 1.

Annex 3 (Appx292-306), page 877-878 proves that "the catalyst-to-oil ratio has been always a non-independent adjustable variable (parameter)", which is **proceeding contrary to the above accepted wisdom in the art** and **is evidence of nonobviousness.**

**See MPEP § 2141.02 VI**

A prior art reference must be considered in its entirety, i.e., as a <u>whole</u>, including portions that would lead away from the claimed invention. *W.L. Gore & Assoc., Inc. v. Garlock, Inc.*, 721 F.2d 1540, 220 USPQ 303 (Fed. Cir. 1983), *cert. denied*, 469 U.S. 851 (1984)

**and**

**MPEP § 2145 X.D.**

The totality of the prior art must be considered, and proceeding contrary to accepted wisdom in the art is evidence of nonobviousness. *In re Hedges*, *783 F.2d 1038, 228 USPQ 685 (Fed. Cir. 1986)*

Li discloses that catalyst coolers A and C can be omitted, implicitly teaching that catalyst cooler B cannot be omitted, which also teaches away from Feature 1 ( see Appx702(3:4-9) ).

4. Appellee's Arguments (see page 11, line 4-5 of the Appellee's Brief) disregarded *that the two catalyst coolers 8A and 8B* have different functions as recited in specification of present application as follows:

> The regenerator is provided with 3 inside or outside heat taking apparatus, that is, catal coolers. 35A, 35B and 35C are the fluidization medium such as air, water and steam, and 37A, 37B and 37C are the heat removal medium, including water, steam, a variety of oil products an so on. A catalyst cooler-A is mainly employed to regulate the reaction temperature of the first reaction zone, to maintain it at the optimum value. A catalyst cooler-B is mainly employed to regulate the reaction temperature of the second reaction zone, to maintain it at the optimum val A catalyst cooler-C (not shown in the figure) is mainly employed to regulate the regenerator temperature, to maintain it at the optimum value.
>
> According to the technological requirements, the catalyst cooler-A and the catalyst cooler-C can be omitted, wherein the hot regenerated catalyst directly enters the first reaction zone without being cooled. The regenerator temperature is controlled by regulating the flow rate of the fluidization medium of the catalyst cooler-B including air, steam and so on and the quantity of the catalyst that returns to the regenerator or by the thermal equilibrium of the reaction regeneration system.

See Appx177(18:13-22)-Appx178(19:1-4)

**5. Li doesn't disclose the "only one catalyst cooler for adjusting only one reactor" as claimed in the Feature 1 under either the broadest reasonable construction or Appellants' construction based on Li's specification.**

First, the catalyst from Li's catalyst cooler 8A to the first reaction zone doesn't adjust both the first and second reaction zone temperatures, because the

catalyst merely goes through both first reaction zone 3 and second reaction zone 2, which, from a thermodynamics standpoint, will affect or impact the second reaction zone but not adjusting the second reaction zone's reaction temperature which is adjusted by the catalyst from Li's catalyst cooler 8B.

However, Li teaches away from the above solution that Li shows catalyst cooler 8A or catalyst cooler C can be omitted, meaning catalyst cooler 8B is indispensable ( see Appx702(3:4-9) ).

Additionally, "The catalyst-to-oil ratio is not freely independently adjustable variable" in Li teaches away from the function of Feature 1, because Common Knowledge Annex 3 (Appx292-306), page 877-878 proves that "the catalyst-to-oil ratio has been always a non-independent adjustable variable (parameter)".

Second, Appellee argued *"Even **Appellants acknowledged** that Li's recycled catalyst "may have an impact on the temperature of the second reaction zone."*, **which obviously, is a misinterpretation** taken out of context, because Appellants stated *in quick succession,* "*'impacting the temperature' is different from 'adjusting the temperature to the best value'. ...*". See SAppx41.

Thus, there is **NO any substantial evidence** supporting the Board's finding that Li satisfies the catalyst cooler "used to adjust the reaction temperature of each of the reaction zones" limitations.

Third, as the Examiner found, *Li discloses identical operating temperatures in the first and second reaction zones as those in Appellants' specification: 400-650°C and 350-620°C,* respectively (SAppx14).

But Li's strikingly similar terminology and identical temperature ranges are NOT substantial evidence to support the Board's findings that *Li teaches using recycled catalyst to adjust reaction zone temperatures to "an optimal*

*value" as claimed.* This is because the Feature 1 is not the selection of specific temperature ranges, instead of achieving an optimal value in the identical temperature ranges by the catalyst cooler. **This optimal value is lower than Li's *"higher reaction temperature"*** (see Item 1 at Appx 267, Appx715(16:2-3)), which **teaches away from *"suitable reaction temperature"*** as recited in the Feature 1 (see Appx180(11:25-26) ).

Therefore, the Board mistakenly found that *"Li also teaches using a single catalyst cooler"*. This is Because the Board split excessively the Feature 1 to the term level "catalyst cooler" and disregarded its function, and the Board disregarded the three "teach away", "unexpected results" over Li, and the "omission of an element" etc., which is supported by Annexes 1-6,49,50 and by ***four Declarations*** under 37 C.F.R. 1.132.

But this finding, without providing any documentary evidence to support, was made by their own personal opinion, therefore, this finding is erroneous under MPEP§2144.03 C, E, §2145, §2144.04, §2144.04 II.B, and §716.01, and is a *"Impermissible Hindsight"* under MPEP§2145 X.A, §2145 X.D.

**ii.** Regarding the Feature 2, **nowhere** does also **Li** expressly teach "a mixing buffer space".

**1.** The term ***"mixing" and "buffer" is well-known*** to those skilled in the art, therefore, the effects/functions of **Feature 2** is well-known to those skilled in the art, so that there is ***no a verbose statement*** in Specification of the present application.

**2.** There is no factual basis at all that Board asserted "*fluidizing media mixes with the catalyst in Li",* which is not consistent with the interpretation *that those skilled in the art would reach.*

Appellee Argued (see page 10, line 8-20 of the **Appellee's brief** )

that *"In particular, catalyst enters the catalyst cooler to be cooled, after which it mixes with "fluidization medium" (e.g., air, water, steam) in the catalyst cooler, and is then returned to the reactor.* Appx703; Appx717-Appx718."

**Here, Appellants rebut the argument** as follows:

(1) Appellants search carefully through the Appx703; Appx717-Appx718, but there is no word regarding "***mix or blend" in Li.***

> The catalyst cooler of the present invention is provided with one or more catalyst outlets, wherein one of them is used to transport the cold regenerated catalyst back to the regenerator, and the regenerator temperature can be controlled by regulating the flow rate of the fluidization medium including air, steam and so on and the flow rate of catalyst returning pipe conveying medium including air, steam and so on, to maintain it at the optimum value. The other one or two catalyst outlets are individually used to transport the cold regenerated catalyst to recycle to one or two raising pipes (reactor), and the temperatures of the reaction zones of the raising pipes can also be controlled by regulating the flow rate of the fluidization medium including air, steam and so on and the flow rate of catalyst returning pipe conveying medium including air, steam and so on, to maintain it at the optimum value.

See Appx703 (page 4, last paragraph)

> According to the technological requirements, the catalyst cooler-A and the catalyst cooler-C can be omitted, wherein the hot regenerated catalyst directly enters the first reaction zone without being cooled. The regenerator temperature is controlled by regulating the flow rate of the fluidization medium of the catalyst cooler-B including air, steam and so on and the quantity of the catalyst that returns to the regenerator or by the thermal equilibrium of the reaction regeneration system.

See Appx717 (18: 22) -Appx718(19:4)

(2) Appellants search carefully through **the whole Specification** of **Li** also, **but there is no description** regarding "it *(i.e. the cooled catalyst) mixes with "fluidization media"(e.g., air, water, steam) the catalyst in catalyst cooler"*.

Additionally, the fluidization media, *for controlling the catalyst temperature,* is very small and No meaningful catalyst cooling can be achieved.

**3.** The Examiner's finding "*Li discloses the Feature 2"*, is conjectured based on Li's attached Figures and is not consistent with the interpretation *that **those skilled in the art would reach.*** Thus, this is wrong under MPEP § 2125.

**4. The Board disregarded that one "teach away" from Feature 2 which results in a "impermissible hindsight" concerning Feature 2.**

Many textbooks *(see table 2 on Appx582 and Annexes 7-10 (Appx583-630))* state that "common catalyst cooler is isothermal (i.e. temperature is uniform)", which means that the catalyst mixing and buffering space is ***"superfluous, or useless"*** and **teaches away** from Feature 2, thus Feature 2 is non-obvious over Li under MPEP § 2141.02 VI and § MPEP § 2145 X.D.

## III. The Prosecution History and the Burden of Proof

**i.** Examiner should bear the burden of factually supporting final Rejection, because the Examiner is engaging in two *"impermissible hindsight"*, and the common knowledge and prior arts "teach away" from the claimed Features 1&2.

On Oct. 23, 2015, Appellants provided the two Declarations by Zhang and by Gao Under 37 C.F.R. 1.132**.**, showing the criticality or unexpected results of the present application, which **support that the Features** 1**&2** have the

criticality or unexpected results over Li, in a combination of the six References cited by Examiner**.**

On Jan. 17, 2018, and on March 23,2018, Appellants submitted **the two Declaration** by Qunzhu Li, based on Table 1 and Annexes 1-6,49,50 and their indications; and Table 2 and Annexes 7-10,46-48 and theirs indications.

On Jan. 23, 2021, Appellants submitted Annexes 11-43 and on Sept. 15, 2021, Appellants submitted a Declaration by Qunzhu Li, herewith Table 3 and Annexes 51-54 and their indicators.

But, the Examiner, only with the "one sentence" or "general statement" etc. in a *"conclusory fashion",* disregarded all Evidence (Annexes1-54) and the five Declarations, and the Board affirmed the examiner's disregard, which are procedure errors. The only excuse of the Examiner is that "Li discloses all limitation of the Features 1&2".

However, the common knowledge (Annexes 1-6,7-10, 46-54) do prove the four "teach away", which show that "Li disclose all limitation of the Features 1&2" are two "impermissible hindsight".

Accordingly, it is wholly inappropriate that the Examiner and the Board disregarded the above-mentioned common knowledge and Appellants' arguments, which show that **the Examiner is engaging in *"impermissible hindsight"***, and that **the common knowledge "teach away"** from the Features 1&2.

The Examiner's Rejection and the Board's Decision rely solely on case law as the rationale to support without any fact or documentary evidence, which, as discussed in MPEP §2144, §2144.04 and §2141.02VI, are not appropriate.

**Appellants adequately traverse the Examiner's assertions,** but the Examiner, without providing any documentary Evidence to support, disregarded all of them. **The board affirmed the Examiner's finding, which should simply be reversed, under** MPEP §2144.03 C, E and §2145.

For details，please see *page 34-36 of Opening Brief* .

**ii**. Objective Evidences Annexes 11-43 have the same subject matter “the cold regenerated catalyst cycle and its commercial application”, which **accord with the scope and the contents of both claim 1 and Specification, and are relevant to Features 1&2.**

1. Annexes 1-6, 7-8,46-48, 51-52 are Common Knowledge in FCC field, Annexes 9,10, 49,50, 53,54 are Prior Art in FCC field; (see also Table 1, 2 ,3 at Appx267-271, 582,646);

**2.** Five Declaration and Annexes 11-43 are Objective Evidence under MPEP§2145 and §716.01, all of them state and discuss **the same subject matter *“the cold regenerated catalyst cycle and its commercial application”***, which is fully consistent of the scope and contents of the claim 1, see Annexes 11-17, 25 at Appx364,367,368,383, 397,414,437,459 (The "*regenerant*" is short for "*regenerated catalyst*"); Annexes18,24,40 at Appx443,457,531;Annexes 21,22, 25,27,35,38,41,43 at Appx 449,453,456,468,511,524,542,548(The "*CRC-FCC*" is short for "Cold *Regenerated catalyst Cycle Catalytic Cracking*"); and Annexes 26,28-34,36,37,39, 42-43 at Appx463,476,481,486,491,496,01,506,514,519,526, 543,548.

Especially, in Annexes 26,28-34,36,37,39, 42-43, the **preamble** state Chinese patent **ZL200810146601.8** is used (*ZL200810146601.8 belongs to **a same patent family*** as the present application in PCT);

**Part 1** state the Feature 1 “**one** catalyst cooler is used to adjust **one or two** reaction zone of one Riser reactor” (*The "**a**" in part 1 should be translated as "**one**"*), see Appx463,476,481,486,491,496,501,506,514,519,526,43,548;

**Part 4** state ***“a mixing buffer device”*** and **its function/effects** *“improving the operability of CRC device with the better safety, stability and reliability”* , see

Appx463,476,481,486,491,496,501,506,514,519,526,543,548; and

**lastly,** state ***"the much better results"***, for example, the investment payback period is 1-3 months, see Appx478,483,488,493,498,508; thereby ***showing the "synergism"*** of the Features 1&2 and **"unexpected results"** over Li under MPEP §716.02 (a)I.

**Thus,** in part 4 at page 4 of the Li's declaration filed on March 19,2018 (see Appx 264), Li declares that all documentary Evidence are true and relevant, which prove wholly that the ***"unexpected result"*** and a great ***"commercial success"*** drives from the claimed invention, and flows from the function and the advantage disclosed or inherent in the specification of the present invention, and accords with the scope and the contents of the claim 1; and Li declares that ***"no one use Li since 2008 because of Li's inherent defects".***

**iii.** In view of the above, the above Objective Evidence (Annexes 11-43 and five Declarations) prove that the claim 1 achieves *the 'unexpected results', the 'commercial success' , the 'long-felt need and others' failure'* under MPEP §2145, three *'Opinion Evidence' under* MPEP §716.01 (c)III and the ***'synergism'*** of the Features 1&2 and the unexpected results over Li under MPEP §716.02 (a)I.

Therefore, the claimed claim 1 of the present invention is nonobvious and patentable over Li.

*For details, please see page 39-46 of Opening Brief.*

**iv.The Board's Decision**

For both claimed features 1&2, the Examiner did not establish the *"Prima Facie Case"*, and Board have overlooked or disregarded this ground yet.

**A. The claimed Feature 1**

As mentioned above, the Feature 1 is **an overall means *including a functional limitation,*** therefore, the Board erred in affirming that Examiner split excessively the Feature 1 to the term level "catalyst cooler" etc., and **failed to consider its function**; and erred in finding that ① ***for the "catalyst cooler" limitation,*** the open-ended term "comprising" in Feature 1 of claim 1 permits the use of ***more than one*** catalyst cooler; and ②Li also teaches using a single catalyst cooler.

(1) The Board addressed the **Li**'s acknowledged use of multiple catalyst coolers to adjust different reaction zone reaction temperatures by positing that "[f]eeding the cold regenerated catalyst to the bottom of the riser reactor and into reaction zone 1 (ref. no. 3) would also feed the catalyst to reaction zone 2 (ref. no. 2) in Li's Figure 1 and adjust the temperature at some level within reaction zone 2 as the catalyst is sent through reaction zones 1 and 2 on its way to disengager 1 (Li, Figure 1)." Appx.6 [Decision on Appeal at 5] (emphasis added). In other words, because of the configuration shown in Figure 1 of the **Li**, the Board concluded that the catalyst coming from one cooler affects the temperature of reaction zone 2 by happenstance. An infirmity with the Board's reasoning is that the language of the proposed claims requires that the catalyst cooler "adjust" the reaction temperature of each reaction zone. As courts have recognized, the plain meaning of "adjust" is "to change so as to match or fit," i.e., not a temperature change that occurs through mere happenstance. See *Kaneka Corp. v. SKC Kolon PI, Inc.*, No. 11-cv-033972014, WL 10983769 at *9 (C.D. Cal. March 23, 2014). See also *Young v. Brennan*, No. 15-cv-10633, 2018 WL 1079865 at *3 (N.D. Ill. Feb. 15, 2018). Thus, a change in the reaction temperature "at some level" due to happenstance does not constitute the requisite adjustment of that temperature.

On a related note, proposed claim 1 separately requires that the catalyst cooler *"keep the reaction temperature of each of the reaction zones in an optimal*

*value."* There is no evidence in the record that a temperature change within a reaction zone by happenstance "keeps" that temperature at any particular value, let alone an optimal one. Indeed, the best the Board could do was to characterize the temperature adjustment as being *"at some level."* Appx. 6 [Decision on Appeal at 5].

（2） The Examiner overlooked *that "catalyst cooler 8A" and "catalyst cooler 8B"* in **Li** is different substantively in theirs function (See from Last line 1-3 of Page 2(Appx 701) to Line 1-10 of Page 3(Appx702) of Li's English translation ).

Therefore, the above assertion by Examiner is not consistent with the interpretation that one of ordinary skill in the art would reach. It is because that one of ordinary skill in the art *(including Li also)* would think that it is impossible *that a catalyst cooler is used to adjusting the reaction temperature of each reaction zone of a riser* before the filling date of the instant application.

**Therefore, regarding Feature 1, the Examiner did not establish the *"Prima Facie Case"*.**

For the non-obviousness of Feature 1 under *Graham,* please see page 47-59, especially 51-53 of Opening Brief.

**B. The claimed feature 2**

As mentioned above, the Board erred in affirming that the Examiner ***split excessively*** the claimed Feature 2, and that the Examiner disregarded both the clearly limitation *of "catalyst"* and the claimed function *"for mixing and buffering the cooled catalyst"*, and that the Examiner mistakenly asserted *"in which the catalyst is combined (mixed) with the fluidizing media"*; and the Board mistakenly construed the *"in downstream location of"* as a narrower meaning *"in a lower region of",* also; which is not consistent with the feature

2 as recited in claim13,20, and is not consistent with the statement in the specification and drawings, therefore, the Board's finding is erroneous under "the broadest reasonable interpretation" as cited in MPEP §2111.

Therefore, regarding the claimed feature 2 under *Graham*, the Examiner did not establish the *"Prima Facie Case"*.

For the non-obviousness of Feature 2 under *Graham*, please see page 59-65 of Opening Brief.

## IV. Summary of the Arguments

(Omitted) the Same as Opening Brief, please see page 31-32.

## V. Arguments

Generally, the Appellants respectfully submits that Li (CN1664074A), the prior art relied merely upon by Examiner, does not disclose all the limitations of Features 1 & 2. Appellants now responds to some key arguments and points raised by Examiner, by Board and by Appellee. However, the lack of a response to the above issue should not be taken as agreement with them since the Appellants believes, the PPT for the Oral Hearing, the Request for Rehearing, and the Opening Brief to this Court previously submitted by Appellants adequately counters all of the issues.

### i. Standard of Review

This Court reviews the Patent Trial and Appeal Board's factual findings for substantial evidence and legal determinations de novo. See, e.g., *In re Van Os*, 844 F.3d 1359, 1360 (Fed. Cir. 2017).

Obviousness, the sole basis for rejecting the proposed claims below, is a question of law based on underlying factual inquiries. The factual inquires are set forth in *Graham v.* John Deere Co., 383 U.S. 1, 148 USPQ 459 (1966).

Objective evidence relevant to the issue of obviousness must be evaluated by Office personnel. *Id.* at 17-18, 148 USPQ at 467. Such evidence, sometimes referred to as "objective evidence" or "secondary considerations," may include evidence of commercial success, long-felt but unsolved needs, failure of others, and unexpected results.

Further, Board ***"must make findings*** of relevant facts, and ***present its reasoning in sufficient detail*** that the court may conduct meaningful review of the agency action." *In re Lee*, 277 F.3d 1338, 1346 (Fed. Cir. 2002). Emphasis added)

**ii. Prosecution errors during patent examination**

During the prosecution, Examiner cited merely CN1664074A ("Li") against the nonobviousness of the pending claims, asserting that Li disclosed all the limitations of Features 1&2 and that Features 1&2 are obvious over Li, but without any documentary evidence to support their assertions and findings.

Appellants submitted the five Declarations by Zhang, Gao, and Qunzhu Li Under 37 C.F.R. 1.132(Appx239-266), Annexes 1-54 (Appx272-698) and their specific indications including 7 pages of detailed indications (see Table 1, 2, 3 on Appx267-271, 582, 646), which prove that

① the level of ordinary skill in the art and the two "impermissible hindsight" regarding Features 1&2 under MPEP §2145 X.A;

② the four "teach away" regarding Feature 1 and Feature 2 supported by the Common Knowledge (see Table 1,2,3 on Appx267-271, 582, 646 and Annexes 1-6,7-10, 46-48,49,50,51-54 (Appx272-344, 583-614, 615-645, 553-567, 568-581, 647-698));

③ "Omission of an element with retention of its function" under MPEP §2144.04 II B; and

④the "synergism" of Features 1&2 under MPEP §716.02(a)I, and the six

"Objective Evidence" under MPEP §716 (or "the so-called secondary consideration", see Table 1,2,3 on Appx267-271, 582, 646 and Annexes 1-54 (Appx272-698)).

**iii. There is No "Substantial Evidence" provided by the Examiner and the Board that supports the Board's findings, and Appellee's two arguments lack merits.**

1. In the Appellee's Brief, Appellee argued that Appellants have the burden to show that the Board committed reversible error. *In re Watts,* 354 F.3d 1362, 1369 (Fed. Cir. 2004).
2. In the Appellee's Brief, Appellee argued also that "Substantial Evidence supports the Board's findings".

**But**, Appellants respectfully submit that the Examiner did not provide any documentary evidence to support their findings, during patent examination and Appeal to Board, all of which are his/her personal opinion or understanding under MPEP §2144.04.

**iv.** All these prosecution errors (at least 18 items) **result in wrongful factual assertions and findings** of the Board's Decision, which should be withdrawn.

*For details, please see page 32-47* of Opening Brief.

## VI. Regarding claims 6, 16, 22 and other claims

(Omitted) Same with the Opening Brief, please see page 66.

## VII. <u>Conclusion</u>

In view of the above, the Examiner, without providing any documentary

evidence, failed to present a *prima facie* case of obviousness. The Board disregarded the above relevant facts or grounds.

Therefore, Appellants respectfully request that this Court reverse Board's decision.

If there is something unclearly or any questions, please direct to Qunzhu Li, at +86-13511013479, or via email: ha8528@163.com.

Respectfully submitted,

Dated: November 29, 2024

By: /s/ Li Li
Li Li

By: /s/ Qunzhu Li
Qunzhu Li

5-1101, Building 1st, No. 5,
Lianmeng Road,
Jianxi District, Luoyang Henan
Province
471003, P. R China
+86-13511013479
45993.02@gmail.com;
45993.01@gmail.com
ha8528@163.com

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitations of Fed. Cir. R. 32(b).

This brief contains 6,996 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Fed. Cir. R. 32(b). This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). This brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in fourteen (14) point Times New Roman font.

Respectfully submitted,

Dated: November 29, 2024

By: /s/ Li Li
Li Li

By: /s/ Qunzhu Li
Qunzhu Li

5-1101, Building 1st, No. 5,
Lianmeng Road,
Jianxi District, Luoyang Henan
Province
471003, P. R China
+86-13511013479
45993.02@gmail.com;
45993.01@gmail.com
ha8528@163.com